## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAWN NELSON MANNING, *et al.*

       Plaintiffs,

v.

JOHN MCHUGH, in his official capacity as
Secretary of the Army, *et al.*

       Defendants.

**Civil Action No. 12-1802 (CKK)**

## ORDER
(January 30, 2014)

Presently before the Court are two motions in the above-captioned case: Defendants' [24]

Motion to Stay, and Plaintiffs' [30] Cross-Motion for Leave to Conduct Expedited Discovery.

Upon consideration of the pleadings[1], the relevant legal authorities, and the record as a whole,

the Court GRANTS Defendants' [24] Motion to Stay.  Accordingly, this action is STAYED in

its entirety until further Order of this Court.  In light of this stay, Plaintiffs' [30] Cross-Motion

for Leave to Conduct Expedited Discovery is DENIED WITHOUT PREJUDICE.

---

[1] First Amended Complaint, ECF No. [22] ("Am. Compl."); Defs.' Mot. to Stay, ECF No. [24]; Suppl. to Mot. to Stay, ECF No. [26]; Pls.' Opp'n to Mot. to Stay and Cross-Motion for Leave to Conduct Expedited Discovery, ECF No. [30] ("Pls.' Opp'n & Cross-Mot."); Reply in Support of the Named Federal Defs.' Mot. to Stay and in Opp'n to Pls.' Mot. for Leave to Conduct Expedited Discovery, ECF No. [35] ("Def.'s Reply"); Pls.' Reply to the Named Federal Defs.' Opp'n to Expedited Discovery, ECF No. [37] ("Pls.' Reply"); Pls.' Surreply to Mot. to Stay, ECF No. [38] ("Pls.' Sur-Reply"); Sur-Reply in Support of the Named Federal Defs.' Mot. to Stay and in Opp'n to Pls.' Mot. for Leave to Conduct Expedited Discovery, ECF No. [44] ("Defs.' Sur-Reply"); Pls.' Sur-Response to the Sur-Reply in Support of the Named Defs.' Mot. to Stay and in Opp'n to Pls.' Mot. to Conduct Expedited Discovery, ECF No. [46-1] ("Pls.' Sur-Response"); Defs.' Response to Court's Order for Supplemental Briefing, ECF No. [47] ("Defs.' Supplemental Brief"); Pls.' Reply to Named Federal Defs.' Supplemental Brief, ECF No. [48]. In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

This case stems from the tragic shootings that occurred on November 5, 2009, at Fort Hood, Texas.  Am. Compl. ¶ 1.  The Plaintiffs are the representatives and family members of 9 of the 13 individuals killed,[2] 19 of the 32 individuals wounded by gunfire and their family members, and other witnesses who contend that they were injured psychologically along with their family members.  *Id.* ¶¶ 127-169.  The Defendants are John McHugh, Secretary of the Army, Charles T. Hagel, Secretary of the Department of Defense, James Comey,[3] Director of the Federal Bureau of Investigation, six John Does, whose actions as individuals and as Army, DOD, and/or FBI employees are known to Plaintiffs but whose identities are not, Major Nidal Hasan, and Nasser al-Aulaqi as the personal representative of the deceased Anwar al-Aulaqi.  *Id.* ¶ 2. Plaintiffs have filed suit seeking damages and other relief for the harms arising out of the shooting.  Defendants – specifically Defendants McHugh, Hagel, and Comey[4] – now seek to stay this action in order to allow for the completion of pending criminal proceedings against Defendant Hasan, the alleged perpetrator of the shootings.  Mot. to Stay at 1.

On July 6, 2011, the General Court-Martial Convening Authority referred charges against Defendant Hasan for trial by court-martial for his role in the Fort Hood Shootings.  *Id.*, Ex. 1 (Declaration of Military Prosecutor, Colonel Michael Mulligan) at ¶ 1.  Beginning on May 29, 2013, Hasan was tried in military court for thirty-two specifications of attempted murder and thirteen specifications of premeditated murder.  Subsequently, on August 23, 2013, a military

---

[2] Because Private Francheska Velez's unborn child was also killed in the shootings, Plaintiffs state that 14 individuals were killed in the shootings.  *Id.* ¶ 161.  Defendants state that 13 individuals were killed in the shootings.  Mot. to Stay at 3.  Given this dispute, at this time, the Court does not take a position on the exact number of individuals killed in the shootings.

[3] Pursuant to Fed. R. Civ. P. 25(d), James Comey has been automatically substituted for Robert Mueller III, whom the parties' pleadings name as Defendant.

[4] Unless otherwise specified, when the Court refers to "Defendants" in this Order, it means Defendants McHugh, Hagel, and Comey.

panel convicted Hasan of these counts. Defs.' Sur-Reply, Ex. 1 (Supplemental Declaration of Colonel Michael Mulligan) at ¶ 2. On August 28, 2013, this same panel sentenced Hasan to death and "dismissal" from the Army. *Id.* However, Hasan's court-martial is not yet complete, as the finding of guilt and sentence against him have not yet been approved by the convening authority. *See* Mot. to Stay, Ex. 1 at ¶ 2. Under federal law, a court-martial is not complete until the convening authority (the general officer who referred the case to trial) has taken "final action" after reviewing the trial's record, allegations of error, submissions by the service member, and any clemency recommendations. *Id.* Defendants estimate that this process, and the criminal matter against Hasan, will be complete by July 1, 2014. Defs.' Supplemental Brief at 3.

Defendants seek to stay these proceedings in their entirety until the completion of the convening authority's review. Plaintiffs oppose this stay and have filed a Cross-Motion for Leave to Conduct Expedited Discovery into the identities of the John Doe Defendants.

## II. LEGAL STANDARD

It is well-established that a district court has discretionary authority to stay a civil proceeding pending the outcome of a parallel criminal case when the interests of justice so require. *See United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970); *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). This authority allows a court to "stay civil proceedings, postpone civil discovery or impose protective orders and conditions when the interests of justice seem to require such action." *Sec. & Exchange Comm'n v. Dresser Indus. Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc), *cert. denied*, 449 U.S. 993 (1980). Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal

Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case.  *Id.* at 1376.

In determining whether to stay a civil proceeding pending the outcome of a related criminal proceeding, courts within this Circuit have customarily weighed the following factors: (1) the interests of the plaintiff in proceeding with the civil litigation as balanced against the prejudice to them if it is delayed; (2) the public interest in the pending civil and criminal investigation; (3) the interests of and burdens on the defendant; (4) the interest of persons not parties to the civil litigation; and (5) the convenience of the court in the management of its cases and the efficient use of judicial resources.  *Barry Farm Resident Council, Inc. v. Dept. of Navy*, Nos. 96-cv-1450, 96cv-1700, 1997 WL 118412, at *1 (D.D.C. 1997) (citing cases).  "The court must make such determinations in the light of the particular circumstances of the case."  *Dresser Indus.*, 628 F.2d at 1375.

### III. DISCUSSION

Although Defendants initially advanced several arguments in favor of a stay, *see* Mot. to Stay at 6-9, 12-13, the progression of the court-martial proceedings to their current point has narrowed Defendants' contentions considerably.  Essentially, Defendants now seek a stay of this matter to avoid any concerns of unlawful command influence during the remainder of Defendant Hasan's criminal proceeding.

By way of background on court-martial proceedings, at the completion of a court-martial the verbatim record is presented to both parties to review for accuracy.  Defs.' Sur-Reply, Ex. 1, ¶ 5.  The military judge authenticates the record and the convicted solider has the opportunity to submit allegations of error, mitigation evidence, and requests for clemency.  *Id.*  The record is then given to the convening authority (the general officer who referred the case to trial) for

approval.  *Id.*  At this stage, the convening authority bears the responsibility for reviewing the results of trial.   The convening authority has wide discretion in this role, which is taken in his or her "sole discretion."   10 U.S.C. § 860(c)(1) ("The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority.").   The convening authority's options at this stage range from approving the trial and sentence as adjudged to setting aside the results of the trial completely.  Defs.' Sur-Reply, Ex. 1, ¶ 5.  In exercising this discretion, the convening authority must exercise his or her independent judgment.  *Id.*  This process must conclude before the court-martial is considered complete.   Defs.' Mot. to Stay, Ex. 1, ¶ 2.

In arguing for a stay, Defendants contend that the validity of the convening authority's review will be threatened by the continuation of civil proceedings in this case.  As civilian leaders of the military, the Secretary of Defense and the Secretary of the Army are two of the highest-ranking members of the military chain of command.  Suppl. to Mot. to Stay at 2.  In order to mitigate improper use of the military chain of command to dictate the results of courts-martial, Congress prohibited such interference in the Uniform Code of Military Justice ("UCMJ").    *Id.* at 3.  As such, commanders may not use their influence either directly or indirectly to affect the outcome of a criminal case through extra-judicial means.  *See* 10 U.S.C. § 837 (prohibiting actions to influence a court-martial); 10 U.S.C. § 898 (criminalizing the failure to adhere to procedural rules of the UCMJ).   Such action, which would compromise the impartiality of a military tribunal, is known as unlawful command influence, and has been described by military courts as the "mortal enemy of military justice."  *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986).  Indeed, unlawful command influence – or its appearance – can lead to the invalidation of a court-martial conviction, because "in cases where unlawful

command influence has been exercised, no reviewing court may properly affirm findings and sentence unless it is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence." *Id.* at 394.

Here, Defendants contend that further proceedings in this lawsuit, including the filing of an answer or a motion to dismiss, would raise the possibility of unlawful command influence or its appearance, both of which could fatally undermine the validity of Defendant Hasan's conviction. Mot. to Stay at 10-12; Suppl. to Mot. to Stay 1-5. The issue in Hasan's court-martial is his responsibility for the deaths and other injuries of the Plaintiffs in this case. If Defendants Hagel and McHugh, two of the highest ranking members of the military chain of command aside from the President, were to take public positions in this case on the guilt of Hasan before the convening authority acts, such action would pose a very real risk of the perception of improper command influence. For example, the Secretaries may defend this action by stating that Hasan committed the shootings on November 5, 2009 on his own and that his conduct was not preventable based on what was known at the time. Mot. to Stay at 11. By doing so, they would be dictating their view that Hasan was responsible for the shooting. Yet, the Secretaries need not even go this far to raise concerns of unlawful command influence. Indeed, even simply answering Plaintiffs' complaint would require the Secretaries to take an official position on Plaintiffs' allegations that Hasan committed the shootings. *See* Fed. R. Civ. P. 8(b)(1)(B) ("In responding to a pleading, a party must . . . admit or deny the allegations asserted against it by an opposing party."). Plaintiffs' complaint repeatedly alleges that Hasan was the guilty party in the Fort Hood shooting. *See, e.g.,* Am. Compl. ¶¶ 4, 5, 10, 14, 29-30, 32, 33, 43, 48, 81, 99, 106, 127-65, 181-239. Yet given the position of Defendants McHugh and Hagel in the military chain of command, such an action would very likely raise the specter of unlawful command influence

in the court-martial, as the Secretaries would be directly addressing the issue of Hasan's responsibility for the Fort Hood shooting.  *See United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994) ("This Court has long held that the appearance or existence of unlawful command influence creates a rebuttable presumption of prejudice.") (citation omitted).  Such a public position by the Secretaries would require the military prosecutors to contend with dispelling the issue of perceived command influence beyond a reasonable doubt from the criminal case.  *See Thomas*, 22 M.J. at 394.  The difficulty of proving this negative could irreparably taint a conviction of Hasan.

The fact that this court-martial has proceeded beyond trial and is currently pending before the convening authority does not change this conclusion.  Inadvertent interference from the Secretaries remains prohibited not only during trial, but also until action is taken by the convening authority to approve the sentence.  10 U.S.C. § 837 ("No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of . . . any convening, approving, or reviewing authority with respect to his judicial acts.").  Further, from the materials provided by the Government, it appears that the convening authority is not simply a rubberstamp, but rather represents a crucial moment in the determination of a soldier's guilt.  As noted in a report by the Congressional Research Service, "review [by the convening authority] is recognized as the accused's best hope for relief, as the CA has broad powers to act on the case. Upon review of the record of trial and the [Staff Judge Advocate's] recommendation, the CA may, among other remedies, suspend all or part of the sentence, disapprove a finding or conviction, or lower the sentence. . . . Once the CA takes action on the case, the conviction is ripe for appeal."  Congressional Research Service, R. Chuck Mason, "Military Justice: Courts-Martial, An Overview," 8 (2013).

Furthermore, Defendants have provided convincing reasons why even the filing of dispositive motions, including a motion to dismiss pursuant to *Feres v. United States*, 340 U.S. 135 (1950), would prejudice their ability to defend this lawsuit. Defs.' Supplemental Brief 6-13. Defendants concede that while it is possible to draft a motion to dismiss that would not implicate concerns of *actual* unlawful command influence by the Secretaries, the risk of the *appearance* of unlawful command influence would remain. *Id.* at 6-7. *See also United States v. Salyer*, 72 M.J. 415, 424 (C.A.A.F. 2013) ("This Court is concerned not only with eliminating actual unlawful influence, but also with 'eliminating even the appearance of unlawful command influence at courts-martial.'") (quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979)). On this point, Defendants note that they cannot predict with certainty what arguments Plaintiffs may raise in response to any potential motion, and thus what response may be required from them to respond to these claims. Defs.' Supplemental Brief at 7. Further, Defendants note that because this case is likely to attract media attention, even if Defendants painstakingly avoid actual unlawful command influence, they will be unable to control any appearance that may result from news reports on these proceedings. *Id.* at 7-8. The filing of a motion to dismiss, for example, may lead to news reports that affect the perception of the Secretaries' positions in this case, and thus potentially create the appearance of unlawful command influence. These concerns are particularly important in light of the low bar for raising concerns of potential unlawful command influence. *See Salyer*, 72 M.J. at 423 ("[T]he initial burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation. The quantum of evidence required to raise unlawful command influence is 'some evidence.'") (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)). In addition, Defendants note that because of the need to avoid unlawful command influence, they will be prejudiced in bringing arguments

and evidence to support a motion to dismiss.  Defs.' Supplemental Brief  at 9-11.  To the extent a response to any argument raised by Plaintiffs in their opposition to a motion to dismiss would require the Secretaries to take a position on the facts of this case, they would be limited in their ability to respond.[5]

Nor would it make sense for this case to continue only in part: stayed against Defendants McHugh and Hagel, but active against the remaining Defendants.  *See* Pls.' Opp'n & Cross-Mot. at 17.  Such a solution would plainly result in an inefficient consideration of the issues in this case.  Moreover, given the close relationship of the claims against the various Government Defendants in this case, *see* Am. Compl. ¶¶ 241, 249, 254, 273, 291, 297, 302 (bringing various claims jointly against Government Defendants), a partial stay would likely lead to duplicative motions practice and discovery rulings, requiring the Court and the parties to address the same set of issues multiple times through multiple sets of briefing.  *See* Def.'s Reply at 6-7. Accordingly, in an exercise of its discretion, the Court concludes that a partial stay would be inappropriate here as it would not serve the interests of justice, which includes concerns of judicial efficiency.

In reaching this decision to impose a stay, the Court cannot overstate the importance of allowing Defendant Hasan's court-martial to reach its conclusion without any interference from

---

[5] The Court provided Plaintiffs an opportunity to respond specifically to these arguments regarding why concerns of unlawful command influence would prevent Defendants from filing a motion to dismiss.  *See* Minute Order (Jan. 10, 2014).  In their [48] Reply to Named Federal Defendants' Supplemental Brief, Plaintiffs do not directly respond to these arguments and instead stand on their earlier pleadings. *See id.* at 1.  However, in this same filing, Plaintiffs do raise for the first time, in passing, the possibility that instead of staying this case, the Court should require Defendants to make any filings raising concerns of unlawful command influence under seal.  *Id.* at 4.  This argument is raised only in a single sentence at the conclusion of Plaintiffs' filing and Plaintiffs make no attempt to justify why the sealing of documents in this case is appropriate under the factors set out by the Court of Appeals in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).  Accordingly, the Court does not entertain this argument.

this Court.  Although the Plaintiffs involved in this case may understand and wish to proceed onward with the civil case with the potential for allegations of unlawful command influence, these Plaintiffs are not the only ones impacted by the decision to stay this case.  There are four families of those killed and thirteen individuals wounded by gunfire on November 5, 2009, whose interests would also be affected.  Mot. to Stay 12.  As they are not parties to this litigation, they are unable to directly benefit from it, and their interests could only be harmed by any interference with the court-martial generated by this matter.  Furthermore, the public at large has a strong interest in the unimpeded resolution of Hasan's court-martial free from any taint of unlawful command influence.

To be sure, the Court recognizes Plaintiffs' concern that "[w]henever possible courts should avoid . . . drawn-out proceedings," *Rohr Industries, Inc. v. Washington Metropolitan Area Transit Authority*, 720 F.2d 1319, 1327 (D.C. Cir. 1982) (citations omitted), as well as the fact that Plaintiffs have waited a long time (and must continue to wait some months longer) for their day in court.  But, for the reasons discussed, this represents an unusual case.  The Court is extremely reluctant to take any action that could conceivably interfere with the resolution of Defendant Hasan's court-martial, particularly given the high-profile nature of both this case and the court-martial of Hasan.  Accordingly, a stay of this case is appropriate until Hasan's court-martial is resolved upon completion of review by the convening authority.

Given this Court's decision to stay proceedings in this matter until the completion of Hasan's court-martial, Plaintiffs' Cross-Motion for Expedited Discovery is DENIED WITHOUT PREJUDICE.  The same reasons justifying the stay generally apply as well to Plaintiffs' Cross-Motion.  Requiring Defendants to disclose the identities of unnamed Army, DOD, and/or FBI employees whom Plaintiffs claim facilitated and enabled Hasan to allegedly perpetrate the Fort

Hood shootings, *see* Am. Compl. ¶¶ 175-180, could force Defendants to take (or appear to take) a position on the causal chain of events leading to the shooting, including Hasan's role as the alleged shooter.   As noted, given the low bar for generating the appearance of unlawful command influence, this Court is extremely reluctant to take any action that could interfere with the validity of a conviction of Hasan.   Accordingly, imposing expedited discovery is inappropriate at this time in light of the incomplete nature of Hasan's court-martial.  Of course, once the stay in this matter is lifted, Plaintiffs may re-file this motion and the Court will consider the parties' arguments for expedited discovery on the merits.

## IV. CONCLUSION

For the reasons stated, it is this 30th day of January, 2014, hereby

**ORDERED** that Defendants' [24] Motion to Stay is GRANTED; and it is further

**ORDERED** that this action is STAYED in its entirety until further Order of this Court; and it is further

**ORDERED** that Defendants shall file a Status Report within two (2) days of the conclusion of the convening authority's review advising the Court of the completion of Defendant Hasan's court-martial; and it is further

**ORDERED** that Plaintiffs' [30] Cross-Motion for Leave to Conduct Expedited Discovery is DENIED WITHOUT PREJUDICE.

**SO ORDERED.**

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

11