**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHAWN NELSON MANNING, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | Civil Action No.  12-1802 (CKK) |
| | ) | |
| ERIK K. FANNING, in his official | ) | |
| capacity as Secretary of the Army, et al.,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO MOTION TO LIFT STAY

COMES NOW the named Federal Defendants ("Defendants") in the above captioned case and respectfully oppose Plaintiffs' Motion to Lift Stay.  The reasons articulated by this Court, in ECF No. 50, regarding the appropriateness of a stay pending final action by the Court-Martial Convening Authority in *United States v. Hasan*, remain unchanged.

Plaintiffs spend the majority of their Motion to Lift Stay reiterating their arguments regarding the liability of the Defendants and the status reports filed in this case.  The Plaintiffs sole argument is the length of time the stay has been in effect.  While the length of time the stay has been in effect was unanticipated, it does not undermine the decision of this Court.   Plaintiffs fail to adequately address the concerns about unlawful command influence that prompted this Court's January 2014 order to stay proceedings until the completion of the convening authority's review of Major Hasan's court-martial.

The stay should remain in place for several reasons.  First, Plaintiffs have not sufficiently

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Erik K. Fanning should be substituted for John McHugh as the Secretary of the Army as the named defendant and Ashton Carter should be substituted as the successor to Charles Hagel as the Secretary of Defense.

demonstrated any particularized harm that outweighs the interest of society and the military in the assurance of a fair trial through action by the convening authority.  Second, lifting the stay could cause serious interference with the ongoing criminal proceedings by creating concerns of unlawful command influence arising from the Defendants answering, defending, or otherwise taking a position in this litigation.  Third, Plaintiffs fail to specify how the problem of unlawful command influence could be prevented by sealing portions of the case, and fail to address why sealing portions of the case should override the strong presumption for public disclosure of judicial proceedings.  Fourth, third-party interests in the outcome of the criminal proceedings which weigh heavily against lifting the stay.  For these reasons, Plaintiff's Motion to Lift Stay should be denied.  Finally, the efficient use of judicial resources favor continuing a stay for all parties.

## FACTUAL BACKGROUND

On August 23, 2013, Major Nidal Hasan ("Major Hasan") was convicted by a court-martial of thirteen counts of premeditated murder and thirty-two counts of attempted premeditated murder.  ECF NO. 44-1 ¶ 3.  Major Hasan was then sentenced to death and dismissal from the Army on August 28, 2013.  *Id.*

As previously discussed in Defendants' Response to Court Order for Supplemental Briefing, a court-martial is not complete when a panel sentences the accused.   The relevant steps of court-martial post-trial proceedings, as mandated by Executive Order and found in the Rules for Courts-Martial ("R.C.M.") are:

1)  At the completion of a court-martial, a record of trial is produced, which includes a verbatim transcript of all sessions held before the military judge, the exhibits submitted by the parties, and other materials.  *See* RCM 1103(a), (b).
2)  The record of trial is presented to both parties to review for accuracy.  *See* RCM 1103(i)(1).
3)  The military judge authenticates the record of trial.  *See* RCM 1104(a)(2)(A).

4) The appropriate staff judge advocate reviews and develops a recommendation to the convening authority, which, together with the authenticated record of trial, is served on the accused and defense counsel. *See* RCM 1106(f) and 1104(b).

5) The accused submits a clemency petition and a response to the staff judge advocate's recommendation. *See* RCM 1105(a), (b) and 1106(f)(4).

6) The convening authority considers the accused's submissions, the staff judge advocate's recommendation, and the record of trial, and takes initial action, wherein he approves, disapproves, or modifies in some way the findings and sentence from the trial.

*See* R.C.M. 1107; ECF No. 44-1 ¶ 5.

The military judge completed and authenticated her review of the record of trial on December 18, 2015. ECF No. 63 at 2. The time between sentencing and the judge's authentication took longer than the Defendants anticipated. The record consists of 96 volumes, there contains classified documents and testimony that required special handling, and there was a post-trial hearing for the judge to consider. Certainly, the Defendants could not interfere with the judge's review of the record in the manner she saw fit. After the judge's review was completed, the Staff Judge Advocate's Recommendation was then served on Major Hasan. *Id.* Following this service, Major Hasan has time to submit his clemency petition and raise additional matters to the convening authority pursuant to RCM 1105.[2] Such matters include, "[m]atters in mitigation which were not available for consideration at the court-martial." 2012 Manual for Courts-Martial Rule 1105(b)(1)(C). Major Hasan has retained a civilian defense counsel to represent him in this key phase of the court-martial. ECF No 65. The civilian defense counsel has relayed that he will need one year to properly review the 96 volume record of trial and prepare and submit clemency or other additional matters to the convening authority. While typically an accused is authorized up to 30 days to submit matters in extenuation and mitigation, this is a capital case, with a voluminous record of trial for the new civilian defense

---

[2] RCM 1105(b)(1) states "The accused may submit to the convening authority any matters that may reasonably tend to affect the convening authority's decision whether to disapprove any findings of guilty or to approve the sentence."

counsel to review for error.  The request for clemency presents Major Hasan with his "best hope

for sentence relief." *United States v. Stephenson*, 33 M.J.  79, 83 (C.M.A.  1991).  The

convening authority will take whatever action he or she believes is necessary and proper after

Major Hasan submits his clemency petition in early 2017.

## ARGUMENT

The Supreme Court has recognized the authority of district courts to "defer[] civil

proceedings pending the completion of parallel criminal prosecutions when the interests of

justice seem[] to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.  27 (1970).

This Court previously laid out the factors this Circuit uses in determining whether a stay should

be granted in a civil trial pending the completion of a criminal trial: "(1) the interests of the

plaintiff in proceeding with the civil litigation as balanced against the prejudice to them if it is

delayed; (2) the public interest in the pending civil and criminal investigation; (3) the interests of

and burdens on the defendant; (4) the interest of persons not parties to the civil litigation; and (5)

the convenience of the court in the management of its cases and the efficient use of judicial

resources."  ECF No. 50 at 4 (citing *Barry Farm Resident Council, Inc. v. Dept. of Navy*, Nos.

96-cv1450, 96-cv-1700, 1997 WL 118412, at *1 (D.D.C. 1997(citing cases)).  These factors are

not a rigid formula for determining the granting of stays.  Rather, "[t]he court must make such

determinations in the light of the particular circumstances of the case." *Sec.  & Exch.  Comm'n v.

Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C.  Cir.  1980).  In the case at bar, the particular

circumstances in light of the aforementioned factors clearly demonstrate the continued need for a

stay.  As such, Plaintiffs' motion to lift the stay should be denied.

**1. Plaintiff is Not Prejudiced by a Continued Delay in the Proceeding**

Although Plaintiffs make a blanket statement that they have been harmed by the delay, they fail to articulate any particularized prejudice they have suffered.  *See* generally ECF No. 66. Plaintiffs do cite to ECF No. 63, where they speculate that the delay will cause spoliation of documents and witnesses.  *See id.* at 11.  Due to Plaintiff's concerns, the Court ordered Defendants to affirm that it has placed a "LITIGATION HOLD on emails and other documents related to Plaintiff's allegations."  Minute Order, Civ. Act.  No. 12-1802, January 8, 2016.  The Court also stated that "the Government shall make good faith efforts to track the potential Government witnesses known to have information related to the case."  *Id.*  The Defendants have confirmed both that a litigation hold was in place and that it "has undertaken to identify and locate those government employees known to have information related to the case and will make a good faith effort to track the same while litigation in the above captioned case is pending." ECF No. 64.  This endeavor by the Defendants is ongoing.

**2. Both the Public and the Defendant have Great Interest in the Criminal Trial**

The public's interest in Major Hasan's trial cannot be exaggerated.  "[T]he Court cannot overstate the importance of allowing Major Hasan's court-martial to reach its conclusion without any interference from this Court."  ECF No. 50 at 9.  The case has generated significant media coverage given the nature of the crimes for which Major Hasan was convicted.  It is vitally important in any trial to ensure that a Defendant is provided all the due process to which he is entitled.  This ensures that the administration of justice is fair and that the public in general, and military members more specifically, have faith in the system and that the system works regardless of the charges and the defendant.

As discussed earlier, in a military trial, the case is not over upon conviction and sentencing. There are "numerous steps in the process and the need to proceed with particular care."  Minute Order, Civ. Act. No. 12-1802, January 8, 2016.  These steps need to be taken after the trial and the case is only complete and ready for appellate review after the convening authority takes action on the findings.  This Court previously recognized that the "convening authority is not just a rubberstamp, but rather represents a crucial moment in the determination of a soldier's guilt." ECF No. 50 at 7.  The "[convening authority] may, among other remedies, suspend all or part of the sentence, disapprove a finding or conviction, or lower the sentence."  *Id.* (quoting Congressional Research Service, R. Chuck Mason, "Military Justice: Courts-Martial, An Overview," 8 (2013).  As this Court has stated, "the public at large has a strong interest in the unimpeded resolution of Hasan's court-martial free from any taint of unlawful command influence."  ECF No. 50 at 10.

The Government reiterates that military courts view unlawful command influence as the "mortal enemy of military justice," and that ".  .  .  no reviewing court may properly affirm findings and sentence unless it is persuaded *beyond a reasonable doubt* that the findings and sentence have not been affected by the command influence." *See United States v.  Thomas*, 22 M.J.  388, 393 (C.M.A.  1986).  "The hierarchical nature of military life makes these protections required.  Military leaders are sworn to follow the lawful orders of their superiors.  However, a criminal justice system in which the result of a trial can be directed or influenced by superiors would be unjust.  The prohibitions against (unlawful command influence) are integral to our military justice system."  ECF No. 44-1, Mulligan Decl.

Even actions or statements that merely create the appearance of influencing those involved in the criminal process (to include the convening authority) are sufficient to require the prosecution

to then bear the burden of proving, beyond a reasonable doubt, that unlawful command influence did not taint the process. *See United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994). While the timeline for convening authority action in Major Hasan's case has shifted to the right, through no fault of the Defendants, the concerns about command influence have not been lessened.

The importance of protecting the court-martial from even the appearance of unlawful command influence remains unchanged. Major Hasan's criminal defense team is duty bound to take whatever good-faith position the evidence allows in defending their client and is sure to look for even the slightest hint of unlawful command influence in order to vigorously defend their client. As this Court recognized in its Order staying the case, "given the position of Defendants McHugh and Hagel in the military chain of command, [filing an answer or a motion to dismiss] would very likely raise the specter of unlawful command influence in the court-martial, as the Secretaries would be directly addressing the issue of Hasan's responsibility for the Fort Hood shooting." ECF No. 50 at 6-7.

### 3. The Interests of Third Parties in the Ongoing Criminal Proceedings May be Irrevocably Harmed if the Stay is Lifted.

As the Court has previously noted, the Plaintiffs in this case are the representatives and family members of 9 of the 13 individuals killed in the 2009 Fort Hood shootings, 19 of the 32 individuals wounded, along with their family members, and other witnesses who Plaintiffs allege were injured psychologically and their families. See Am. Compl. ¶¶ 127-169. While Plaintiffs make up a substantial number of the victims in this case, they do not make up all of the victims. "Although the Plaintiffs involved in this case may understand and wish to proceed onward with the civil case with the potential for allegations of unlawful command influence, these Plaintiffs are not the only ones impacted by the decision to stay the case. There are four families of those

killed and thirteen individuals wounded by gunfire on November 5, 2009, whose interests would also be affected." ECF No. 50 at 10. Their interests could be harmed by proceeding with this civil case and creating serious concerns of unlawful command influence or newly discovered evidence impermissibly affecting the convening authority during this sensitive phase of the trial.

### 4. Plaintiffs fail to specify how the problem of unlawful command influence could be prevented by sealing portions of the case.

In paragraph 45 of their motion, Plaintiffs state, without any further discussion, that "[a]s to the Army, Secretary of Defense, and related John Does, concerns of undue command influence could be addressed by sealing their portion of the case until after Hasan's court martial finally ends." In support of this proposition, Plaintiffs cite *United States v. Hubbard*.[3] But, at footnote 5 of its January 30, 2014 order, the Court informed Plaintiffs that they should justify their argument in favor of sealing documents by reference to the factors in *United States v. Hubbard*. *Hubbard* sets forth a number of factors a court may use in "determining whether and to what extent a party's interest in privacy or confidentiality of its processes outweighs [the] *strong presumption in favor of public access to judicial proceedings*." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991) (emphasis added). *See also E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (explaining that "the starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings.'" (citation omitted)). Plaintiffs have provided no legal arguments to overcome this "strong presumption" and do not even address the factors set forth in *Hubbard*, as these factors clearly weigh against introducing the broad seal they argue for. For example, the first factor set forth in *Hubbard* is "the need for public access to the documents at issue." 650 F.2d at 317. In this high profile case, the portions related to the Secretaries of the

---

[3] 650 F.2d 293 (D.C. Cir. 1980).

Army and Defense are sure to generate intense public interest.  Sealing the documents may even cause intensified public scrutiny by raising concerns about governmental transparency.  As such, the case at hand should be stayed until it can properly proceed with appropriate public access to the proceedings.

**5. The Efficient Use of Judicial Resources Favor a Stay.**

Plaintiffs appear to argue that the case should alternatively continue against the Director of the Federal Bureau of Investigation, even if it remains stayed against the other named federal defendants, as there is no concern regarding unlawful command influence.  *See* Motion to Lift Stay at 12.  Plaintiffs make an unsupported statement that because of the "additional one year delay…concerns about potential judicial inefficiency no longer support a stay under the 'interests of justice' test."  *Id.*  They fail, however, to point to any basis for this assertion or  adequately address the Court's conclusions that a bifurcated case "would plainly result in an inefficient consideration of the issues in this case" and "that a partial stay would be inappropriate here as it would not serve the interests of justice, which includes concerns of judicial efficiency."  ECF No. 50 at 9.  Specifically, this Court held that "given the close relationship of the claims against the various Government Defendants in this case…a partial stay would likely lead to duplicative motions practice and discovery rulings, requiring the Court and the parties to address the same set of issues multiple times through multiple sets of briefing."  *Id.*  Indeed, separation of this case at this time would still result in the litigation of the same issues multiple times before this Court.

## CONCLUSION

In conclusion, despite Plaintiffs' claims that the stay of this matter is part of a longstanding "political correctness" conspiracy, the legitimate rationales that justified the initial grant of the stay remain present today.   For these reasons, the Defendants respectfully requests that the Court deny the Plaintiffs' Motion to Lift Stay.

Respectfully Submitted,

CHANNING D. PHILLIPS
D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN
D.C. Bar # 924092
Chief, Civil Division

BY: _____/s/_____
DERRICK GRACE
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2574
derrick.grace@usdoj.gov