## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAWN NELSON MANNING, *et al.*,   )
                                 )
        **Plaintiffs,**        )
                                 )
        **v.**                )  **Civil Action No. 12-1802 CKK**
                                 )
SECRETARY OF THE ARMY, *et al.*,  )
                                 )
        **Defendants.**      )
                                 )

## <u>MOTION TO DISMISS</u>

Federal Defendants[1] hereby move pursuant to Rule 12(b)(1), (3) and (6) of the Federal

Rules of Civil Procedure to dismiss this action.[2]  The Court should also dismiss all claims

---

[1] According to the Amended Complaint (ECF No. 22), Plaintiffs have named the following federal defendants: 1) John McHugh, former Secretary of the Army; 2) Charles T. Hagel, former Secretary of Defense; and 3) Robert Mueller III, former Director of the Federal Bureau of Investigation ("FBI").  Each has been sued only in an official capacity.  <u>See</u> ECF No. 22, ¶¶ 172-174.  By operation of Fed. R. Civ. P. 25(d), however, the current Acting Secretary of the Army (Robert M. Speer), the current Secretary of Defense (Jim Mattis) and the current Acting Director of the FBI (Andrew McCabe) have been substituted as the proper defendants.

[2] To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of Defendants.  <u>See</u> Fed. R. Civ. P. 12(b); 56.  Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless he submits his own affidavit or other proper, documentary evidence contradicting the assertions in the documents.  <u>See</u> <u>Neal</u> v. <u>Kelly</u>, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
    (1) give an opportunity to properly support or address the fact;
    (2) consider the fact undisputed for purposes of the motion;
    (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
    4) issue any other appropriate order.

against the individually named Defendants.[3]  The grounds for this motion are more fully set forth

in the accompanying memorandum.[4]

Respectfully submitted,

CHANNING D. PHILLIPS
D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN
D.C. Bar #924092
Chief, Civil Division

BY: _____/s/_____
DERRICK W. GRACE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.
Wahington, D.C. 20530
(202)252-2574

*Attorneys for Defendant*

---

Fed. R. Civ. P. 56(e).

[3] 28 U.S.C. § 517 states that "any officer of the Department of Justice[] may…attend to the interests of the United States in a suit pending in a court of the United States."  This statute confers broad and unreviewable discretion on the Department.  *See Falkowski v. EEOC*, 783 F.2d 252, 253 (D.C. Cir.) (per curium), *cert. denied*, 478 U.S. 1014 (1986).  Moreover, it is not necessary for the United States to enter an appearance for a named party to submit a Statement of Interest.  *See, e.g., Weixum v. Xilia*, 568 F. Supp. 2d 35 (D.D.C. 2008) (statement of interest regarding suit against former official of the People's Republic of China).  As authorized by Section 517, this Statement of Interest, regarding the claims against John Does 1-6, is being filed solely on behalf of the United States to further the orderly administration of justice; it is not intended as an entry of appearance for any of the named Respondents.  Accordingly, nothing contained herein should be construed as a waiver or other limitation of any defenses available to the Respondents, including, without limitation, immunity from suit, insufficiency of service of process, failure to state a claim upon which relief can be granted, and failure to complete service of process in a timely manner.

[4] The Eleventh Claim is no longer before this Court.  *See* ECF No. 60.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SHAWN NELSON MANNING**, *et al*., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-1802 CKK** |
| | ) | |
| | ) | |
| **SECRETARY OF THE ARMY**, *et al*., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

     Secretary of the Army, Secretary of Defense, and Director of the Federal Bureau of

Investigation ("FBI"), collectively "Federal Defendants," through undersigned counsel, hereby

request the Court to dismiss the Complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules

of Civil Procedure. Some Plaintiffs have failed to exhaust their administrative remedies.  The

claims against the federal defendants are barred by the *Feres* Doctrine, Federal Employee's

Compensation Act ("FECA"), Texas Worker's Compensation Act ("TWCA") Discretionary

Function Exception, Public Duty Doctrine, and the Intentional Torts Exception.  Plaintiffs'

attempts to assert claims against John Does also fail as they are barred by the statute of

limitations, the common law claims would be barred as against the federal employees, and

Plaintiffs fail to state claim under *Bivens*. [5]

---

[5] Defendants further believe the venue will not be appropriate, under Fed. R. Civ. Proc. 12(b)(3) once the Court decides Defendants' Motion to Dismiss, if any claims remain, but this will more appropriately be considered once the Court makes its decision on this Motion.

# I.     INTRODUCTION

Plaintiffs' claims stem from the shootings at Fort Hood, Texas, by Major Nidal Hasan, on November 5, 2009. The claims against the military Defendants center around an alleged failure of the military to appropriately hire, supervise, discipline, and discharge Hasan.  Plaintiffs also argue that the federal defendants mistreated Plaintiffs after the shooting.  *See* Am. Compl. ¶ 25 The claims against the FBI allege that it was negligent in its conduct of an investigation into Hasan. *Id*.

Defendants rely on the facts as submitted by Plaintiffs, without conceding their accuracy, the Exhibits to Plaintiffs' Amended Complaint, and the Exhibits attached hereto.

# II.     LEGAL STANDARDS

A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be presented as a facial or factual challenge. "A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint, while a factual challenge is addressed to the underlying facts contained in the complaint." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (internal quotations and citations omitted). When defendants make a facial challenge, the district court must accept the well-pleaded allegations contained in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Erby v. U.S.*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). With respect to a factual challenge, the district court may consider materials outside of the pleadings to determine whether it has subject matter jurisdiction over the claims. *Jerome Stevens Pharmacy, Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The plaintiff bears the responsibility of establishing the factual predicates of jurisdiction by a preponderance of evidence. *Erby*, 424 F. Supp. 2d at 182.

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial

decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." Courts "may not find a waiver unless Congress' intent is 'unequivocally expressed' in the relevant statute." *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 14 (D.D.C. 2015) (internal citations omitted).

In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As with facial challenges to subject-matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted). A "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950.

### III.   ARGUMENT

**A.  Plaintiffs' claims against the federal defendants in their official capacity should be dismissed as Plaintiffs fail to name a proper party.**

The FTCA provides "a limited waiver of sovereign immunity that makes the federal government liable to the same extent as a private individual for certain torts of federal employees acting within the scope of their employment." *Johnson v. Veterans Affairs Medical Ctr.*, 133 F.

3

Supp. 3d 10, 14-15 (D.D.C. 2015). "The FTCA directs that the exclusive remedy for tort claims is an action against the United States rather than against the individuals or the particular government agencies." *Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (1990). "FTCA suits 'must name the United States as defendant.'" *Johnson*, 133 F. Supp. 3d at 16 (citing *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345-46 (D.C. Cir. 1961). Plaintiffs have therefore sued the wrong parties. The fact that the "FTCA claim must be against the United States—is not a trifling matter: in this case, its absence compels dismissal." *Johnson*, 133 F. Supp. 3d at 16.

Similar to the case at bar, since the Plaintiffs in *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1316-17 (D.D.C. 1985) "elected to sue the agencies and the officials rather than the government itself, the 'official capacity' aspect of their lawsuit must fail for that reason alone." Plaintiffs failed to sue the proper party and their claims should be dismissed.

### B.  Plaintiffs Failed to Properly Exhaust Their Claims.

Congress placed a prerequisite on suits brought under the FTCA that the aggrieved party must first present his "claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." See *GAF Corp.* v. *U.S.*, 818 F.2d 901, 904 (D.C. Cir. 1987); 28 U.S.C. § 2675(a). A claimant may not bring action under the FTCA until all administrative remedies have been exhausted. *McNeil v. U.S.*, 508 U.S. 106, 113 (1993), see 28 U.S.C. § 2675(a). "Under the FTCA, exhaustion occurs once a claimant has presented to the appropriate federal agency with a claim describing the alleged injury with particularity and setting forth a "sum certain" of damages, and the agency has (1) denied the claim in writing or (2) failed to provide a final disposition within six months of the claim's filing." *Cureton v. U.S. Marshal Service*, 322 F. Supp. 2d 23 (D.D.C 2004).

In order to properly exhaust their administrative remedies, Plaintiffs' claim must also be timely filed under the statute. Title 28 U.S.C. § 2401(b) provides the following "a tort claim

against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.

"Statute of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time" and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). "Section 2401(b) . . . is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Id.* at 117. § 2401(b) imposes a condition on the United States' limited waiver of sovereign immunity, courts "should not take it upon [themselves] to extend the waiver beyond that which Congress intended." *Id.* at 117 – 18; *see also Sexton v. U.S*, 832 F.2d 629, 633 (D.C. Cir. 1987).

A significant number of Plaintiffs' failed to submit a timely claim. Most notably, none of the deceased Plaintiffs filed with the military and all of their claims filed with the FBI were untimely. Because they failed to properly exhaust their administrative remedies, their claims, as well as the claims of other Plaintiffs identified in Exhibits A, B, and C should be dismissed.

    1.   Some Plaintiffs Failed to File a Claim with the Agency.

As demonstrated by the attached declarations, Plaintiffs Libardo Caraveo (Am. Compl. ¶ 127), Justin DeCrow (Am. Compl. ¶ 128), Frederick Greene (Am. Compl. ¶ 129), Jason Hunt (Am. Compl. ¶ 130), Amy Krueger (Am. Compl. ¶ 131), Russell Seager (Am. Compl. ¶ 132), Francheska Velez (Am. Compl. ¶ 133), Baby Velez (unborn child) (Am. Compl. ¶ 161), Juanita Warman (Am. Compl. ¶ 134), Kham Xiong (Am. Compl. ¶ 135), and P.Z. Zeigler (Am. Compl. ¶ 154(b)) failed to file an administrative claim with the military and, therefore, their claims should be dismissed as it relates to the allegations against the military. Similarly, Michelle Sims

(Am. Compl. ¶ 151(b)), Eileen Rodriguez as personal representative of Unborn Baby Velez (Am. Compl. ¶ 161), Eileen Rodriguez as Unborn Baby Velez' Grandmother, Juan G. Velez as Unborn Baby Velez's grandfather (Am. Compl. ¶ 153(b)) failed to file a claim with the FBI and their claims should be dismissed as it relates to these allegations.

2.   Many Plaintiffs Failed to Timely File Their Claim with an Agency.

The seminal case regarding the accrual of the FTCA statute of limitations is *United States v. Kubrick*, 444 U.S. 111 (1979). In *Kubrick*, the Veterans Administration hospital treated the plaintiff and as a consequence of his medical care, the plaintiff suffered hearing loss in 1968. The plaintiff did not learn that his injury may have been caused by medical negligence until 1969. Regardless, the Supreme Court held that, as a matter of law, a claim accrues when a plaintiff:

> Armed with the fact about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

*Kubrick*, 444 U.S. at 123. The linchpin of the *Kubrick* holding is that a claim accrues when a plaintiff is aware, or, in the exercise of reasonable diligence, should have become aware of his injury and its cause. *Id*. at 122. In *Rotella v. Wood*, 528 U.S. 549, 555 (2000), the Supreme Court made clear that knowledge of the injury is the linchpin for accrual. "[I]n applying a discovery accrual rule, [the Court] has been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id*. An FTCA claim accrues when a plaintiff possesses sufficient information with respect to his injury that, "[h]ad he sought out independent legal and [expert] advice at that point, he should have been able to determine in the two-year period whether to file an administrative claim." *McIntyre v. United States*, 367 F.3d 38, 53 (1st Cir. 2004).

A plaintiff need not have legal proof of injury and cause, but must merely suspect the two exist in order for accrual to occur. The accrual of a claim is not a function of a plaintiff's subjective beliefs, reactions, or even personal knowledge. Rather, courts apply an objective reasonable person standard to determine when a plaintiff knew or should have known of their injury and the cause. *See Webb v. U.S.*, 535 F. Supp. 2d 54, 58 (D.D.C. 2008) ("Courts measure discovery of the injury by when the claimant has discovered, or in the exercise of reasonable diligence should have discovered, the act constituting the alleged malpractice.").[6]

Plaintiffs' claims accrued no later than November 5, 2009 when Hasan committed his crimes on Fort Hood. At that time, Plaintiffs knew of the attack, who committed the attack, and of their injuries. The "'general rule' is 'that accrual occurs when the plaintiff discovers that he has been injured *and who caused the injury*.'" *Smith v. U.S.*, 518 F. Supp. 2d 139, 150 (emphasis in original) (citing *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); *see also Chappell v. Rich,* 340 F.3d 1279, 1283 (11th Cir.2003) (claims under 42 U.S.C. §§ 1983 and 1985 "will not accrue ... until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) *who has inflicted the injury*" (emphasis added)); *Gartrell v. Gaylor,* 981 F.2d 254, 257 (5th Cir.1993) (statute of limitations on § 1983 claim "begins to run when the plaintiff is in possession of the

---

[6]   *See also McDonald v. U.S.*, 843 F.2d 247, 248 (6th Cir. 1988) (once a plaintiff is cognizant of the injury and its cause, she is required to make a reasonable inquiry that may reveal the existence of a colorable claim of medical malpractice); *Nemmers v. U.S.*, 795 F.2d 628, 631-32 (7th Cir. 1986) (the plaintiff need not know the cause is certain or more likely than not the cause, but only that it is a potential cause of injury for the statute to begin running); *Price v. U.S.*, 775 F.2d 1491, 1493 (11th Cir. 1985) (plaintiff need not know the precise cause of the injury, only that it may be attributable to some act of the defendant); *Coffie v. U.S.*, 43 Fed. Appx. 808, 811 (6th Cir. 2002) (A claimant's duty of diligent inquiry regarding a possible claim under the FTCA is measured by an objective standard, i.e. – whether a reasonable person's suspicions of an injury would induce the individual to seek professional advice regarding legal recourse.).

critical facts that he has been hurt *and who has inflicted the injury*" (internal quotation and citation omitted) (emphasis added)).  The Plaintiffs should have known of their injury and its cause sufficient enough to seek advice in the legal community on November 9, 2009. Once their claim accrued, the law imposed on them a duty to make a reasonable inquiry to determine whether a colorable claim existed.

Whether Plaintiffs knew of the alleged negligence of either the military or the FBI is not relevant to accrual. The Third Circuit stated that the Supreme Court's language, in *Kubrick*, "suggests that once an injured party learns of his injury and its immediate cause, then he is on the same footing as any other injured party. The fact that a reasonably diligent investigation would not have discovered the defendant's involvement is no longer relevant for the purposes of accrual of the statute of limitations." *Zeleznik v. U.S.*, 770 F.2d 20, 24 (3rd Cir. 1985).

In *Zeleznik*, Plaintiffs' son was killed by an illegal alien who had recently been released from a psychiatric institution. *Id*. at 21. Plaintiffs were unaware until much later, after the statute of limitations had run, that the killer had previously attempted to turn himself in to the Immigration and Naturalization Service. *Id*. The Third Circuit held that Plaintiffs:

> knew of the *immediate cause* of [their son's] death, the act of Vernal Walford. They, however, did not know of the alleged negligent participation of the INS. They argue that the rule in *Kubrick* ought to be extended so that the cause of action against INS should not have accrued until they obtained knowledge of INS' alleged involvement.

*Id*. at 23. The Third Circuit rejected Plaintiffs' argument and dismissed the case stating that, similar to the case before this Court, the "undisputed facts show that the Zelezniks knew in 1974 of their injury and its immediate cause." *Id*. at 24. Other circuits have similarly held that a claim accrues when the immediate cause of the injury is known. *See Dyniewicz v. U.S.*, 742 F.2d 484, 486 (9th Cir. 1984) ("Discovery of the cause of one's injury, however, does not mean knowing

who is responsible for it. The 'cause' is known when the immediate physical cause of the injury is discovered."); *Steele v. U.S.*, 599 F.2d 823, 828 (7th Cir. 1979).

This District has repeatedly cited favorably to *Zeleznik*. In *Loughlin v. U.S.*, 230 F. Supp. 2d 26, 40 (D.D.C. 2002) this Court cited that case, which said "the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled redress." *See also Sexton v. U.S.*, 832 F.2d 629, 634 (D.C. Cir. 1987); *Cronauer v. U.S.*, 394 F. Supp. 2d 93, 104 (D.D.C. 2005). Since Plaintiffs clearly knew of their injury and the person who inflicted that injury no later than November 5, 2009, any claim filed after November 5, 2011 is untimely and should be dismissed. The list of Plaintiffs who failed to timely file is attached as Exhibits B and C.

   3.   Plaintiffs' Survival Act and Wrongful Death Act Claims must be properly
        exhausted.[7]

"The Wrongful Death Act creates 'an entirely new right of action in favor of designated beneficiaries' while the Survival Act 'preserves and carries forward for the benefit of the deceased's estate the right of action which the deceased would have had, had he not died.'" *Eastridge v. U.S.*, 2007 WL 495797, *11 (D.D.C. Feb. 12, 2007) (citing *Semler v. Psychiatric Inst. of Washington*, D.C., Inc. 575 F.2d 922, 924-25 (D.C. Cir. 1978). In *Eastridge*, plaintiff argued that he was "not required to exhaust the administrative remedies of the Federal Tort Claims Act since Plaintiff's Complaint is not based on tort law" rather the causes of action were based on the D.C. Code. *Id.* at *12. The Court rejected plaintiff's argument and dismissed the

---

[7] Plaintiffs conflate the statute for the Survival Act (D.C. Code § 12-101), Claim 1; and the Wrongful Death Act (D.C. Code § 16-2701). Defendants will address Claim 1 as the Survival Act and Claim 2 as the Wrongful Death Act as that appears to be the intent.

case stating that the allegations, like in the case before this Court, sound in tort, they "fit squarely within the ambit of claims cognizable under the FTCA" and as such plaintiff had to exhaust the administrative remedies. *Id.* Thus Claim 1 and Claim 2 are both subject to all of the defenses provided by common law and the FTCA. *See also Schneider v. Kissinger*, 310 F. Supp. 2d 251, 269 (D.D.C. 2004) ("The question (of whether exhaustion is necessary) is not, as the plaintiffs suggest, whether the initial complaint was explicitly based on FTCA jurisdiction but whether that pleading advanced claims against the United States for money damages or injury" as defined by 28 U.S.C. § 2675(a).).

As demonstrated above, none of the deceased Plaintiffs through their personal representatives filed a timely claim with either agency; therefore, the Court should dismiss Plaintiffs' First Claim in its entirety. The Court should likewise dismiss the Second Claim as it relates to the individuals identified that failed to exhaust their administrative remedies.[8]

## C. Military Plaintiffs and their family members' claims against the military defendants should be dismissed as they are barred by the *Feres* doctrine.

Under the FTCA, claims brought incident to military service are not cognizable under the *Feres* doctrine. The Supreme Court has held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. U.S.*, 340 U.S. 135, 146 (1950). The *Feres* doctrine represents an important exception to the waiver of sovereign immunity in the FTCA. Additionally, "a motion to dismiss under the *Feres* doctrine is treated as a motion to dismiss for

---

[8] Plaintiffs First and Second claims fail to allege any act by the Federal Defendants that would place liability on the Federal Defendants, therefore, the Claims should be dismissed. Rather Plaintiffs state that "[a]s a direct, proximate and foreseeable result of the terrorist defendants' conduct, all as set forth in the complaint, the decedents were shot and killed by Hasan during his jihadi terror attack at Fort Hood." Am. Compl. ¶¶ 243, 250.

lack of subject-matter jurisdiction." *Schnitzer v. Harvey*, 389 F.3d 200, 202 (D.C. Cir. 2004).

"The doctrine has been applied consistently to avoid examining acts of military personnel which were allegedly negligent with respect to other members of the armed services." *Monaco v. U.S.*, 661 F.2d 129, 134 (9th Cir. 1981).

In the District of Columbia, there is a three-part test to determine whether an activity is incident to military service. The factors to be considered include: (1) "the injured servicemember's duty status," (2) "the site of the injury," (3) "and the nature of the activity engaged in by the servicemember at the time of his injury." *Schnitzer*, 389 F.3d at 203. Moreover, "none of the three factors is itself dispositive; each contributes to our assessment of the totality of the circumstances in determining whether the injury is properly understood as 'incident to service' within the meaning of *Feres*." *Id*. All factors weigh in favor of the conclusion that the injuries were incident to military service. All servicemember Plaintiffs were on active duty at the time of the shooting. *See* Exh. D. They were also performing military functions at the time of the shooting. The shooting occurred inside the deployment center on the Fort Hood Military Reservation. *See* ECF No. 22-1 at 10 ("Lieberman Report"); ECF No. 22-2 at 7 ("Warren Report"). If they were not performing military functions there would be no reason for them to be there. As depicted in the Complaint, most of the servicemembers were preparing for deployment, returning from deployment, or assisting in that process. *See* Am. Compl., ECF No. 22 ¶¶ 127, 128, 130, 132, 133, 134, 135, 137, 140, 144, 154, 158, 159. Another rendered aid as a medic. *See* Am. Compl., ECF No. 22 ¶ 155. Another servicemember was working in a building nearby. *See* Am. Compl., ECF No. 22 ¶ 156. Clearly the servicemember Plaintiffs meet all the factors of the *Feres* test and their claims should be dismissed. Plaintiffs even anticipate the defense in their amended complaint. *See* Am. Compl. ¶ 123.

Family members of servicemembers are barred from bringing a complaint against the military defendants. "It is well established that *Feres* bars recovery by family members where the cause of action is ancillary or derivative to the serviceman's action for his own injury received incident to military service." *Lombard v. U.S.*, 690 F.2d  215, 223 (D.C. Cir. 1982). In *Lombard*, the D.C. Circuit endorsed a "but for" or "genesis" test for whether claims are derivative. *See id.* at 223.[9] Thus, if the alleged injury to the family member would not have occurred "but for" the alleged injury to the servicemember, the claim is derivative to that member's claim. In a case where the servicemember's claim is barred, the family member's claims are barred as well. "[T]he viability of such derivative claims are commensurate only with the viability of the primary claim." *Harbury v. Hayden*, 444 F. Supp. 2d., 43-44 (D.D.C. 2006). This is "true even when the claims of the family members are independent of the serviceman's cause of action under applicable state law." *Gaspard v. U.S.*, 713 F.2d 1097, 1102 (5th Cir. 1983); *See also Lombard*, 690 F.2d at 226; *In re Agent Orange Product Liability Litigation*, 818 F.2d 201, 203 (2nd Cir. 1987); *Van Sickle v. U.S.*, 285 F.2d 87, 90 (1960).

Courts consistently hold that claims, like the ones here, for such injuries as emotional distress, physical distress, and the loss of consortium are derivative of the servicemember's

---

[9] The dissent in *Lombard* explains that

> Two lines of authority have evolved with regard to FTCA recovery by military family members.  Members of a soldier's family have recovered under the GTCA for personal injuries they have sustained directly, independent of any harm to the soldier….  At the same time, recovery by family members has been disallowed on the basis of Feres where the soldier sustains a service-connected injury and the family member experiences a derivative loss solely by reason of the soldier's disability or death."

*Id.* at 231.

claim and; therefore, as all the family members' claims are derivative of the servicmembers' claims, they should be dismissed.  *See Harbury*, 444 F. Supp. 2d 19 at 43-44; *Kendrick v. U.S.*, 877 F.2d 1201, 1206 (4th Cir. 1989) (holding that loss of consortium for family member was barred by *Feres*); *Adkins v. U.S.*, 869 F.2d 593 (4th Cir. 1989) ("Emotional distress suffered by an injured serviceman's family as a result of the serviceman's condition derives from the serviceman's injury."); *Harrison v. U.S.*, 479 F. Supp. 529, 532-35 (D.Conn. 1979) (consortium); *St. John v. Int'l Ass'n of Machinists Aerospace Workers, Local # 1010, Dist. # 118, Local Lodge No. 254,* 139 F.3d 1214, 1217 n. 1 (8th Cir.1998) (consortium); *DeFont v. U.S.*, 453 F.2d 1239 (1st Cir. 1972) (mental disorder and anguish); *Persons v. U.S.*, 925 F.2d 292 (9th Cir. 1991) (mental anguish); *Monaco*, 661 F.2d at 134 (physical injury); *In re Agent Orange*, 818 F.2d at 203 (physical injury); *Mondelli v. U.S.*, 711 F.2d 567 (3d Cir. 1983) (physical injury).

### D.  <u>The Claims of the Federal Civilian Employees and their Family Members are Barred by the Federal Employment Compensation Act</u>

The Complaint identifies Lovickie Byrd, Anna Ellis, Kimberly Munley, Linda Londrie, , and Julia Adee as civilian federal employees.  Plaintiff Diana White was also a civilian federal employee. *See* Exh. E.  As such their claims, as well as those of their family members', are barred by the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.*, which provides a comprehensive remedy to a federal employee for injuries sustained while in the performance of their duty. 5 U.S.C. § 8102.  The remedy provided by FECA is the exclusive remedy for injuries falling within its coverage. 5 U.S.C. § 8116(c) provides in part as follows:

> (c) The liability of the United States [under FECA] . . . with respect to the injury or death of an employee *is exclusive and instead of all other liability of the United States* . . . to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United

states . . . because of the injury or death in a direct judicial proceeding, in a civil action, . . . or under a federal tort liability statute. (Emphasis added).

As the Supreme Court has recognized, FECA's exclusive-liability provision was designed to protect the Government from suits under statutes, such as the FTCA, that had been enacted to waive the Government's sovereign immunity. *Lockheed Aircraft Corp. v. U.S.*, 460 U.S. 190, 193-94 (1983); *see also Briscoe v. Potter*, 355 F. Supp. 2d 30, 39 (D.D.C. 2004) (*citing U.S. v. Lorenzetti*, 467 U.S. 167, 169 (1984) ("The United States' liability for work-related injuries under FECA is exclusive. . . ."); *Turner v. Tenn. Valley Auth.*, 859 F.2d 412, 413 (6th Cir. 1988) (The Supreme Court "has consistently held that FECA is the exclusive remedy employed by federal agencies and instrumentalities."); *DiPippa v. U.S.*, 687 F.2d 14, 17 (3d Cir. 1982) ("Where FECA applies, its remedy is exclusive and bars all other claims for compensation against the Government.")).

The exclusive coverage of FECA to claims involving injuries in the federal workplace is stated explicitly in the statute. *Briscoe*, 355 F. Supp. 2d at 39 (quoting 5 U.S.C. § 8116(c) (FECA "is exclusive and instead of all other liability of the United States . . . to the employee . . . because of the injury . . . in a civil action. . . .")). In enacting the exclusivity provision, Congress adopted the principal compromise commonly found in worker's compensation legislation, that employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the government. *See id.* at 193-94. FECA directly bars a tort action filed against the government by an injured federal employee. *GAF Corporation v. U.S.*, 1996 U.S. Dist. LEXIS 10668 *26 (D.D.C. July 22, 1996). The exclusivity provision of 5 U.S.C. § 8116(c) not only bars claims of the employee, but also works to bar all others seeking compensation for the federal employee's workplace injury including "legal representative, spouse, dependents, next of kin." *See Cahn v. U.S.*, 269 F. Supp. 2d 537,

14

544 (D.N.J. 2003); *also Boyer v. U.S.*, 510 F. Supp. 1081, 1082 (E.D. Pa. 1981). Thus all claims

by the federal employees and their family members should be dismissed.

### E.  Contract Employee's Claim is Barred

During the relevant time period, Plaintiff Harper was an employee of Ignesis Arora

Staffing ("Ingnesis"), a government contractor to provide staff for the Carl R. Darnall Medical

Center at Fort Hood, Texas. Exh. F. The contract with the Army required Ignesis to provide

workers' compensation benefits. The Court should use Texas state law, since it is Texas law that

governs the contract. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff

Harper's FTCA claims because the Texas Workers' Compensation Act ("TWCA") provides that

workers' compensation benefits are the exclusive remedy for employees against employers for

work-related injuries and deaths. Tex. Labor Code §408.001(a).[10]

As discussed above, the FTCA allows tort claims against the United States "in the same

manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §

2674. The Government is entitled to raise any and all defenses that would potentially be

available to a private citizen or entity under state law. Therefore, if a private person under 'like

circumstances' would be shielded from liability pursuant to a state statute, lower courts must

decline to exercise subject-matter jurisdiction." *In re FEMA Trailer Formaldehyde Prods. Liab.*

*Litig.*, 668 F.3d 281, 288-89 (5th Cir. 2012) (citing *U.S. v. Olson,* 546 U.S. 43, 44 (2005).

To qualify as a statutory employer under the TWCA, the general contractor must enter

into a written agreement with the subcontractor under which the general contractor provides

worker's compensation insurance coverage to the subcontractor and employees. Tex. Lab. Code

§406.123(a). The requirement that the premise owner "provide" workers' compensation

---

[10] *But see Meiggs v. Associate Builders*, 545 A.2d 631 (D.C. App. 1988).

coverage has been extended in FTCA cases to situations where the United States requires the subcontractor to obtain workers' compensation coverage. *Doss v. U.S.*, 793 F. Supp. 2d 859 (E.D. Tex. 2011) (citing *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 353 (Tex. 2009)).

More importantly, the Fifth Circuit recently held that the United States Army was entitled to avail itself of the exclusive-remedy rule as a statutory employer under the TWCA. See *Willoughby v. U.S.*, 730 F.3d 476 (5th Cir. 2013). The Fifth Circuit reasoned that "[i]f a general contractor or premises owner adheres to the requirements of section 406.123 [of the TWCA], then as a 'statutory employer' it is effectively immune from the claims brought by a subcontractor because the employee's workers' compensation benefits are his or her exclusive remedy." Id. at 481. The court further explained that "[t]o become a statutory employer under Texas law, a premises owner or general contractor need not personally obtain or directly pay for the insurance or benefits." Id. (citing HCBeck, 284 S.W.3d at 353). "Rather, '[t]he Act only requires that there be a written agreement to provide workers' compensation insurance coverage.'" Id. (citing HCBeck, 284 S.W.3d at 353). Since the contract required Ignesis to provide worker's compensation coverage for Plaintiff Harper, her claims should be dismissed.

**F.** **Plaintiffs' Claims are Barred by the Discretionary Function.**

The FTCA's waiver of sovereign immunity, by its terms, does not apply to "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *U.S. v. Varig Airlines*, 467 U.S. 797, 808 (1988).

To determine whether the discretionary function exception applies, courts apply the two-part test established in *U.S. v. Gaubert*, 499 U.S. 315 (1991). *See Merry v. Nat'l Part Serv.*, 985 F. Supp. 2d 90, 91 (D.D.C. 2013). First, because the discretionary function exception applies only to "acts that involve an element of judgment or choice," courts determine whether any "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. If one does, then the employee has no choice but to follow that prescription and the exception does not apply. *Macharia v. U.S.*, 334 F.3d 61, 65 (D.C. Cir. 2003) (quoting *Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988)). If there is no such directive, courts undertake step two of *Gaubert* and consider "whether the judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23. More specifically, courts consider whether the judgment is "grounded in social, economic, [or] political policy," because "when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" Id. at 323 (quoting *Berkovitz*, 486 U.S. at 537). Although Plaintiffs may disagree with the government decisions at question, it is of no moment. "[T]he discretionary function exception immunizes even government abuses of discretion." *Shuler v. U.S.*, 531 F.3d 930, 935 (D.C. Cir. 2008).

**1.  Claims Against the Military are Barred by the Discretionary Function**.

At their core, Plaintiffs' claims regarding actions or inaction taken by the military and its members that allegedly resulted in their injuries come down to the alleged failure of the military to adequately manage Hasan's career by not properly supervising, disciplining, and separating him from the military. *See* Am. Compl. ¶ 25 ("the Army had a non-discretionary and constitutional duty to discipline, discharge, prosecute and/or imprison Hasan."). Here, although Plaintiffs allege that there exists some nondiscretionary duty, they fail to cite any. Conclusory

legal statements are insufficient to support a claim. *See Twombley*, 550 U.S. at 555. Nor is there any relevant statute, regulation, or policy that directs the action Plaintiffs believe should have been taken that does not allow for the subjective decisions and opinions of officials. Therefore, the Court must consider the second step of the *Gaubert* analysis.

Government decisions about the supervision of employees are policy decisions covered by the discretionary function exception as a matter of law. Plaintiffs' claims, therefore, should be dismissed for lack of subject-matter jurisdiction.

In *Burkhart v. Washington Metropolitan Area Transit Authority* ("WMATA"), 112 F.3d 1207, 1217 (D.C. Cir. 1997), the Court of Appeals reversed a district court's refusal to dismiss a negligent-supervision claim against WMATA. In analyzing the discretionary function exception in WMATA's authorizing legislation, the court applied the same *Gaubert* analysis that it applies to the FTCA discretionary function exception. *Id*. at 1216. The court concluded that, under the *Gaubert* analysis, "decisions concerning the hiring, training, and supervision of WMATA employees are discretionary in nature, and thus immune from judicial review." *Id*. at 1217. It reasoned that "supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. . . . Such decisions are surely among those involving the exercise of political, social, or economic judgment." *Id*.; s*ee also Daisley v. Riggs Bank, N.A*., 372 F. Supp. 2d 61, 82 (D.D.C. 2005) ("In this circuit, federal government hiring and employee supervision decisions are generally held to involve the exercise of political, social, or economic judgment, and therefore, to fall within the scope of the United States' sovereign immunity" (quotations omitted)); *see also Tabman v. F.B.I*, 718 F. Supp. 2d 98, 104 (D.D.C. 2010).

18

The Courts have been especially hesitant to intercede in military affairs as the "Constitution vests "[t]he complex, subtle, and professional decisions as to the composition, training, equipping and control of a military force' exclusively in the legislative and executive branches. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (citing *Gilligan v. Morgan*, 413 U.S. 83, 93-94 (1973). In *Kreis*, the D.C. Circuit Court found that a review of a decision not to promote an officer was nonjudiciable. *Id.* (citing *Guy v. United States*, 608 F.2d 867, 874 (Ct. Cl. 1979) ("Promotion under the selection board system results from the exercise of discretionary functions reserved for the Executive branch.").

In *Park v. Zatchuk*, 605 F. Supp. 207 (D.D.C. 1985), the Plaintiff sued his supervisors regarding their role in his Officer Evaluation Report. The Court found that Plaintiff could not maintain his claim stating "virtually all discretionary administrative decisions by federal officials . . . are entitled to the privilege of unfettered decisionmaking. (citing *Henderson v. Bluemink*, 511 F.2d 399, 403 (D.C. Cir. 1974). This Circuit has frequently found that evaluating and promoting servicemembers are acts that are clearly discretionary in nature. In *Lawrence v. Acree*, 665 F.2d 1319, 1327 (D.C. Cir. 1981), the Court found that individual defendants were absolutely immune from suit because "we believe it absolutely essential to the proper functioning of the government in the interests of the public that departmental officials must be able to evaluate the performance of employees free from intimidation or harassment." *See also Tonelli v. U.S.*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception.").

Similarly, it is well settled that any decision whether to discipline Hasan for any actions is discretionary in nature.

This court has long held that the decision 'whether to prosecute' is typically a 'quintessentially discretionary' function that involves judgment and requires

balancing policy goals and finite agency resources, thus meriting protection under the discretionary-function exception. In determining whether the exception applies, we have treated the decision to initiate an administrative proceeding as we do a decision to pursue a criminal prosecution.

*Loumiet v. U.S.*, 828 F.3d 935, 942 (D.C. Cir. 2016) (internal citations omitted). *See also Sloan v. U.S. Dept. of Housing and Urban Development*, 236 F.3d 756, 760 (D.C. Cir. 2001) ("The decision to initiate a prosecution has long been regarded as a classic discretionary function.") "'[A]gency officials performing certain functions analogous to those of a prosecutor' are not subject to suit under the discretionary function exce-ption to the FTCA." *Tabman*, 718 F. Supp. 2d at 104 (citing *Sloan*, 236 F.3d at 760).

Plaintiffs appear to allege that the military's public reaction to the shootings caused emotional distress. This argument does not lend itself to a tort cause of action (see below); however, even if it did, how the government responds to and what language it uses in addressing a shooting such as the one in this case, would be precisely the type of policy decision the discretionary function is intended to shield.

**2.   Claims against the FBI are barred by the discretionary function**.

Claims against the FBI are likewise barred by the discretionary function. Although Plaintiffs once again argue that decisions regarding any investigation into Hasan are nondiscretionary, they fail to identify any supporting policy, regulation or statute to support their theory. In fact, Plaintiffs' exhibits make clear that the decisions of the FBI and its agents called for individual judgment of the kind shielded by the discretionary function.

The Webster Commission Report, ECF No. 22-2, clearly indicates that there was no mandatory policy violated. The report states that "[w]e believe administrative or disciplinary action would be appropriate if FBI personnel violated known written policies or other binding directives….None of the missteps described in this Report involved such conduct." *Id*. at 156.

Specifically, the Report states that there was no policy regarding sharing information with the Department of Defense (*id.* at 79); ownership of interoffice leads (*id.* at 81); assignment or resolution of leads (*id.* at 76); deadline for resolution of leads (*id.* at 83); or for the settlement of interoffice disputes and disagreements (*id.* at 85).

Since there was no policy, regulation, or statute that mandated the action Plaintiffs' argue, the question turns to one of whether the discretionary decisions made by the FBI and its agents are of the type protected from FTCA suit by 28 U.S.C. § 2680(a). Plaintiffs' claim they were injured by the FBI's failure to investigate; however, the decision to investigate and the manner of investigation is clearly within the discretionary function exception. Because these are discretionary decisions, the FBI is immune from suit.

An "agency's decision whether to prosecute, investigate, or enforce has been recognized as purely discretionary and not subject to judicial review." *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 80 (D.D.C. 2010). "The United States Attorney General has absolute discretion in deciding whether to investigate claims for possible criminal or civil prosecution and such decisions generally are not subject to judicial review. *Leji v. Dep't of Homeland §*, 2015 WL 1299361, *2 (D.D.C. March 17, 2016); *see also Auleta v. Dep't of Justice*, 80 F. Supp. 3d 198, 202 (D.D.C. 2015). In *Heckler v. Chaney*, 470 U.S.821, 831 (1985), the Supreme Court stated that it "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."

The statutory basis for the FBI's authority to investigate crimes supports this conclusion. 28 U.S.C. § 535 specifically states that "the Federal Bureau of Investigation *may* investigate any violation of Federal criminal law." (emphasis added). The D.C. Circuit Court has long held that

"the power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful administration of the laws." *Community for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986); *see also Moses v. Kennedy*, 219 F. Supp. 762, 764 (D.D.C. 1963) (Plaintiff asked the court to order the FBI to arrest, imprison, and bring criminal prosecutions against certain individuals. The Court found that these types of "actions on the part of defendants, however, are clearly discretionary, and are decisions respecting such actions are committed to the Executive branch of the Government, not to the courts.").

"The decision to allocate limited government resources to investigate a reported crime, like the decision to allocate limited resources to prosecute a crime, is a discretionary function." *Martinez v. U.S.*, 587 F. Supp. 2d 245, 248 (D.D.C. 2008).  The Lieberman Report, at 10, states:

> Every day, these agencies are presented with myriad leads that require the exercise of sound judgment to determine which to pursue and which to close out.  Leaders must allocate their time, attention and inherently limited resources on the highest priority cases. In addition, the individual accused of the Fort Hood attack, Army Major Nidal Malik Hasan, is a U.S.Citizen. Even where there is evidence that a U.S. citizen may be radicalizing, the Constitution appropriately limits the actions that government can take.

The Warren Report is full of information regarding the limited resources available to investigate. The Report states that there was around 20,000 Aulaqi related documents only a few of which were related to Hasan, to which Aulaqi only responded to two. *See* Warren Report at 93. The Report further states that the analysts were required to review approximately 1,500 of these documents every month. *Id.* at 94. The Lieberman Report, at 41, found that the FBI did not interview Hasan or his superiors because they were afraid that to do so would reveal the investigation into Aulaqi. These types of decisions as to where to spend investigative resources

are precisely the type of decisions the discretionary function exception is intended to shield the executive agency from second guessing by the courts.

At its core, Plaintiffs' complaint alleges that, by not adequately investigating the leads on Hasan, the FBI failed to protect Plaintiffs. *See* Am. Compl. ¶ 25-26. The law in this jurisdiction clearly holds that this type of complaint is barred by the discretionary function exception. In *Shuler*, 531 F.3d at 203, the Plaintiff was shot while working as a confidential informant. Plaintiff alleged that "the government owed him a duty of care to conceal his identity as an informant and to protect him; that it breached his cover and by failing to protect him from the harm that followed; and that these actions were the proximate cause of his injury ." *Id*. at 204. In granting the defendant's motion to dismiss on grounds that the decisions were discretionary, the Court stated

> the duty or protection that Shuler alleges the government owed him was a discretionary duty, for which the discretionary function exception preserves the government's immunity from suit. Shuler alleges that the government abused its discretion in this case by not protecting him at all. But where, as here, the government conduct involves discretion and considerations of public policy, the discretionary function exception immunizes even government abuses of discretion.

*Id*. at 205-06. Plaintiffs appear to allege a general duty of the FBI to protect all citizens of the United States, which is a much broader duty than that specifically rejected by the Court in *Shuler*. The court rejected Shuler's argument, stating that no nondiscretionary duty was owed to Shuler because he "alleged only that government agents repeatedly promised to protect him, and did not allege an explicit promise of a specific type of protection."[11]  *Id*. at 206.

---

[11] The Court also rejected Shuler's request to "conduct discovery on the issue of whether government agents made any explicit promises of protection" because the "district court dismissed Shuler's case not because he failed to proffer adequate evidence, but because his allegations, even if true are insufficient to demonstrate subject matter jurisdiction under the FTCA.  *Shuler*, 531 F.3d at 206.

The manner in which an investigation is conducted is also held to involve unreviewable discretion. "[T]he sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice." *Sloan v. Dept. of Housing and Urban Development*, 236 F.3d 756, 762 (D.C. Cir. 2001).

### G. Plaintiffs' Claims are barred by the Public Duty Doctrine.

Federal Defendants are "entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim . . . ." 28 U.S.C. § 2674. Because the conduct that allegedly led to the criminal conduct of Hasan took place in the District of Columbia, D.C. law applies and the United States is entitled to any defense available under D.C. law. See, e.g., *Edmonds v. U.S.*, 436 F. Supp. 2d 28, 37 (D.D.C. 2006) (applying District of Columbia defenses to FTCA claim of negligent conversion that allegedly occurred in the District of Columbia).

In the District of Columbia, claims such as Plaintiffs' are barred by the public duty doctrine. Under the public duty doctrine, the "[g]overnment and its agents are under no general duty to provide public services, such as police protection, to any particular citizen." *Jeffries v. Dist. of Columbia*, 917 F. Supp. 2d 10, 31 (D.D.C. 2013) (citing *Warren v. Dist. of Columbia*, 444 A.2d 1, 4 (D.C. 1981)). [12] The public duty doctrine bars "'cases where individuals seek to hold the [government] liable for negligence or wrongful death because of a failure to protect a person.'" *Id.* (quoting *Taylor v. Dist. of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001)).

Perhaps most relevant to the facts here, "'as a general rule, there is no individual right of action for damages against the government for failure to protect a particular citizen from harm

---

[12] The public duty doctrine is also available under Texas state law. *See Fernandez v. City of El Paso*, 876 S.W.2d 370 (Tex.App.—El Paso 1993).

caused by the criminal conduct of another.'" *Id.* (quoting *Dist. of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001). As this Court explained in *Jeffries*, the D.C. Court of Appeals, in *Morgan v. Dist. of Columbia*, 468 A.2d 1306 (D.C. 1983), has explained the justification for the public duty doctrine, particularly as it applies to public safety and police judgments:

> [C]ourts have had occasion to consider, and to reaffirm, the various policies which have led the law to determine that the duty to prevent crime is a general duty owed to the public and, therefore, unenforceable by any one individual. Foremost is the practical realization that individuals, juries and courts are ill-equipped to judge considered legislative—executive decision[s] as to how particular community resources should be or should have been allocated to protect individual members of the public. Severe depletion of these resources could well result if every oversight, omission or blunder made by a police official rendered a state or municipality potentially liable in compensatory, let alone punitive damages. In effect, police officials would be placed in the position of insuring the personal safety of every member of the community, notwithstanding limited resources and the inescapable choices of allocation that must be made. Moreover, police officials who act and react in the milieu of criminal activity where every decision to deploy law enforcement personnel is fraught with uncertainty must have broad discretion to proceed without fear of civil liability in the unflinching discharge of their duties. . . . [T]he public interest is not served by allowing a jury of lay [persons] with the benefit of 20/20 hindsight to second-guess the exercise of a police [officer]'s discretionary professional duty. Such discretion is no discretion at all.
>
> Other practical considerations come to bear at the level of day-to-day law enforcement. If the police were held to a duty enforceable by each individual member of the public, then every complaint—whether real, imagined, or frivolous—would raise the spectre of civil liability for failure to respond. Rather than exercise reasoned discretion and evaluate each particular allegation on its own merits the police may well be pressured to make hasty arrests solely to eliminate the threat of personal prosecution by the putative victim. Such a result historically has been viewed, and rightly so, as untenable, unworkable and unwise. Furthermore, other effective mechanisms exist to control the behavior of errant police officials. . . . [O]n balance the community is better served by a policy that both protects the exercise of law enforcement discretion and affords a means of review by those who, in supervisory roles, are best able to evaluate the conduct of their charges. (citations and internal quotation marks omitted)

*Jeffries*, 917 F. Supp. 2d at 32 (quoting *Morgan*, 468 A.2d at 1311-12)).

When the public duty doctrine applies to the alleged tortious actions, they should be dismissed for failure to state a claim unless the claims fall into a very narrow "special relationship" or statutory exception. *Id*. To assert one of these very particularized exceptions, Plaintiffs would have to demonstrate some sort of special relationship with the Federal Defendants through either direct or continuing contact or some statute mandating affirmative acts "clearly for the protection of a particular class of persons rather than the public as a whole," *see id*. (quoting *Dist. of Columbia v. Forsman*, 580 A.2d 1314, 1317 (D.C. 1990), and the "threshold for establishing a special relationship is very high." *Id*. (quoting *Trifax Corp. v. Dist. of Columbia*, 53 F. Supp. 2d 20, 30 (D.D.C. 1999)).

As this Court has explained, when a plaintiff attempts to claim a "special relationship," he must "allege and prove two things: (1) a direct or continuing contact between [the plaintiff] and a governmental agency or official, and (2) a justifiable reliance on the part of [the plaintiff]." *Id*. (quoting *Klahr v. Dist. Of Columbia*, 576 A.2d 718, 720 (D.C. 1990).). "The required contact must . . . be a 'direct transaction with the party injured or an arms-length relationship in which the city's agent is dealing directly, in some form, with the person injured.'" Id. (quoting *Powell v. Dist. of Columbia*, 602 A.2d 1123, 1130 (D.C. 1992) (additional quotation omitted)). "Moreover, the government must engage in 'affirmative undertaking' of protection on which the victim justifiably relies." Id. (quoting *Taylor*, 776 A.2d at 1215). "Affirmative negligence" is required, as opposed to "inaction or futile action." *Id*. (citing *Johnson v. Dist. of Columbia*, 580 A.2d at 142, 143 (D.C. 1990). The plaintiff must show a "justifiable reliance on a specific undertaking to render aid." *Id*. (quoting *Hines v. Dist. of Columbia*, 580 A.2d, 133, 138 (D.C. 1990).

Since Plaintiffs do not allege that the actions of any of the Defendants were the direct cause of their injuries, their complaint must be that Defendants actions or inactions failed to

26

protect them from Hasan's criminal conduct. Plaintiffs fail to allege any facts that support a special relationship with Defendants as defined herein. The allegation then is that the Defendants had a duty to protect all individuals from Hasan. This is the precise type of generalized policing responsibility the public duty doctrine protects against, therefore, the claims against the Defendants should be dismissed.

### H.   28 U.S.C. § 2680(h) Bars Claims Against the Military

28 U.S.C § 2680(h) carves out an exception to the general waiver of sovereign immunity contained in the FTCA. Known as the "intentional tort exception," in relevant part, it states that the FTCA does not apply to "[a]ny claim arising out of assault, battery, … misrepresentation, [or] deceit." Despite the statutory language appearing to deny all claims based on any assault and battery, the Supreme Court found that there can be circumstances where an independent act was the proximate cause of another's assault and the plaintiff can maintain a suit against the employer. *See Sheridan v. U.S.*, 487 U.S. 392, 398 (1988) (finding that a claim could go forward against the Navy for an act by a servicemember who used a weapon after hospital corpsmen saw the rifle and failed to inform anyone).

Courts have interpreted *Sheridan* as only applying when facts show an independent duty owed separate from the employer-employee relationship. As this Court has held:

> To determine whether a claim arises from an intentional assault and battery and is therefore barred by the [intentional tort] exception, a court must ascertain whether the alleged negligence was the breach of a duty to select or supervise the employee-tortfeasor or the breach of some separate duty independent from the employment relation. If the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception of § 2680(h) bars the claim.

*Travel Assoc., Inc. v. Kingdom of Swaziland*, CA No. 89-1235, 1990 WL 134512, *3 (D.D.C. Aug. 30, 1990) (citing *Sheridan* 487 U.S. at 2458 (Kennedy, J. concurring); *see also U.S. v.*

*Shearer*, 473 U.S. 52, 54-55 (1985); *Acosta v. U.S.*, 207 F. Supp. 2d 1365, 1369 (S.D. Fla. 2001) ("*Sheridan* does not apply when an allegedly foreseeable battery was foreseeable to the Defendant because it happened to be the assailant's employer."); *Bajkowski v. U.S.*, 787 F. Supp. 539, 541-42 (E.D.N.C. 1991).

The allegations against the military Defendants rely on the hiring, retention, and supervision of Hasan. The duty Plaintiffs rely on relate to Hasan's employment and are thus barred by the intentional torts exception. Similarly, any alleged information the military had regarding Hasan's jihadist leanings would be related to his employment and likewise would be barred. *See Leleux v. U.S.*, 178 F.3d 750, 756 (5th Cir. 1999) (holding the Navy's information regarding the tortfeasor's venereal disease was incident to his status as an employee and thus the claim by the plaintiff who contracted the disease from the tortfeasor was barred by 28 U.S.C. § 2680(h).). The Amended Complaint contains no facts indicating a "separate duty independent from the employment relation" as required.

28 U.S.C. § 2680(h) is frequently called the intentional torts exception, but it does not only bar intentional torts. All of the claims arise out of Hasan's assault and battery, but the Ninth Claim specifically alleges "negligent misrepresentation" that the "Defendants made false statements on Hasan's OERs and/or omitted facts that they had a duty to disclose with respect to Hasan's jihadist ideology and professional responsibility." Am. Compl. ¶ 303. Plaintiffs argue that they "relied upon these defendants' false statements and/or omissions to their detriment." *Id*. ¶ 305. This cause of action is specifically barred by 28 U.S.C. § 2680(h). In interpreting this statute, the Supreme Court stated "[w]e are in accord with the view by the Government, and unanimously adopted by all Circuits which have previously had occasion to pass on the question that § 2680(h) comprehends claims arising out of negligent, as well as willful, misrepresentation.

*U.S. v. Neustadt*, 366 U.S. 696, 701 (1961); *see also Lewis v. U.S.*, 83 F.3d 198, 206 (D.D.C.

2015). Furthermore, Plaintiffs provide no factual allegations demonstrating Plaintiffs' reliance on

Hasan's OERs beyond conclusory legal assertions, nor can any be inferred in the most generous

interpretation of the Amended Complaint.

## I.  <u>Plaintiffs' Claims Fail Against the Federal Defendants</u>.

Plaintiffs' claims against the federal defendants fail because Plaintiffs fail to demonstrate

any duty owed between Federal Defendants and Plaintiffs; any foreseeability of the injuries; or

any causation between the negligence and the injury. In negligence cases Plaintiffs must

demonstrate:

> (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty
> by defendant; and (3) an injury to the plaintiff proximately caused by the
> defendant's breach of the duty of care. To establish proximate cause, the plaintiff
> must present evidence from which a reasonable juror could find that there was a
> direct and substantial causal relationship between the defendant's breach of the
> standard of care and the plaintiff's injuries and that the injuries were foreseeable.

*Collier v. Dist. of Columbia*, 46 F. Supp. 3d 6, 15 (D.D.C. 2014) (citations omited). Finally, in

the District of Columbia, if the injury is caused by a third party:

> D.C. law requires a more heightened showing of foreseeability than would be
> required if the plaintiff alleged merely negligence. In such a case, the plaintiff bears
> the burden of establishing that the criminal act was so foreseeable that a duty arises
> to guard against it. Because of the extraordinary nature of criminal conduct, the law
> requires that the foreseeability of the risk be more precisely shown.

*Id*. The fact that there was no duty owed to Plaintiffs by the federal defendants is exhaustively

discussed above. Since there was no duty, there can be no breach of the duty, which leads to the

question of proximate cause. "A defendant may not be held liable for harm actually caused

where the chain of events leading to the injury appears highly extraordinary in retrospect."

*Morgan*, 468 A.2d at 1318 (D.C. Cir. 1983) (internal citations omitted).

First, none of the allegations against the federal defendants demonstrate a direct cause of Hasan's criminal act, which means that Plaintiffs' claims are based in an alleged duty to protect Plaintiffs. Although there was no such duty, the only possible factual basis for foreseeability of harm would be Hasan's comments during his psychiatry training, however there is no temporal proximity of these comments to the shooting. *See* Lieberman Report at 32-34. Hasan's outward expression of his radicalization ended in the summer of 2008, over a year prior to the Fort Hood shootings. *Id.* at 38. This case is similar to *Morgan*, where the wife of a police officer called the officer's Captain and complained that he had beaten her and held a gun to her head threatening her life. *Morgan*, 468 A.2d at 1308. Three months later the officer shot his wife. The D.C. Circuit Court found that where the officer had been carrying a firearm for years without incident and the marital problems had been ongoing for two years without a shooting, the Captain's "actions were not, as a matter of law, the proximate cause of her injuries." *Id.* at 1318.

### J.    Plaintiffs Claims for Negligent Infliction of Emotional Distress Fail

Under District of Columbia Law, to establish a claim of intentional infliction of emotional distress, a plaintiff must "show: (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 255 (D.C. Cir. 2008) (citation omitted).  A plaintiff must prove all three elements of the claim to prevail, and recovery is not permitted merely because conduct causes mental distress. *See Joyce v. United States*, 795 F.Supp. 1, 5 (D.D.C. 1992), aff'd 986 F.2d 546 (D.C. Cir. 1993); *D.C. v. Thompson*, 570 A.2d 277, 290 (D.C. 1990). Rather, the conduct must be "wanton, outrageous in the extreme, or especially calculated to cause serious mental distress." *Shewmaker v. Minchew*, 504 F.Supp. 156, 163 (D.D.C. 1980), aff'd, 666 F.2d 616 (D.C. Cir. 1981) (*per curiam*). Generally, "[l]iability has

been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Abourezk v. New York Airlines*, 895 F.2d 1456, 1459 (quoting *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.1982) (alteration in original); *see also* Restatement (Second) of Torts § 46 cmt. d (1965); *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998). "[T]he tort is reserved for truly outrageous behavior." *Browning v. Clinton*, 292 F.3d 235, 248 (D.C. Cir. 2002). Hence, the standard "is not an easy one to meet."[13] *Drejza v. Vacarro*, 650 A.2d 1308, 1312 (D.C. 1994). It is difficult to decipher what the alleged factual basis for Plaintiffs' emotional distress claims are, but none of the facts rise to the level of "extreme and outrageous conduct" and, therefore, Plaintiffs Seventh Claim should be dismissed as they fail to plead sufficient facts to support their claim.

### K. <u>Plaintiffs' Efforts To Assert Bivens Claims Fail</u>

1. Any *Bivens* Claim Would Be Untimely[14]

Because Plaintiffs failed to name the individual defendants within the statute of limitations period for any of their claims, Plaintiffs could not now add the individual federal employees as defendants. Plaintiffs' claims are directed against the John Does in their individual capacities, (*see* Am. Compl. ¶¶ 175-80), and arise under the Survival Act/D.C. Code § 16-2701 *et seq.*, D.C. Code § 12-101, *et seq.*, (for wrongful death), for negligent hiring, retention and

---

[13] <u>See Sere</u>, 443 A.2d at 37 ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.") (citing 33 Restatement (Second) of Torts, § 46, Comment h at 77 (1965)).

[14] Federal Defendants have previously raised this argument in the September 6, 2013 Reply In Support Of The Named Federal Defendants' Motion To Stay And In Opposition To Plaintiffs' Motion For Leave To Conduct Expedited Discovery (ECF No. 34). For the Court's convenience, the argument is reproduced in significant part here.

supervision, for negligent investigation, for gross negligence, for constitutional violations, for

negligent infliction of emotional distress, for loss of consortium, for negligent misrepresentation,

and for intentional misrepresentation. Am. Compl. ¶¶ 240-314.

Each of these causes of action have no more than a three-year limitations period. *See*

D.C. Code § 16-2702 (two-year statute of limitations in survival action); D.C. Code § 16-301(4)

(one-year statute of limitations for assault, battery); D.C. Code § 16-301(8) (three-year statute of

limitations "for which a limitation is not otherwise specially prescribed"); *Stewart-Veal v.*

*District of Columbia*, 896 A.2d 232, 236 (D.C. 2006) (three-year statute of limitations for

negligent hiring and supervision); *Hawkins v. Greenfield*, 797 F.Supp. 30 (D.D.C. 1992) (three-

year statute of limitations for fraud); *Smith v. Brown & Williamson Tobacco Corp*, 3 F.Supp.2d

1473, 1476 (D.D.C. 1998) (three-year statute of limitations for loss of consortium); *C & E*

*Servs., Inc. v. Ashland, Inc.*, 498 F.Supp.2d 242, 261 (D.D.C.2007) (three-year statute of

limitations for negligent misrepresentation); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920

(D.C. Cir. 1997) (one-year statute of limitations for negligent infliction of emotion distress when

'intertwined' with battery*)*; *Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d 1416,

1428 (D.C. Cir. 1986) (one-year statute of limitations for *Bivens* claims based on conduct found

in D.C. Code § 16-301(4)).

In the District of Columbia, the limitations period begins to run when the Plaintiffs'

injuries occurred. *Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 945 (D.C. 2003). In

this case, therefore, the Plaintiffs' claims accrued on November 5, 2009, the day on which the

Plaintiffs' injuries occurred. Am. Compl. ¶¶ 29-30. Although Plaintiffs allege in their Amended

Complaint that their claims accrued against the Does much later, when they discovered the

involvement of the John Does, (*see* Am. Compl. ¶ 118 (setting accrual date of February 3, 2011

for John Does 1-4, 6 and July 19, 2012 for John Doe #5 based on the timing of reports)), even

under the discovery rule the knowledge the Plaintiffs must possess for their claims to accrue

need not be the near-perfect knowledge that comes from a comprehensive investigative report.

By November 5, 2009, Plaintiffs had knowledge of their injuries and "some evidence of

wrongdoing" based on the nature of their allegations. Am. Compl. ¶¶ 29-30. As the Court of

Appeals for the District of Columbia observed,

> However, while the running of the limitations period is tolled until the claimant
> has notice of "some evidence of wrongdoing," the tolling does not continue
> simply because the claimant does not know (or cannot be charged with knowledge
> of) the full "breadth or nature of the [defendant's] tortious action." *Brin* [*v. S.E.W.
> Investors*], 902 A.2d [784] ]at 792 [(D.C. 2002)]; *see also Morton v. National
> Med. Enters., Inc.*, 725 A.2d 462, 468 (D.C.1999) ("fact that appellants lacked
> full knowledge of the extent of appellees' alleged wrongdoing" did not preclude
> accrual of claim). The issue is when did the claimant have "inquiry notice that she
> might have suffered an actionable injury." *Bussineau*, [*v. President & Directors of
> Georgetown Coll.*, 518 A.2d 423,] 428 (D.C. 1986) (citation omitted).

*Santos v. George Washington Univ. Hosp.*, 980 A.2d 1070, 1074 (D.C. 2009). *see also Hendel v.*

*World Plan Executive Council*, 705 A2d 656, 661 (D.C. 1997) (holding "the discovery rule does

not…give the plaintiff *carte blanche* to defer legal action indefinitely if she knows or should

know that she may have suffered injury and that the defendant may have caused her harm.

Indeed, a right of action may accrue before the plaintiff becomes aware of all of the relevant

facts"). Consequently, Plaintiffs had at the latest until November 5, 2012, (and for many of their

claims, much less time) to bring suit directly against the John Doe defendants.

Plaintiffs filed the initial complaint on November 5, 2012. As explained below, failure to

identify and name individuals within the statutory period precludes relation back to the time of

the filing of the original complaint. *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)

(finding that Fed. R. Civ. P. 15(c) prevented Plaintiff from availing of the relation back doctrine

where complaint was filed against "unknown police officers" and Plaintiff had not named as

defendants the individual police officers within the statute of limitations period). In fact,

Plaintiffs cannot even claim surprise at this result as they admit they were aware of their

approaching statute of limitations problem. *See* ECF No. 30 at 15 n.18("Therefore, this case had

to be filed to avoid the potential statute of limitations issues."). Thus, Plaintiffs may not now

name individual defendants after the statute of limitations has expired.

Moreover, the relation back doctrine does not allow plaintiffs to add individual

defendants after the statute of limitations has run where the defendants were not identified in the

original complaint.  Rule 15(c) permits an amendment to relate back only where there has been

an error made concerning the identity of the proper party and where that party is chargeable with

knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of

knowledge or identity of the defendant. *See Rendall-Speranza v. Nassim*, 107 F.3d 913, 919

(D.C. Cir. 1997); *Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996); *Wood v. Worachek*,

618 F.2d 1225, 1230 (7th Cir. 1980); *Worthington v. Wilson,* 8 F.3d at 1256-57 (7th Cir. 1993).

Rule 15(c) provides that:

> For an amendment substituting a new party to relate back to the date of the
> original complaint, all the conditions set forth in Rule 15(c)(3) must be met. The
> rule establishes four criteria: (1) the claim must have arisen out of the conduct set
> forth in the original pleading; (2) the party to be brought in must have received
> such notice that it will not be prejudiced in maintaining a defense; (3) the party to
> be brought in must or should have known that but for a mistake of identity the
> action would have been brought against it; and (4) the second and third
> requirements must have been fulfilled within the period for service of process
> prescribed by Rule 4(m).

*Henry v. FDIC*, 168 F.R.D. 55, 59 (D. Kan. 1996) (citations omitted).

The Court of Appeals has held that these requirements necessitate a finding that Rule

15(c) only allows the addition of a party in an amended pleading in order to correct a misnomer

in the prior pleading. *Rendall-Speranza v. Nassim*, 107 F.3d 913, 919 (D.C. Cir. 1997). "A

potential defendant who has not been named in a lawsuit by the time the statute of limitations has

run is entitled to repose – unless it is or should be apparent to that person that he is a beneficiary

of a mere slip of the pen . . . ." *Id.*[15]  Here, Plaintiffs may be able to demonstrate that the claims

against the Doe Defendants would arise from the same "conduct, transaction, or occurrence" set

forth in the original complaint; however, Plaintiffs cannot satisfy Rule 15(c)(1)(C) because the

Doe Defendants' knowledge of this action could not be inferred from service of the original

complaint on the Attorney General as they were not identified.

> The overwhelming majority of federal appellate courts that have considered the
> issue have found that amendments naming "John Doe" defendants whose identity
> is unknown at the time of the filing of the complaint do not relate back . . . These
> courts have found that a plaintiff's lack of knowledge as to the identity of a
> defendant does not constitute a "mistake" under [Rule 15(c)(1)(C)(ii)][16]. This
> Court agrees. The Eleventh Circuit explained that "[t]he drafters of [Rule
> 15(c)(1)(C)(ii)] included the mistake proviso ... in order to 'resolve the problem of
> a misnamed defendant' and allow a party 'to correct a formal defect such as a
> misnomer or misidentification.' " *Wayne*, [*v. Jarvis*, 197 F.3d 1098, 1103 (11th
> Cir. 1999) (quoting Fed. R. Civ. P. 15(c)(3), Advisory Committee Notes to 1991
> Amendment). Therefore, Rule [Rule 15(c)(1)(C)(ii)] should apply only to an
> amendment that rectifies a plaintiff's error, like a misnomer or misidentification.
> As the naming of "John Doe" defendants is not an error, but rather results from a
> plaintiff's lack of knowledge as to the identity of the proper party at the time of
> filing, amendments identifying such defendants cannot relate back under [Rule
> 15(c)(1)(C)(ii)] . . . Since the statute of limitations expired before Plaintiff filed
> his Motion to Amend, Plaintiff's proposed amendment is futile and his motion
> must be denied.

*Ferreira v. City of Pawtucket*, 365 F.Supp.2d 215, 217 (D.R.I. 2004).

The "government notice" provision of Rule 15(c)(3) does not apply when government

employees are sued in their personal capacities. *See Delgado-Brunet v. Clark*, 93 F.3d at 344;

---

[15] "The Supreme Court has since clarified the inquiry, emphasizing that courts must
determine whether the prospective defendant should have known of the possibility that it would
be sued despite the plaintiff's mistake." *Philogene v. District of Columbia*, 864 F.Supp.2d 127,
134 (D.D.C. 2012) (citing *Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538 (2010).

[16] Although the numbering of the paragraphs has changed slightly, the 2007 Amendment
to this section of the Rule was intended to be stylistic only.

*Komongnan v. U.S. Marshals Service*, 471 F.Supp.2d 1, 4 fn.2 (D.D.C. 2006) ("cases suggest that the 'government notice' provision of Rule 15(c)(3) does not operate where government employees are being sued in their personal capacity."). Even where newly-named defendants have constructive notice within the 120 day period, relation back is not appropriate. *See Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996). Federal case law establishes that a "plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party'" as required by Rule 15(c)(3)(B). *Grigsby v. Johnson*, Civil Action No. 95-213 TFH, 1996 WL 444052, *6 (D.D.C. May 14, 1996) ("While it does not appear that our circuit has spoken on the issue[,] this Court will join the other circuits in concluding that amendment of a party under Rule 15 requires a mistake"); *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *see also Wayne*, 197 F.3d at 1103-04 (abrogated on others grounds by *Manders v. Lee*, 338 F.3d 1304 (11th Cir 2003); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989); *Komongnan v. U.S. Marshals Service*, 471 F.Supp.2d at 4 n.2; *but see Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174-75 (3d Cir. 1977).

The Court in *Barnes v. Prince George's County*, 214 F.R.D. 379, 382 (D.Md. 2003), identified the state of the law succinctly:

> The Notes of the Advisory Committee on Rules accompanying the 1991Amendment to Rule 15(c) shed some light on the intent of the rule:
>
> > An intended defendant who is notified of an action within the period allowed by Rule 4(m) for service of a summons and complaint may not under the revised rule defeat the action on account of a *defect in the pleading with respect to the defendant's name*, provided that the requirements of clauses (A) and (B) have been met. If the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time *to correct a formal defect such as a misnomer or*

36

> *identification*.

Notes of the Advisory Committee on Rules, 1991 Amendment to Rule 15(c)(emphasis added).

> Given the near unanimity among the circuits and the explication by the Advisory Committee, the court cannot say that the naming of John Doe as a defendant constitutes the requisite mistake for the purposes of relation back.

*Barnes v. Prince George's County*, 214 F.R.D. at 382. Thus, in the absence of a mistake in the identification of the proper party, during the statutory period, it is irrelevant for the purposes of Rule 15(c)(1)(C) whether or not the purported substitute parties knew or should have known that the action would have been brought against them. Thus, an action against the individual defendants would be time-barred under the applicable statute of limitations. Accordingly, no purpose would be served in allowing Plaintiffs' claims against the Doe Defendants to proceed, given the untimely nature of the claims.

      2.  <u>Plaintiffs' Common Law Claims Against the "Doe" Defendants Would be Futile</u>

If Plaintiffs' Common law claims were allowed to proceed against the Doe Defendants, the United States would, under Plaintiffs' allegations, be substituted as the sole defendant for all but the Constitutional claims. In each instance, Plaintiffs have alleged that the Doe Defendants have acted in the scope of their federal employment.[17] *See* Am. Compl. ¶¶ 3, 22, 28, 35, 49, 57-65, 69, 175-179-180, 241-314. Where a defendant is sued under such circumstances, the Attorney General, his designee, or even the Court would be called upon to certify that the employee was acting in the scope of his office or employment with the United States, which would substitute the United States for the defendant as to those claims. *See* 28 U.S.C. § 2679(d);

---

[17] Indeed, Plaintiffs refer to the "John Does" as among the "government defendants." Am. Compl. ¶ 3.

*Simpkins v. Dist. of Columbia*, 108 F.3d 366, 369-70 (D.C. Cir. 1996). For the reasons previously set forth, any claims under the FTCA would be equally fruitless. *See supra* at 3-37.

3. <u>Constitutional Claims Are Futile and Cannot Withstand An Immunity Defense</u>

Plaintiffs' constitutional claims, *i.e.*, claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), are subject to dismissal as Plaintiffs have failed to state a claim for relief and have certainly failed to allege facts to support a claim that withstand the defense of qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is well settled that government officials such as the individual "Doe" defendants enjoy a qualified immunity from constitutional and statutory claims against them. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis was explained in *Harlow*:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818. And, a defendant's subjective good faith is not relevant to the qualified immunity analysis, *id*. at 815-18; rather, in making this assessment, the Supreme Court said a right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. An official is not shielded from liability where he "could be expected to know that certain conduct would violate statutory or constitutional rights." *See Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998); <u>accord</u> *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991) (A necessary concomitant to the determination of

whether the constitutional right asserted by a plaintiff is "clearly established" at the time the

defendant acted is the determination of whether the plaintiff has asserted a violation of a

constitutional right at all); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999)(A court

performing a qualified immunity inquiry must first determine whether the plaintiff has alleged

the deprivation of an actual constitutional right); *Fernandors v. Dist. of Columbia*, 382 F. Supp.

2d 63, 70-71 (D.D.C. 2005).

The whole purpose of qualified immunity is to protect public officials "from the costs

associated with the defense of damages actions" by rooting out meritless lawsuits at the earliest

point possible in the litigation process. *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998). As the

Supreme Court explained in *Davis v. Scherer*, 468 U.S. 183, 197 (1984), "[a] plaintiff who seeks

damages for violation of constitutional or statutory rights may overcome the defendant official's

qualified immunity only by showing that those rights were clearly established at the time of the

conduct at issue." Moreover, "[e]ven defendants who violate constitutional rights enjoy a

qualified immunity that protects them from liability for damages unless it is further demonstrated

that their conduct was unreasonable under the applicable standard." Id. at 190.

Thus, in developing the doctrine of qualified immunity, the Supreme Court has sought to

strike a balance "between the interests in vindication of citizens' constitutional rights and in

public officials' effective performance of their duties." *Anderson*, 483 U.S. at 639 (quotation

omitted). Recognizing that "bare allegations of malice should not suffice to subject government

officials either to the costs of trial or to the burdens of broad-reaching discovery," *Harlow*, 457

U.S. at 817-18, the Court balanced those competing interests by establishing a higher threshold

for holding public officials personally liable for constitutional violations. For a public official to

be liable for damages, that official must have violated a constitutional right, and that right must

have been "clearly established" -- "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson*, 483 U.S. at 640 ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Numerous circuits have placed the burden on the plaintiff to come forward with evidence sufficient to create a genuine issue as to whether defendant's conduct was objectively reasonable in light of clearly established law. *See, e.g., Salas v. Carpenter*, 980 F.2d 299 (5th Cir. 1992); *Washington v. Newsom*, 977 F.2d 991 (6th Cir. 1992); *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499 (11th Cir. 1990); *Hannon v. Turnage*, 892 F.2d 653 (7th Cir. 1990); *Pleasant v. Lovell*, 876 F.2d 787 (10th Cir. 1989). And the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), reemphasizes the need for the Courts carefully to assess what <u>facts</u> (as opposed to legal conclusions) are alleged and whether those facts suffice to satisfy the pleading requirements applicable in Federal litigation. <u>See</u> *Ashcroft v. Iqbal*, 556 U.S. at 678 (affirming dismissal where allegations failed to overcome qualified immunity).[18]

For the reasons set forth herein, none of the Doe Defendants has violated any constitutional rights of Plaintiffs. And, even if some violation could be identified from Plaintiffs'

---

[18] In the past, this Court would have first determined whether a constitutional violation had occurred before considering whether the defendants were entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194 (2001). The law has now changed. This Court need no longer consider whether the constitutional claim would have merit in the absence of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). *Pearson* also reiterated that to overcome the defense of qualified immunity, the plaintiff must establish the violation of a *clearly established* right. *Pearson*, 555 U.S. at 243-44.

allegations, the right was not so clearly established that Plaintiffs' claims could withstand the defense of qualified immunity.

Plaintiffs' constitutional claim is premised on a purported Due Process right under the Fifth Amendment, specifically, Plaintiffs' asserted rights to "life and property." Am. Compl. ¶ 280.[19] Elsewhere, Plaintiffs assert some constitutional duty of unspecified origin "to protect plaintiffs." Am. Compl. ¶ 25; *see also id*., ¶ 62 (Does 1-4 and 6 had a duty to properly train and supervise Hasan and hold him to appropriate standards). No such duty was owed to Plaintiffs under then-existing (or current) constitutional law, and if the Court were to conclude that such a duty does exist, the duty was not clearly established at the time of the events; thus, the Doe Defendants would be entitled to qualified immunity.

> As the Supreme Court explained in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *Cf. Martinez v. State of California,* 444 U.S. 277, 283–85, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (finding that state parole board had no particular constitutional obligation to an individual killed by a paroled prisoner).

*Smith v. D.C.*, 413 F.3d 86, 93 (D.C. Cir. 2005); accord *McGaughey v. District of Columbia*, 734 F. Supp. 2d 14, 18 (D.D.C. 2010), aff'd, 684 F.3d 1355 (D.C. Cir. 2012) (The public duty doctrine covers instances where the plaintiff contends that a defendant police officer failed to do what reasonably prudent police employees would have done in similar circumstances); *see also Ziglar v. Abbasi*, No. 15-1358, ___ S. Ct.___, 2017 WL 2621317 at *23-*27 (June 19, 2017) (declining to extend the duty to protect prisoners from harm by third parties to the Warden);

---

[19] Plaintiffs assert that the Doe Defendants "were obliged to respect and protect plaintiffs' lives and their legal and constitutional rights, including *but not limited to* their Fifth Amendment Due Process rights to life and property." Am. Compl. ¶ 280 (emphasis added). Any further claim of a constitutional right fails as Plaintiffs must fairly put a defendant on notice of the basis of their claim. *See* Fed. R. Civ. P. 8(a).

*Estate of Phillips v. D.C.*, 455 F.3d 397, 404-08 (D.C. Cir. 2006) (rejecting due process claim against former Fire Chief based on asserted violation of "constitutionally protected liberty, interests in life, personal security [and] bodily integrity" for failure to ensure compliance with appropriate standards, where fire fighters were not in a special relationship, and further rejecting the suggestion that such a relationship existed by virtue of laws limiting travel and residence of the firefighters). Insofar as Plaintiffs assert some constitutional claim based on false statements in government files or communications, *see* Am. Compl., ¶¶ 28, 51, 175-1, such falsehoods also would not suffice to establish a constitutional claim. *See Siegert v. Gilley*, 500 U.S. 226 (1991); *Paul v. Davis*, 424 U.S. 693 (1976). Here, at best, Plaintiffs allege that Army records were erroneous, such that they portrayed Hasan in a better light than he deserved, and that after the events at Ft. Hood, misinformation was conveyed by the Army. Nothing in the Constitution provided or provides a duty (clearly-established or otherwise) owed by Does 1-4 or 6 to Plaintiffs to ensure more accuracy.

Similarly, although Plaintiffs assert there was some duty on the part of Doe #5 to interview Hasan in the course of an investigation, and some duty on the part of the Army to take action to terminate Hasan, *see* Am. Compl. ¶ 25, no such duty was owed. Instead, such decisions are committed to discretion of the executive branch. *See Community for Creative Non-Violence*, 786 F.2d at 1201; *Moses*, 219 F. Supp. at 764; *Martinez*, 587 F. Supp. 2d at 248; *see also Heckler,* 470 U.S. 821 (1985).

It is not enough for plaintiffs to point to cases recognizing *Bivens* actions under the Fifth Amendment generally. *Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007), aff'd, 535 F.3d 697 (D.C. Cir. 2008); *Ziglar v. Abbasi*, No. 15-1358, ___ S. Ct.___, 2017 WL 2621317 at *23-*26 (June 19, 2017). Plaintiffs offer no factual basis to believe that any of the Doe defendants

owed them any special duty under the Constitution. They therefore fail to state a claim for relief;

and certainly they fail to state a claim that can withstand the defense of qualified immunity.

    4.   <u>Special Factors Counsel Hesitation in The Creation Of A Bivens Remedy.</u>

The courts have long recognized that special factors counseling against the creation of an

alternative *Bivens*-type remedy must be recognized where a comprehensive statutory scheme has

been established to provide relief in a given area or where other reasons (such as separation of

powers principles) counsel hesitation. *See Ziglar v. Abbasi*, *supra*, 2017 WL 2621317 at *10-

*14-*24;[20] *Wilson v. Libby*, 535 F.3d 697, 704-10 (D.C. Cir. 2008) (concluding that the Privacy

Act constitutes a special factor precluding a *Bivens* remedy, even though the statute does not

afford complete relief to the plaintiffs); *Davis v. Billington*, 681 F.3d 377, 381-82 (D.C. Cir.

2012); *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 454 (D.D.C. 1991) (Privacy Act bars

plaintiff's constitutional claims); *Weiss v. Int'l Bhd. of Elec. Workers*, 729 F. Supp. 144, 147

(D.D.C. 1990) (to the extent that plaintiff's emotional injuries were the result of the stressful

work situation created by the defendant, her claim of intentional infliction of emotional distress

must be dismissed as subsumed within Title VII); *Bush v. Lucas*, 462 U.S. 367 (1983)

(comprehensive procedural and substantive provisions of the Civil Service Reform Act constitute

"special factors" counseling hesitation against a *Bivens* remedy); *Brown v. GSA*, 425 U.S. 820

(1976) (Title VII is the sole remedy for federal employees complaining of job discrimination on

account of sex or race); *Gleason v. Malcomb*, 718 F.2d 1044, 1048 (11th Cir. 1983) (special

factors counsel against a *Bivens* remedy where plaintiff could have sought equitable relief

---

[20] The Court in *Ziglar* made clear that in only three narrowly-circumscribed instances is a special factors analysis not required, where the Court had already recognized *Bivens* claims: 1) fourth amendment claims of unreasonable searches and seizures; 2) firing a woman from a job with a Congressman based on gender; and 3) failing to treat a prisoner's serious medical need. *Ziglar*, 2017 WL 2621317 at *9-14.

pursuant to the Administrative Procedure Act ("APA")); *GasPlus, L.L.C. v. U.S. Dep't of Interior*, 466 F. Supp. 2d 43, 50 (D.D.C. 2006) (APA constitutes special factor warranting dismissal of *Bivens* claims); *Dearsman v. Kurtz*, 516 F. Supp. 1255, 1259-60 (D.D.C. 1981) (Civil Service Reform Act and Title VII constituted exclusive remedies for adverse actions and discrimination in the federal workplace, precluding plaintiff's due process claims); *accord United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (special factors counselling hesitation include the unique disciplinary structure of the Military Establishment and Congress's activity in the field).

The need for the military to operate uniquely within its disciplinary boundaries is certainly a special factor here, where Plaintiffs would challenge the actions of Does 1-4 and 6 based on their roles in assuring military readiness. *See Chappell v. Wallace*, 462 U.S. 296 (1983) (applying *Feres* rationale in dismissing claim by servicemembers). Moreover, the FBI's empowering statute offers a clear signal that action by its agents should not be compelled outside the executive branch. *See* 28 U.S.C. § 535(a) ("The Attorney General and the Federal Bureau of Investigation may investigate any violation of Federal criminal law. . .").

> *Chaney*'s [see *Heckler v. Chaney, 470 U.S. 821(1985)*] recognition that the courts must not require agencies to initiate enforcement actions may well be a requirement of the separation of powers commanded by our Constitution. The power to take care that the laws be faithfully executed is entrusted to the executive branch-and only to the executive branch. *See* U.S. Const. art. II, § 3. One aspect of that power is the prerogative to decline to enforce a law, or to enforce a law in a particular way. *See, e.g., Hotel and Rest. Employees Union v. Smith,* 846 F.2d 1499, 1519 (D.C. Cir. 1988) (en banc)   (Silberman, J., separate opinion) ("The extra statutory decision to withhold enforcement is an exercise of the Executive Branch's discretion to decide whether to prosecute a case that flows from the Constitution's admonition that that Branch 'take Care that the Laws be faithfully executed.' U.S. Const. art. II, § 3."). When the judiciary orders an executive agency to enforce the law it risks arrogating to itself a power that the Constitution commits to the executive branch.

*Baltimore Gas & Elec. Co. v. F.E.R.C.*, 252 F.3d 456, 459 (D.C. Cir. 2001). Thus, this separation

of powers concept and the permissive nature of the FBI's empowering statute, counsel hesitation

in the creation of a *Bivens* remedy here.

Additionally, the national security interests involved in the FBI's investigations would be

a special factor counseling hesitation. *See Ziglar*, 2017 WL 2621317 at *18. "Indeed, 'courts

traditionally have been reluctant to intrude upon the authority of the Executive in military and

national security affairs' unless 'Congress specifically has provided otherwise.'" Congress has

not provided otherwise here." *See id.* (citing *Department of Navy v. Egan,* 484 U.S. 518, 530

(1988).

## IV.    CONCLUSION

For the foregoing reasons this action should be dismissed.

                                    Respectfully submitted,

                                    CHANNING D. PHILLIPS
                                    D.C. Bar #415793
                                    United States Attorney
                                    for the District of Columbia

                                    DANIEL F. VAN HORN
                                    D.C. Bar #924092
                                    Chief, Civil Division

                                    BY: _____/s/_____
                                    DERRICK W. GRACE
                                    Special Assistant U.S. Attorney
                                    555 Fourth Street, N.W.
                                    Wahington, D.C. 20530
                                    (202)252-2574

                                    *Attorneys for Defendants*

# TABLE OF AUTHORITIES

## FEDERAL CASES

Cases

Abourezk v. New York Airlines,
  895 F.2d 1456 ................................................................................................... 31

Acosta v. U.S.,
  207 F. Supp. 2d 1365 (S.D. Fla. 2001) ............................................................. 28

Adkins v. U.S.,
  869 F.2d 593 (4th Cir. 1989) ............................................................................ 13

Al-Owhali v. Ashcroft,
  279 F. Supp. 2d 13 (D.D.C. 2003) ...................................................................... 2

Anderson v. Creighton,
  483 U.S. 635 (1987) ............................................................................. 38, 39, 40

Ashcroft v. Iqbal,
  129 S.Ct. 1937 (2009) ................................................................................... 3, 40

Auleta v. Dep't of Justice,
  80 F. Supp. 3d 198 (D.D.C. 2015) .................................................................... 21

Bajkowski v. U.S.,
  787 F. Supp. 539 (E.D.N.C. 1991) ................................................................... 28

Baltimore Gas & Elec. Co. v. F.E.R.C.,
  252 F.3d 456 (D.C. Cir. 2001) .......................................................................... 45

Banks v. Chesapeake and Potomac Telephone Co.,
  802 F.2d 1416 (D.C. Cir. 1986) ........................................................................ 32

Barnes v. Prince George's County,
  214 F.R.D. 379 (D.Md. 2003) ...................................................................... 36, 37

Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n,
  377 F.3d 682 (7th Cir. 2004) .............................................................................. 7

Baskin v. City of Des Plaines,
  138 F.3d 701 (7th Cir. 1998) ............................................................................ 36

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) .......................................................................................... 3, 18

Berkovitz v. U.S.,
    486 U.S. 531 (1988) ............................................................................................ 17

Bivens v. Six Unknown Named Agents,
    403 U.S. 388 (1971) ............................................................................................ 38

Boyer v. U.S.,
    510 F. Supp. 1081 (E.D. Pa. 1981) ...................................................................... 15

Briscoe v. Potter,
    355 F. Supp. 2d 30 (D.D.C. 2004) ....................................................................... 14

Brown v. GSA,
    425 U.S. 820 (1976) ............................................................................................ 43

Browning v. Clinton,
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................ 31

Burkhart v. Washington Metropolitan Area Transit Authority,
    112 F.3d 1207 (D.C. Cir. 1997) .......................................................................... 18

Bush v. Lucas,
    462 U.S. 367 (1983) ............................................................................................ 43

Bussineau, [v. President & Directors of Georgetown Coll.,
    518 A.2d 423,]   (D.C. 1986) ............................................................................. 33

C & E Servs., Inc. v. Ashland, Inc.,
    498 F.Supp.2d 242 (D.D.C.2007) ....................................................................... 32

Cahn v. U.S.,
    269 F. Supp. 2d 537 (D.N.J. 2003) ..................................................................... 14

Chappell v. Rich,
    340 F.3d 1279 (11th Cir.2003) ............................................................................. 7

Chappell v. Wallace,
    462 U.S. 296 (1983) ............................................................................................ 44

Cleavinger v. Saxner,
    474 U.S. 193 (1985) ............................................................................................ 38

Coffie v. U.S.,
    43 Fed. Appx. 808 (6th Cir. 2002) ....................................................................... 7

Collier v. Dist. of Columbia,
    46 F. Supp. 3d 6 (D.D.C. 2014).........................................................................29

Community for Creative Non-Violence v. Pierce,
    786 F.2d 1199 (D.C. Cir. 1986)................................................................22, 42

Cox v. Sec'y of Labor,
    739 F. Supp. 28 (1990).............................................................................4

Cox v. Treadway,
    75 F.3d 230 (6th Cir. 1996)........................................................................36

Crawford-El v. Britton,
    523 U.S. 574 (1998)..................................................................................39

Cronauer v. U.S.,
    394 F. Supp. 2d 93 (D.D.C. 2005)................................................................9

Cureton v. U.S. Marshall Service,
    322 F. Supp. 2d 23 (D.D.C 2004).................................................................4

D.C. v. Thompson,
    570 A.2d 277 (D.C. 1990)..........................................................................30

Daisley v. Riggs Bank, N.A.,
    372 F. Supp. 2d 61 (D.D.C. 2005)................................................................18

Davis v. Billington,
    681 F.3d 377 (D.C. Cir. 2012).....................................................................43

Davis v. Scherer,
    468 U.S. 183 (1984)..................................................................................39

Dearsman v. Kurtz,
    516 F. Supp. 1255 (D.D.C. 1981).................................................................44

DeFont v. U.S.,
    453 F.2d 1239 (1st Cir. 1972).....................................................................13

Delgado-Brunet v. Clark,
    93 F.3d 339 (7th Cir. 1996)....................................................................34, 35

Department of Navy v. Egan,
    484 U.S. 518 (1988)..................................................................................45

DeShaney v. Winnebago County Department of Social Services,
    489 U.S. 189 (1989)..................................................................................41

DiPippa v. U.S.,
   687 F.2d 14 (3d Cir. 1982) ................................................................ 14

Dist. of Columbia v. Forsman,
   580 A.2d 1314 (D.C. 1990) .............................................................. 26

Dist. of Columbia v. Harris,
   770 A.2d 82 (D.C. 2001) .................................................................. 25

Doe v. Medlantic Health Care Group, Inc.,
   814 A.2d 939 (D.C. 2003) ................................................................ 32

Doss v. U.S.,
   793 F. Supp. 2d 859 (E.D. Tex. 2011) ............................................ 16

Drejza v. Vacarro,
   650 A.2d 1308 (D.C. 1994) .............................................................. 31

Dyniewicz v. U.S.,
   742 F.2d 484 (9th Cir. 1984) ............................................................. 8

Eastridge v. U.S.,
   2007 WL 495797 (D.D.C. Feb. 12, 2007) ........................................ 9

Edmonds v. U.S.,
   436 F. Supp. 2d 28 (D.D.C. 2006) .............................................. 24, 30

Erby v. U.S.,
   424 F. Supp. 2d 180 (D.D.C. 2006) ................................................... 2

Estate of Phillips v. D.C.,
   455 F.3d 397 (D.C. Cir. 2006) ......................................................... 42

Farmer v. Moritsugu,
   163 F.3d 610 (D.C. Cir. 1998) ......................................................... 38

Feres v. U.S.,
   340 U.S. 135 (1950) ......................................................................... 10

Fernandez v. City of El Paso,
   876 S.W.2d 370 (Tex.App.—El Paso 1993) .................................... 24

Fernandors v. Dist. of Columbia,
   382 F. Supp. 2d 63 (D.D.C. 2005) ................................................... 39

Ferreira v. City of Pawtucket,
   365 F.Supp.2d 215 (D.R.I. 2004) .................................................... 35

GAF Corp. v. U.S.,
   818 F.2d 901 (D.C. Cir. 1987).................................................................................. 4

Garrett v. Fleming,
   362 F.3d 692 (10th Cir. 2004) ................................................................................ 36

Gartrell v. Gaylor,
   981 F.2d 254 (5th Cir.1993) ..................................................................................... 7

Gaspard v. U.S.,
   713 F.2d 1097 (5th Cir. 1983) ................................................................................ 12

GasPlus, L.L.C. v. U.S. Dep't of Interior,
   466 F. Supp. 2d 43 (D.D.C. 2006)........................................................................... 44

Gilligan v. Morgan,
   413 U.S. 83 (1973) ........................................................................................... 19, 21

Gleason v. Malcomb,
   718 F.2d 1044 (11th Cir. 1983) .............................................................................. 43

Goddard v. D.C. Redevelopment Land Agency,
   287 F.2d 343 (D.C. Cir. 1961).................................................................................. 4

Grigsby v. Johnson,
   Civil Action No. 95-213, 1996 WL 444052 (D.D.C. May 14, 1996) ...................... 36

Guy v. United States,
   608 F.2d 867 (Ct. Cl. 1979).................................................................................... 19

Hannon v. Turnage,
   892 F.2d 653 (7th Cir. 1990) .................................................................................. 40

Harbury v. Hayden,
   444 F. Supp. 2d., 43- (D.D.C. 2006) ................................................................. 12, 13

Harlow v. Fitzgerald,
   457 U.S. 800 (1982) ........................................................................................... 38, 39

Harrison v. U.S.,
   479 F. Supp. 529 (D.Conn. 1979)........................................................................... 13

Hawkins v. Greenfield,
   797 F.Supp. 30 (D.D.C. 1992)................................................................................ 32

HCBeck, Ltd. v. Rice,
   284 S.W.3d 349 (Tex. 2009) ................................................................................... 16

Heckler v. Chaney,
  470 U.S. 821 (1985) ................................................................ 21, 42, 44

Hendel v. World Plan Executive Council,
  705 A2d 656 (D.C. 1997) ................................................................ 33

Henderson v. Bluemink,
  511 F.2d 399 (D.C. Cir. 1974) ................................................................ 19

Henry v. FDIC,
  168 F.R.D. 55 (D. Kan. 1996) ................................................................ 34

Hines v. Dist. of Columbia,
  580 A.2d 133 ................................................................ 26

Homan v. Goyal,
  711 A.2d 812 (D.C. 1998) ................................................................ 31

Hotel and Rest. Employees Union v. Smith,
  846 F.2d 1499 (D.C. Cir. 1988) ................................................................ 44

In re Agent Orange Product Liability Litigation,
  818 F.2d 201 (2nd Cir. 1987) ................................................................ 12, 13

In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,
  668 F.3d 281 (5th Cir. 2012) ................................................................ 15

Jacobsen v. Osborne,
  133 F.3d 315 (5th Cir. 1998) ................................................................ 36

Jeffries v. Dist. of Columbia,
  917 F. Supp. 2d 10 (D.D.C. 2013) ................................................................ 24, 25

Jerome Stevens Pharmacy, Inc. v. FDA,
  402 F.3d 1249 (D.C. Cir. 2005) ................................................................ 2

Johnson v. Dist. of Columbia,
  580 A.2d (D.C. 1990) ................................................................ 26

Johnson v. Veterans Affairs Med. Ctr.,
  133 F. Supp. 3d 10 (D.D.C. 2015) ................................................................ 3, 4, 9

Joyce v. United States,
  795 F.Supp. 1 (D.D.C. 1992) ................................................................ 30

Kassem v. Washington Hosp. Ctr.,
  513 F.3d 251 (D.C. Cir. 2008) ................................................................ 30

Kendrick v. U.S.,
  877 F.2d 1201 (4th Cir. 1989) ................................................................. 13

Klahr v. Dist. of Columbia,
  576 A.2d 718 ........................................................................................... 26

Kline v. Republic of El Salvador,
  603 F. Supp. 1313 (D.D.C. 1985) ............................................................. 4

Kokkonen v. Guardian Life Ins. Co. of America,
  511 U.S. 375 (1994) ................................................................................. 3

Komongnan v. U.S. Marshals Service,
  471 F.Supp.2d 1 fn.2 (D.D.C. 2006) ................................................. 36, 38

Kreis v. Sec'y of Air Force,
  866 F.2d 1508 ......................................................................................... 19

Krupski v. Costa Crociere S.p.A.,
  560 U.S. 538 (2010) ............................................................................... 35

Lawrence v. Acree,
  665 F.2d 1319 (D.C. Cir. 1981) .............................................................. 19

Leji v. Dep't of Homeland,
  §, 2015 WL 1299361 (D.D.C. March 17, 2016) ..................................... 21

Leleux v. U.S.,
  178 F.3d 750 (5th Cir. 1999) .................................................................. 28

Lewis v. U.S.,
  83 F.3d 198 (D.D.C. 2015) ..................................................................... 29

Lockheed Aircraft Corp. v. U.S.,
  460 U.S. 190 (1983) ............................................................................... 14

Lombard v. U.S.,
  690 F.2d ................................................................................................. 12

Loughlin v. U.S.,
  230 F. Supp. 2d 26 (D.D.C. 2002) ........................................................... 9

Loumiet v. U.S.,
  828 F.3d 935 (D.C. Cir. 2016) ................................................................ 20

Macharia v. U.S.,
  334 F.3d 61 (D.C. Cir. 2003) .................................................................. 17

Malley v. Briggs,
    475 U.S. 335 (1986) ......................................................................... 40

Manders v. Lee,
    338 F.3d 1304 (11th Cir 2003) ......................................................... 36

Martinez v. State of California,
    444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) ...................... 41

Martinez v. U.S.,
    587 F. Supp. 2d 245 (D.D.C. 2008)............................................. 22, 42

McDonald v. U.S.,
    843 F.2d 247 (6th Cir. 1988) ............................................................. 7

McGaughey v. District of Columbia,
    734 F. Supp. 2d 14 (D.D.C. 2010).................................................... 41

McIntyre v. United States,
    367 F.3d 38 (1st Cir. 2004) ............................................................... 6

McNeil v. U.S.,
    508 U.S. 106 (1993) ......................................................................... 4

Meiggs v. Associate Builders,
    545 A.2d 631 (D.C. App. 1988) ....................................................... 15

Merry v. Nat'l Part Serv.,
    985 F. Supp. 2d 90 (D.D.C. 2013)............................................... 17, 22

Mitchell v. Forsyth,
    472 U.S. 511 (1985) ......................................................................... 38

Mittleman v. U.S. Treasury,
    773 F. Supp. 442 (D.D.C. 1991)....................................................... 43

Monaco v. U.S.,
    661 F.2d 129 (9th Cir. 1981) ...................................................... 11, 13

Mondelli v. U.S.,
    711 F.2d 567 (3d Cir. 1983) ............................................................. 13

Morgan v. Dist. of Columbia,
    468 A.2d 1306 (D.C. 1983) ..................................................25, 26, 29, 30

Morton v. National Med. Enters., Inc.,
    725 A.2d 462 (D.C.1999) ................................................................. 33

Moses v. Kennedy,
   219 F. Supp. 762 (D.D.C. 1963) ...................................................................... 22, 42

Nemmers v. U.S.,
   795 F.2d 628 (7th Cir. 1986) ................................................................................ 7

U.S. v. Olson,
   546 U.S. 43 (2005) .............................................................................................. 15

Park v. Zatchuk,
   605 F. Supp. 207 (D.D.C. 1985) .......................................................................... 19

Paul v. Davis,
   424 U.S. 693 (1976) ............................................................................................ 42

Pearson v. Callahan,
   555 U.S. 223 (2009) ...................................................................................... 40, 41

Persons v. U.S.,
   925 F.2d 292 (9th Cir. 1991) ............................................................................... 13

Philogene v. District of Columbia,
   864 F.Supp.2d 127 (D.D.C. 2012) ...................................................................... 35

Pleasant v. Lovell,
   876 F.2d 787 (10th Cir. 1989) ............................................................................. 40

Powell v. Dist. of Columbia,
   602 A.2d 1123 (D.C. 1992) ................................................................................. 26

Price v. U.S.,
   775 F.2d 1491 (11th Cir. 1985) ............................................................................. 7

Rendall-Speranza v. Nassim,
   107 F.3d 913 (D.C. Cir. 1997) ................................................................. 32, 34, 35

Rotella v. Wood,
   528 U.S. 549 (2000) .............................................................................................. 6

Salas v. Carpenter,
   980 F.2d 299 (5th Cir. 1992) ............................................................................... 40

Santos v. George Washington Univ. Hosp.,
   980 A.2d 1070 (D.C. 2009) ................................................................................. 33

Saucier v. Katz,
   533 U.S. 194 (2001) ...................................................................................... 38, 40

Schneider v. Kissinger,
   310 F. Supp. 2d 251 (D.D.C. 2004) ........................................................................ 10

Schnitzer v. Harvey,
   389 F.3d 200 (D.C. Cir. 2004) ............................................................................... 11

Semler v. Psychiatric Inst. of Washington, D.C., Inc.,
   575 F.2d 922 (D.C. Cir. 1978) ............................................................................ 9, 10

Sere v. Grp. Hospitalization, Inc.,
   443 A.2d 33 (D.C.1982) ........................................................................................ 31

Sexton v. U.S,
   832 F.2d 629 (D.C. Cir. 1987) .............................................................................. 5, 9

Sheridan v. U.S.,
   487 U.S. 392 (1988) .............................................................................................. 27

Shewmaker v. Minchew,
   504 F.Supp. 156 (D.D.C. 1980) ............................................................................ 30

Shuler v. U.S.,
   531 F.3d 930 (D.C. Cir. 2008) .......................................................................... 17, 23

Siegert v. Gilley,
   500 U.S. 226 (1991) ......................................................................................... 39, 42

Simpkins v. Dist. of Columbia,
   108 F.3d ................................................................................................................ 38

Sloan v. U.S. Dept. of Housing and Urban Development,
   236 F.3d 756 (D.C. Cir. 2001) ......................................................................... 20, 24

Smith v. Brown & Williamson Tobacco Corp,
   3 F.Supp.2d 1473 (D.D.C. 1998) .......................................................................... 32

Smith v. D.C.,
   413 F.3d 86 (D.C. Cir. 2005) ................................................................................. 41

Smith v. U.S.,
   518 F. Supp. 2d 139 ........................................................................................... 7, 20

St. John v. Int'l Ass'n of Machinists Aerospace Workers, Local # 1010, Dist. # 118, Local Lodge
   No. 254,
   139 F.3d 1214 (8th Cir.1998) ............................................................................... 13

Steele v. U.S.,
   599 F.2d 823 (7th Cir. 1979) .................................................................................. 9

Stewart v. Baldwin County Bd. of Educ.,
   908 F.2d 1499 (11th Cir. 1990) ................................................................ 40

Stewart-Veal v. District of Columbia,
   896 A.2d 232 (D.C. 2006) ...................................................................... 32

Tabman v. F.B.I,
   718 F. Supp. 2d 98 (D.D.C. 2010) ..................................................... 18, 20

Taylor v. Dist. of Columbia,
   776 A.2d 1208 (D.C. 2001) ............................................................ 24, 25, 26

Tonelli v. U.S.,
   60 F.3d 492 (8th Cir. 1995) ................................................................... 19

Travel Assoc., Inc. v. Kingdom of Swaziland,
   CA No. 89-1235, 1990 WL 134512 (D.D.C. Aug. 30, 1990) .................... 27

Trifax Corp. v. Dist. of Columbia,
   53 F. Supp. 2d 20 (D.D.C. 1999) ............................................................ 26

Trudeau v. FTC,
   456 F.3d 178 (D.C. Cir. 2006) ................................................................. 3

Turner v. Tenn. Valley Auth.,
   859 F.2d 412 (6th Cir. 1988) .................................................................. 14

U.S. v. Gaubert,
   499 U.S. 315 (1991) .............................................................................. 17

U.S. v. Lorenzetti,
   467 U.S. 167 (1984) .............................................................................. 14

U.S. v. Neustadt,
   366 U.S. 696 (1961) .............................................................................. 29

U.S. v. Shearer,
   473 U.S. 52 (1985) ................................................................................ 27

U.S. v. Varig Airlines,
   467 U.S. 797 (1988) .............................................................................. 16

United States v. Kubrick,
   444 U.S. 111 (1979) ............................................................................ 5, 6

United States v. Stanley,
   483 U.S. 669 (1987) .............................................................................. 44

Van Sickle v. U.S.,
 285 F.2d 87 (1960) ........................................................................................... 12

Varlack v. SWC Caribbean, Inc.,
 550 F.2d 171 (3d Cir. 1977) ............................................................................ 36

Warren v. Dist. of Columbia,
 444 A.2d 1 (D.C. 1981) .................................................................................... 24

Washington v. Newsom,
 977 F.2d 991 (6th Cir. 1992) ........................................................................... 40

Wayne, v. Jarvis,
 197 F.3d 1098 ............................................................................................. 35, 36

Webb v. U.S.,
 535 F. Supp. 2d 54 (D.D.C. 2008) ..................................................................... 7

Weiss v. Int'l Bhd. of Elec. Workers,
 729 F. Supp. 144 (D.D.C. 1990) ...................................................................... 43

Western Contracting Corp. v. Bechtel Corp.,
 885 F.2d 1196 (4th Cir. 1989) ......................................................................... 36

Wightman-Cervantes v. Mueller,
 750 F. Supp. 2d 76 (D.D.C. 2010) ................................................................... 21

Willoughby v. U.S.,
 730 F.3d 476 (5th Cir. 2013) ........................................................................... 16

Wilson v. Layne,
 526 U.S. 603 (1999) ......................................................................................... 39

Wilson v. Libby,
 498 F. Supp. 2d 74 (D.D.C. 2007) ................................................................... 42

Wilson v. Libby,
 535 F.3d 697 (D.C. Cir. 2008) ......................................................................... 43

Wood v. Worachek,
 618 F.2d 1225 (7th Cir. 1980) ......................................................................... 34

Worthington v. Wilson,
 8 F.3d 1253 (7th Cir. 1993) ........................................................................ 33, 34

Zeleznik v. U.S.,
 770 F.2d 20 (3rd Cir. 1985) ............................................................................... 8

Ziglar v. Abbasi,
  No. 15-1358, ___ S. Ct.___,  2017 WL 2621317 (June 19, 2017)........................ 41, 42, 43, 45

Statutes

5 U.S.C. § 8101 ............................................................................................................. 13

5 U.S.C. § 8102 ............................................................................................................. 13

5 U.S.C. § 8116(c) ......................................................................................................... 13, 14

28 U.S.C. § 2401(b) ....................................................................................................... 4, 5

28 U.S.C. § 2674 ........................................................................................................... 24

28 U.S.C. § 2675(a) ....................................................................................................... 4, 10

28 U.S.C. § 2679(d) ....................................................................................................... 37

28 U.S.C. § 2680(a) ....................................................................................................... 16, 21

28 U.S.C. § 2680(h) ....................................................................................................... 27, 28

28 U.S.C. § 535 ............................................................................................................. 21

28 U.S.C. § 535(a) ......................................................................................................... 44

42 U.S.C. § 1983 ........................................................................................................... 7

D.C. Code § 12-101 ....................................................................................................... 9, 31

D.C. Code § 16-2701 ..................................................................................................... 9

D.C. Code § 16-2702 ..................................................................................................... 32

D.C. Code § 16-301(4).................................................................................................... 32

D.C. Code § 16-301(8).................................................................................................... 32

Tex. Lab. Code §406.123(a) ........................................................................................... 15

Tex. Labor Code §408.001(a).......................................................................................... 15