# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAWN NELSON MANNING, *et al.*,

     Plaintiffs,

    v.

MARK T. ESPER, Secretary of the Army, *et al.*,

     Defendants.

Civil Action No. 12-1802 (CKK)

## MEMORANDUM OPINION
(January 22, 2019)

On November 5, 2009, an act of domestic terrorism killed or injured numerous military servicemembers and civilians at Fort Hood. Many of those harmed by the attack, including family members, now attempt to recover damages from Major Nidal Hasan,[1] the convicted shooter, as well as from the estate of Anwar al-Aulaqi, the alleged co-conspirator. Plaintiffs also attempt to hold certain government officials liable in either their official or personal capacities.[2]

The Secretary of the Army, the Secretary of Defense, and the Director of the Federal Bureau of Investigation ("FBI"), collectively "Federal Defendants,"[3] move to dismiss Plaintiffs' claims against them in their official capacities pursuant to Federal Rules of Civil Procedure

---

[1] The Court adopts the military title that Nidal Hasan allegedly held as of the Amended Complaint, without taking a position on whether that title has been or should be removed.

[2] Plaintiffs use the term "individual" capacity, rather than personal capacity. Although the Court prefers the latter nomenclature, the distinction is without apparent difference.

[3] As of the parties' latest notice, the respective public officers sued in their official capacities were Secretary Mark T. Esper, Secretary James N. Mattis, and Director Christopher A. Wray. *See* Fed. R. Civ. P. 25(d) (providing for automatic substitution of successors to originally named officers); Fed. Defs.' Mot. to Dismiss, ECF No. 77, at 1 n.1; Joint Notice of Factual, Procedural or Case Law Developments, ECF No. 85, at 1 n.1. The Court is aware that James N. Mattis is no longer Secretary of Defense. His successor is automatically substituted.

12(b)(1), (3), and (6).  As Federal Defendants explain in their "Statement of Interest," they also take the opportunity to respond to claims solely against certain unnamed federal officials, John Does #1 through #6, who were sued only in their personal capacities.  *See* Fed. Defs.' Mot. to Dismiss, ECF No. 77 ("Fed. Defs.' Mot."), at 2 n.3 (citing, e.g., 28 U.S.C. § 517; *Falkowski v. EEOC*, 783 F.2d 252, 253 (D.C. Cir. 1986) (per curiam)).  The Court shall refer to the Federal Defendants and the Doe Defendants collectively as the "Government Defendants."  Federal Defendants' motion does not respond to claims against the other two Defendants, Major Hasan and Nasser al-Aulaqi, who allegedly represents Anwar al-Aulaqi's estate.  Accordingly, this Memorandum Opinion shall address only the claims against the Government Defendants.

Upon consideration of the pleadings,[4] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Federal Defendants' [77] Motion to Dismiss.[5]  All of the claims against Government Defendants shall be dismissed; some of those dismissals shall be without prejudice, as specified below.  With this decision, the Court is not ruling on the merits of any of Plaintiffs' claims.

*Summary of Ruling*

The Court shall dismiss all claims against Federal Defendants for lack of subject-matter jurisdiction.  Each Plaintiff's claims against Federal Defendants shall be dismissed without

---

[4] The Court's consideration has focused on the following pleadings:

- Defs.' Mem. of P&A in Supp. of Mot. to Dismiss, ECF No. 77 ("Fed. Defs.' Mem.");
- Pls.' Mem. of P&A in Opposition [sic] to Mot. to Dismiss, ECF No. 80 ("Pls.' Opp'n"); and
- Reply in Supp. of Defs.' Mot. to Dismiss, ECF No. 82 ("Fed. Defs.' Reply").

[5] Because the Court resolves this motion on jurisdictional grounds under Rule 12(b)(1), the Court need not reach Federal Defendants' venue arguments under Rule 12(b)(3) or pleading arguments under Rule 12(b)(6).  In any event, Federal Defendants did not develop the Rule 12(b)(3) arguments in the briefing.  *See* Fed. Defs.' Mem. at 1 n.5.

prejudice for failure to name the United States as a defendant. Alternatively, certain Plaintiffs' claims against Federal Defendants shall be dismissed without prejudice for failure to exhaust remedies or because of the exclusive-remedy bar under the Federal Employees' Compensation Act ("FECA"). Prejudice shall attach to the dismissal of other Plaintiffs' claims against Federal Defendants under the *Feres* doctrine.

Each Plaintiff's claims against Doe Defendants shall be dismissed without prejudice for failure to serve them.

To reiterate, with this decision, the Court is not ruling on the merits of any of Plaintiffs' claims.

## I. BACKGROUND

### A. Factual Background

Taking the allegations in the Amended Complaint as true for purposes of this motion, the Court shall summarize the sad and horrific facts of some relevance here. On November 5, 2009, Major Nidal Hasan, a then-practicing psychiatrist in the U.S. Army, opened fire at Fort Hood in Texas. 1st Am. Compl., ECF No. 22 ("Am. Compl."), ¶¶ 2, 29-30, 58, 170. Motivated by "radical Islamist" ideology, Major Hasan's shout of "Allah Akbar" expressly invoked the same "rallying cry" used on 9/11 and in other jihadist attacks. *Id.* ¶¶ 30, 170.[6] This carefully planned shooting spree claimed the lives of fourteen people, inflicted gunshot wounds on thirty-two more, and visited physical and nonphysical injuries on a host of others, including family members of those harmed at the scene. *Id.* ¶¶ 29-30, 127-68.

Major Hasan had communicated about jihad with Anwar al-Aulaqi, a leading al-Qaeda operative whose activities included recruiting Americans to carry out domestic attacks. *Id.* ¶¶ 5-

---

[6] Plaintiffs translate the Arabic, "Allah Akbar," as "God is Great." Am Compl. ¶ 30.

6, 22, 74, 85, 171. Through Major Hasan's comments during his military medical training, and through the FBI's review of his emails, the Army and FBI were aware of his extremist views. *E.g.*, *id.* ¶¶ 56, 67. Rather than taking precautions based on these views, however, or disciplining Major Hasan for his substandard medical performance, the Army continued to advance his military and medical careers, and the FBI minimized its investigation of him. *E.g., id.* ¶¶ 56, 61, 69. Each agency's actions were motivated by "political correctness and . . . ethnic and religious preferences" that overrode their responsibility for safety and security. *Id.* ¶ 65 (Army); *see also, e.g.*, *id.* ¶¶ 69, 83 (FBI).

**B. Procedural Posture**

This suit was filed on November 5, 2012, by certain individuals injured, and on behalf of other individuals killed in the attack, as well as their family members. Compl., ECF No. 1. The First Amended Complaint, dated April 30, 2013, contains nine tort and related claims against Major Hasan, in his personal capacity, and/or Nasser al-Aulaqi, as personal representative of the estate of Anwar al-Aulaqi. Am. Compl. ¶¶ 171, 181-239 (including, e.g., claim for conspiracy to deprive civil rights pursuant to 42 U.S.C. § 1985(3)). Anwar al-Aulaqi was evidently killed by an American drone strike in 2011. *Id.* ¶ 5.

Plaintiffs also plead eleven tort, constitutional, and Administrative Procedure Act ("APA") claims against a combination of Federal Defendants, named only in their official capacities, and six unnamed John Doe Defendants, sued exclusively in their personal capacities. *Id.* ¶¶ 172-80; 240-331. Each Doe Defendant was allegedly an employee of the U.S. Army, the U.S. Department of Defense, and/or the FBI. *Id.* ¶ 2.

Plaintiffs have experienced difficulties effectuating, or perfecting, service of process on at least some of the defendants. For their part, Federal Defendants do not dispute proper service upon

themselves. And the Court shall reserve for another day the issue of service on Major Hasan and Nasser al-Aulaqi, who are not presently moving for dismissal.

The Court is currently concerned with Doe Defendants. On February 11, 2013, this Court prompted Plaintiffs to comply with Federal Rule of Civil Procedure 4(m) by filing proof of service upon Doe Defendants, or explaining why they had not done so, by March 5, 2013. Order, ECF No. 15. At Plaintiffs' request, the Court extended that deadline until June 5, 2013. Min. Order of Feb. 13, 2013. That deadline came and went amidst briefing of Federal Defendants' motion to stay proceedings during Major Hasan's court martial, which stay the Court ultimately granted on January 30, 2014. *See* Order, *Manning v. McHugh*, Civil Action No. 12-1802 (CKK), 2014 WL 12789614 (D.D.C. Jan. 30, 2014), ECF No. 50. In the meantime, the parties vigorously litigated not only that motion but also Plaintiffs' request for leave to conduct expedited discovery of the identities of Doe Defendants, in order to facilitate service upon them. *See, e.g.*, Pls.' Opp'n to Mot. to Stay and Cross-Mot. for Leave to Conduct Expedited Disc., ECF No. 30, at 17-18. In light of the concerns with unlawful command influence that warranted the stay, the Court also denied without prejudice Plaintiffs' motion for expedited discovery. *Manning*, Civil Action No. 12-1802 (CKK), 2014 WL 12789614, at *5. The Court expressly permitted Plaintiffs to renew their request "once the stay in this matter is lifted," at which time "the Court will consider the parties' arguments for expedited discovery on the merits." *Id.*

On August 23, 2013, Major Hasan was convicted in a military court of thirty-two specifications of attempted murder and thirteen specifications of premeditated murder. *Manning*, Civil Action No. 12-1802 (CKK), 2014 WL 12789614, at *2. Post-conviction proceedings lasted much longer than the Court, or the parties, envisioned. Still, at Federal Defendants' request and over Plaintiffs' repeated objections, the Court maintained the stay to avoid any risk of unlawful

command influence and to spare the inefficiencies of piecemeal proceedings. *See, e.g.*, Order, ECF No. 69; *Manning*, Civil Action No. 12-1802 (CKK), 2014 WL 12789614.

On March 29, 2017, when Federal Defendants at last indicated that "the Commanding General, III Corps and Fort Hood took final action on the military court-martial of *United States v. Hasan*," the Court lifted the stay with Federal Defendants' consent. Status Report, ECF No. 73; Min. Order of Mar. 31, 2017. The parties agreed to brief Federal Defendants' forthcoming dispositive motion. Joint Status Report and Proposed Briefing Schedule, ECF No. 74. As of the Court's November 2018 inquiry, Major Hasan's appellate post-conviction proceedings were still in progress, but the Court understands that the risk of unlawful command influence is past. *See* Joint Notice of Factual, Procedural or Case Law Developments, ECF No. 85; Min. Order of Mar. 31, 2017 (construing [73] Status Report as indication of "final action by the convening authority").

Federal Defendants' pending [77] Motion to Dismiss includes a Statement of Interest regarding the claims against Doe Defendants, who still have not yet been identified. *See* Fed. Defs.' Mot. at 2 n.3. Federal Defendants make clear that they do not mean to enter an appearance on behalf of those Doe Defendants. *Id.* The Court shall take this statement as a guide to certain arguments that Doe Defendants might raise if they were to appear. Although Federal Defendants do not expressly object to the lack of service on Doe Defendants, they reserve certain arguments along those lines. *See id.* (offering, for example, "insufficiency of service of process" and "failure to complete service of process in a timely manner"). Despite the lifting of the stay, and the identification of these potential defenses in the briefing, Plaintiffs have not renewed their motion for expedited discovery of Doe Defendants' identities.

In order to facilitate this decision, the Court solicited further information from the parties several times. *See* Min. Orders of Nov. 15, 2018, Nov. 30, 2018, and Dec. 11, 2018. At the Court's

inquiry, Plaintiffs recently notified the Court that they no longer want to pursue their Eleventh Claim, which had sought a declaratory judgment that certain Plaintiffs were entitled to Purple Heart awards. *See* Min. Order of Nov. 30, 2018; Joint Notice Regarding Pls.' Eleventh Claim, ECF No. 86. Accordingly, only Plaintiffs' first ten claims remain at issue in the pending motion, which is now ripe for decision.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject-matter jurisdiction. In determining whether there is jurisdiction, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)) (internal quotation marks omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, still that "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv.*

*Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

***

To be clear, a court may consider material extraneous to the complaint in evaluating a Rule 12(b)(1) motion, unlike a Rule 12(b)(6) motion. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "As a general rule, 'Federal Rule of Civil Procedure 12(d) forbids considering facts beyond the complaint in connection with a motion to dismiss the complaint for failure to state a claim.'" *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (quoting *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017)). But Rule 12(d) does not prohibit such consideration in connection with a motion under Rule 12(b)(1). "[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack

of jurisdiction . . . ." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert*, 974 F.2d at 197). If a motion alleging jurisdictional defects relies on materials outside of the complaint, it does *not* thereby convert into a motion for summary judgment. *See Haase v. Sessions*, 835 F.2d 902, 905-06 (D.C. Cir. 1987) (recognizing, under prior Rule 12 language, that "*only* a 12(b)(6) motion [may] be converted into a motion for summary judgment"); *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

## III.  GROUNDS FOR SUBJECT-MATTER JURISDICTION

Plaintiffs originally invoked three federal statutory bases for subject-matter jurisdiction over their various claims against all, or some subset, of the Government Defendants. Jurisdiction under 5 U.S.C. §§ 701-06 and 28 U.S.C. § 1331 is no longer at issue because Plaintiffs have ceased pursuing their APA claim. *See* Am. Compl. ¶ 120, Claims for Relief (Subpart B); Joint Notice Regarding Pls.' Eleventh Claim, ECF No. 86.

Plaintiffs' tort claims allegedly arise under the Federal Tort Claims Act ("FTCA"), for which they cite 28 U.S.C. § 2671 *et seq.* and 28 U.S.C. § 1346(b)(1). Am. Compl. ¶ 117. The following nine of Plaintiffs' remaining ten claims are tort claims: the First Claim, to the extent that it consists of decedents' surviving tort claims; the Second Claim, for wrongful death; the Third Claim, for negligence in hiring, retention, and supervision; the Fourth Claim, for negligence in investigation; the Fifth Claim, for gross negligence; the Seventh Claim, for negligent infliction of emotional distress; the Eighth Claim, for loss of consortium; the Ninth Claim, for negligent misrepresentation; and the Tenth Claim, for intentional misrepresentation. *Id.* (Claims for Relief, Subpart B). With two exceptions, each of the foregoing claims proceeds against some combination of both Federal Defendants and Doe Defendants. Only the Sixth and Tenth Claims proceed exclusively against one or more Doe Defendants.

For their constitutional claims, Plaintiffs turn to 28 U.S.C. § 1328, which section appears not to exist.  In any event, constitutional claims are contained in at least Plaintiffs' Sixth Claim. *Id.* ¶ 119, Claims for Relief (Subpart B).  Plaintiffs also urge that the constitutional claims of the decedents remain available under the Survival Act.  *See* Am. Compl. ¶ 245 (maintaining that recovery for surviving claims should "includ[e] damages for violation of [decedents'] constitutional rights").  Assuming that those constitutional claims survive, they presumably would lie only against Doe Defendants, consistent with the constitutional claims of living Plaintiffs in the Sixth Claim.  The Court need not decide whether those claims in fact survive, however, as the Court shall decide below that all claims against Doe Defendants must be dismissed without prejudice on other grounds.

Plaintiffs in their Amended Complaint also assert diversity jurisdiction "[t]o the extent relevant." *Id.* ¶ 121.  But the parties have not briefed that basis for jurisdiction.  Rather, with the exception of claims against Doe Defendants, the briefing assumes that federal-question jurisdiction over FTCA claims is the jurisdictional hook at issue.  That is consistent with the primary jurisdictional assertion in Plaintiffs' Amended Complaint.  *See id.* ¶¶ 117-21.  Given the many Plaintiffs and Defendants in this case, the Court shall refrain from a *sua sponte* evaluation of citizenship to determine whether diversity jurisdiction requirements are satisfied.  *See generally Am. Farm Bureau*, 121 F. Supp. 2d at 90 (noting that plaintiff has burden to establish subject-matter jurisdiction).

Problematically, Federal Defendants' briefing does not always clearly distinguish what they believe to be Rule 12(b)(1) versus Rule 12(b)(6) grounds for dismissal.  Nor do Plaintiffs address this issue.  This omission concerns the Court because neither party raises Supreme Court decisions that curtail the scope of "jurisdictional" defenses in FTCA and other actions.  *See, e.g.*,

*United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) (regarding "a threshold limitation on a statute's scope" as nonjurisdictional absent clear statement by Congress). Nevertheless, the Court has attempted to ensure that it abides by this strand of case law. Authority in either this Circuit or its sisters continues to recognize as jurisdictional the grounds upon which this Court shall dismiss claims against Federal Defendants. The Court need not reach the issue of tolling the FTCA's statute of limitations, an issue which is now regarded as non-jurisdictional under *Kwai Fun Wong*. *See Kwai Fun Wong*, 135 S. Ct. at 1638. Today's decision to dismiss claims against Federal Defendants is based exclusively on lack of subject-matter jurisdiction under Rule 12(b)(1).

## IV. CLAIMS AGAINST FEDERAL DEFENDANTS

The Court could exercise its discretion to treat certain of Federal Defendants' arguments as conceded, for failure of Plaintiffs to address those arguments in their Opposition. Even though the Court shall not do so, for the reasons described below, the Court shall find that it lacks subject-matter jurisdiction over Plaintiffs' claims against the Federal Defendants. Plaintiffs' tort claims against Federal Defendants cannot survive because Plaintiffs failed to name the United States as a defendant. Alternatively, some of the Plaintiffs failed to exhaust their administrative remedies. Those Plaintiffs who did exhaust remedies now face an employment-related bar to their recovery. The claims of only one plaintiff, Michelle R. Harper, and her family surmount the respective employment-related bar, but those claims shall be dismissed in any case for failure to sue the proper defendant. The Court shall go to great lengths to distinguish those claims for which dismissal should be without prejudice.

### A. Plaintiffs' Failure to Respond to Certain Arguments

At the threshold, Plaintiffs fail to address a number of Federal Defendants' grounds for dismissal of claims against them. To say so is not to characterize their briefing uncharitably;

Plaintiffs do make arguments. But they focus more on the merits than some of the jurisdictional (and other) issues raised by Federal Defendants. In their Reply, Federal Defendants observe that Plaintiffs did not respond to the following arguments in the Motion to Dismiss: the failure to sue the proper defendant, namely the United States; the application of the public duty doctrine and of the intentional torts exception to the sovereign immunity waiver; the failure to state a claim of negligence or negligent infliction of emotional distress; and the application of the exclusive-remedy provision of the Texas Workers' Compensation Act. *See* Fed. Defs.' Reply at 1-5. As this Memorandum Opinion will demonstrate, Plaintiffs have not addressed crucial aspects of various other complex arguments as well, such as Federal Defendants' defense under the Federal Employees' Compensation Act.

If Plaintiffs had not filed a timely opposition at all, then Local Rule 7(b) would permit the Court to "treat the motion as conceded." Local Civil Rule 7(b). Although that treatment has been upheld, the Court of Appeals has cautioned that "grant[ing] an unopposed motion to dismiss under Federal Rule 12(b)(6) risks circumventing the clear preference of the Federal Rules to resolve disputes on their merits." *Cohen v. Bd. of Trs. of Univ. of District of Columbia*, 819 F.3d 476, 482-83 (D.C. Cir. 2016). In those circumstances, dismissal without prejudice could be appropriate. *See id.* at 484.

Grounds for concession may be stronger where Plaintiffs did file an opposition, but that brief did not address many of Federal Defendants' arguments. "In the context of *non-dispositive* motions, [the Court of Appeals] [has] affirmed district court decisions that treated as conceded an issue left entirely unaddressed by the plaintiff in a timely filed response." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 344 (D.C. Cir. 2018) (emphasis added) (citing *Texas v. United States*, 798 F.3d 1108, 1110, 1113-16 (D.C. Cir. 2015); *Wannall v.*

*Honeywell, Inc.*, 775 F.3d 425, 428-29 (D.C. Cir. 2014)). The dispositive nature of the pending motion seems to heighten the stakes.

In light of Circuit precedent favoring decisions on the merits, this Court shall generally not treat Federal Defendants' unaddressed arguments as conceded. It is true that this Court has "no obligation to 'perform . . . legal research for [Plaintiffs]'" in this circumstance. *Texas*, 798 F.3d at 1115 (quoting *Stanciel v. Gramley*, 267 F.3d 575, 578 (7th Cir. 2001)) (first alteration in original). But, particularly because the Court must address jurisdictional issues, the Court shall carefully consider the arguments of Defendants and the support therefor. Where Plaintiffs respond to an argument, but not an aspect thereof, the Court may determine that Plaintiffs concede that limited point. Federal Defendants too concede at least one aspect of an issue that they otherwise address. *See infra* Subpart IV.B.2.b (regarding denial, or deemed denial, of claims presented administratively).

## B.  Subject-Matter Jurisdiction

The Court has decided that Plaintiffs did not concede jurisdictional or other flaws in their Amended Complaint simply by failing to address certain of Federal Defendants' Rule 12(b)(1) grounds for dismissal. Despite the dearth of counterarguments, however, the Court must satisfy itself of subject-matter jurisdiction before it can turn to any contest on the merits. *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

The parties have attached various materials to their briefing of Federal Defendants' motion. As discussed above, the Court may consider these materials on Rule 12(b)(1) grounds without treating this motion as a motion for summary judgment. *See, e.g.*, *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1253.

"It has long been established . . . that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) (second alteration in original). The United States has consented to tort suits in certain circumstances embodied in the FTCA. *See, e.g.*, *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) (recognizing "limited waiver of the Government's sovereign immunity"). That limited waiver is nevertheless curtailed by certain statutory and common law regimes. *See, e.g.*, *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983) (Federal Employees' Compensation Act); *Feres v. United States*, 340 U.S. 135, 145 (1950) (implied exception for military servicemembers); 1 Lester S. Jayson & Robert C. Longstreth, *Handling Federal Tort Claims* §§ 5.04[1], 5.05[1] (2018). Because "[s]overeign immunity is jurisdictional in nature," a plaintiff's identification of a valid waiver is critical to establishing a federal court's subject-matter jurisdiction over FTCA claims. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Fleming v. Nat'l Transp. Safety Bd.*, No. 13-5287, 2014 WL 590974 (D.C. Cir. Feb. 7, 2014) (per curiam) (citing *Meyer*, 510 U.S. at 475). Unless the United States has waived its sovereign immunity in a specific context, a federal court must dismiss claims against the United States. *See, e.g.*, *Clark v. Wells Fargo Bank*, 585 F. App'x 817, 819-21 (3d Cir. Sept. 22, 2014) (affirming dismissal of FTCA claims due to jurisdictional deficiencies).

"The FTCA's provisions are contained in two areas of the United States Code," 28 U.S.C. § 1346(b) and Chapter 171 of Title 28. *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1846 (2016). Section 1346(b) "gives federal district courts exclusive jurisdiction over tort claims against the United States for the acts of its employees '[s]ubject to the provisions of chapter 171' of Title 28."

*Id.* A plaintiff may avail herself of this waiver of sovereign immunity if she satisfies the "six elements" of an "actionable" claim under Section 1346(b). *Meyer*, 510 U.S. at 477.

The procedural aspects of the FTCA are contained in Chapter 171, which dictates, in pertinent part, the "scope of [the] United States' liability." *Simmons*, 136 S. Ct. at 1846. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674.

The Court shall turn to the series of jurisdictional hurdles that allegedly bar Plaintiffs' tort claims against Federal Defendants under the FTCA. "While . . . subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Wash. All. of Tech. Workers*, 892 F.3d at 342 & n.4 (quoting *Ruhrgas AG*, 526 U.S. at 584) (internal quotation marks omitted). Accordingly, the Court shall begin with a jurisdictional defect affecting all of the Plaintiffs before proceeding to those that affect subsets of the Plaintiffs differently. Disposition of this case on the articulated grounds will preclude the Court from reaching some of Federal Defendants' defenses, jurisdictional and otherwise.

1. Failure to Name the United States as a Party

First among the elements of an actionable FTCA claim is that the claim be "against the United States." *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)) (internal quotation marks omitted). The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has made clear that a plaintiff must sue *the United States itself* to avail himself of FTCA's waiver of sovereign immunity. *See Goddard v. District of Columbia Redev. Land Agency*, 287 F.2d 343, 345-46 (D.C. Cir. 1961) (affirming dismissal because, *inter alia*, FTCA complaint "must name the United States as defendant"). Numerous other courts have likewise "rigidly applied" this well-

established rule.  1 Jayson & Longstreth, *supra*, § 6.01[2] & n.17 (observing that FTCA claimant "must bring his action against the United States, specifically naming it as defendant" and collecting "many cases" reflecting this proposition); *see also, e.g.*, *Caires v. FDIC*, 298 F. Supp. 3d 79, 85-86 (D.D.C. 2018), *appeal filed*, No. 18-5055 (D.C. Cir.) (finding sufficient basis for dismissal on jurisdictional grounds of suit against agency alone); *CHS Indus., LLC v. U.S. Customs & Border Prot.*, 652 F. Supp. 2d 1, 3 (D.D.C. 2009) (dismissing claims against agency on this basis); *Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) ("Since the plaintiff elected to sue the Secretary of Labor in her official capacity rather than the government itself, the complaint must fail for that reason alone for lack of subject matter jurisdiction.").

Nor, in light of *Arbaugh* and *Kwai Fun Wong*, is the Court aware of any authority deeming the requirement to name the United States to be non-jurisdictional.  Rather, courts have continued to dismiss claims against any other defendants on jurisdictional grounds.  *See, e.g.*, *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 413 n.2 (5th Cir. 2013) (recognizing that district court rightly dismissed FTCA claims against individual people); *see also Pappas v. United States*, 617 F. App'x 879, 881 (10th Cir. June 11, 2015) (citing, e.g., *Meyer*, 510 U.S. at 477) (treating deficiency in any of the six elements of a cognizable claim as a jurisdictional issue); *Verizon Wash., D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 214-15 (D.D.C. 2017) (dismissing claims against agency on jurisdictional grounds).

Through their Amended Complaint, Plaintiffs sue three federal officials in their official capacities, six unnamed federal officials in their personal capacities, and two non-governmental defendants.  They do not sue the United States.  "[T]hat the FTCA claim must be against the United States . . . is not a trifling matter: in this case, its absence compels dismissal of [Plaintiffs'] claims against the [Federal Defendants]." *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 16-

17 (D.D.C. 2015).[7] The Court need not decide whether claims against Doe Defendants sued exclusively in their personal capacities also could be dismissed. Doe Defendants shall be dismissed without prejudice on other grounds.

Faced with Federal Defendants' briefing, Plaintiffs say nothing to excuse their failure to sue the United States. If Plaintiffs had sought leave to amend to correct this fatal deficiency, the Court would have allowed it. *See, e.g.*, *Hansen v. Lappin*, 800 F. Supp. 2d 76, 81 n.5 (D.D.C. 2011) (Kollar-Kotelly, J.) (reaching other grounds for dismissal, in light of plaintiff's willingness to amend complaint). But Plaintiffs completely ignore this deficiency, which could have been corrected easily. Accordingly, the Court shall dismiss all of the tort claims against Federal Defendants, *without prejudice* to refiling if this error is corrected. No non-tort claims against Federal Defendants remain either.[8]

## 2. Exhaustion of Remedies

Beginning with the exhaustion requirement, the Court shall consider further jurisdictional hurdles to determine whether prejudice should attach to the Court's dismissal of claims against Federal Defendants. The parties' briefing of exhaustion leaves much to be desired.[9] The Court shall nevertheless forge ahead in part on its own investigation of the authorities.

---

[7] Even if Plaintiffs had properly sued the United States as well, there is persuasive authority for dismissing any remaining claims *against the Federal Defendants*. *See, e.g.*, *King*, 728 F.3d at 413 n.2.

[8] As noted above, the Eleventh Claim, alleging an APA violation, has been resolved. The only constitutional claims appear to be pled exclusively against Doe Defendants.

[9] For example, the parties do not even mention *Kwai Fun Wong*. Moreover, Plaintiffs address Federal Defendants' exhaustion arguments only selectively. *See* Pls.' Opp'n at 8-9 (offering certain counterarguments "[b]y way of example").

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993).  As the statute makes clear,

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency* in writing and sent by certified or registered mail. *The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section*. . . .

28 U.S.C. § 2675(a) (emphasis added). The presentment of an administrative claim before filing an FTCA suit "is a jurisdictional prerequisite to the maintenance of a tort suit against the United States."  *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987) (citing 28 U.S.C. § 2675(a)).  Denial, or deemed denial, is part of this jurisdictional prerequisite too.  *See McNeil*, 508 U.S. at 112 (interpreting Section 2675(a) as "indicat[ing] that Congress intended to require *complete exhaustion* of Executive remedies before invocation of the judicial process" (emphasis added)); *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992) (affirming dismissal for lack of jurisdiction over FTCA claim filed after presentment to agency but before denial); *Reynolds v. United States*, 748 F.2d 291, 292 (5th Cir. 1984) (same).

By contrast, recent Supreme Court precedent has construed the statute of limitations in 28 U.S.C. § 2401(b) as imposing only a *non-jurisdictional* limit on FTCA claims.[10]  *See Kwai Fun Wong*, 135 S. Ct. at 1632-33, 1638 (deciding that Section 2401(b) is "a mere claims-processing rule" rather than "the rare statute of limitations that can deprive a court of jurisdiction").

---

[10] Section 2401(b) "states the [FTCA's] statute of limitations, whose period is measured in terms of presentment and final denial of claims under [Section] 2675(a)."  *GAF Corp.*, 818 F.2d at 920 n.108.

Presentment itself nevertheless continues to be regarded as a jurisdictional non-negotiable. *See Smith v. Clinton*, 886 F.3d 122, 127 (D.C. Cir. 2018) (per curiam) (affirming dismissal of certain claims for lack of subject-matter jurisdiction in absence of exhaustion); 3 Jayson & Longstreth, *supra*, § 17.01 (collecting post-*Kwai Fun Wong* cases distinguishing between jurisdictional issue of presentment and non-jurisdictional issue of timeliness thereof).

Although the Supreme Court has affirmed a flat dismissal for failure to comply with Section 2675(a), this Court shall abide by more recent D.C. Circuit precedent squarely considering and finding that such a dismissal should be *without prejudice*. *Compare McNeil*, 508 U.S. at 109, 113 (affirming dismissal without discussing prejudice issue), *with Simpkins v. D.C. Gov't*, 108 F.3d 366, 370-72 (D.C. Cir. 1997) (reversing in part a dismissal with prejudice and remanding for dismissal without prejudice); *see also, e.g.*, *M.J. v. Georgetown Univ. Med. Ctr.*, No. 13-5321, 2014 WL 1378274 (D.C. Cir. Mar. 25, 2014) (per curiam) (modifying a district court's dismissal on the authority of *Simpkins*).

Federal Defendants aver that certain Plaintiffs failed to file administrative claims at all, and that others failed to do so within the two-year statute of limitations. *See* Fed. Defs.' Mem. at 5 (citing Exs. A, B, & C). But in light of *Kwai Fun Wong*, the Court shall reach only the first issue, the presentment requirement. The statute of limitations would be an issue only if the Court found jurisdiction, which it does not, and thereafter reached the Rule 12(b)(6) grounds for dismissal.

"[A]s with other jurisdictional prerequisites to suit, a claimant must both plead and prove satisfaction of the administrative claim requirement in an FTCA suit." 3 Jayson & Longstreth, *supra*, § 17.01 (collecting cases). With regard to proof, the declarations filed in support of Federal Defendants' arguments are legitimate means of challenging subject-matter jurisdiction over

Plaintiffs' claims.  *See, e.g.*, *Rashad v. D.C. Cent. Det. Facility*, 570 F. Supp. 2d 20, 24 & n.3 (D.D.C. 2008).

The Court pauses briefly to consider whether exhaustion is necessary for Plaintiffs' First and Second Claims, which arise under the District of Columbia Survival Act, D.C. Code § 12-101, and District of Columbia Wrongful Death Act, D.C. Code § 16-2701, respectively.[11]  "The Wrongful Death Act creates 'an entirely new right of action in favor of designated beneficiaries' while the Survival Act 'preserves and carries forward for the benefit of the deceased's estate the right of action which the deceased would have had, had he not died.'"  *Eastridge v. United States*, Civil Action No. 06-448 (CKK), 2007 WL 495797, at *11 (D.D.C. Feb. 12, 2007) (Kollar-Kotelly, J.) (quoting *Semler v. Psychiatric Inst. of Wash., D. C., Inc.*, 575 F.2d 922, 924-25 (D.C. Cir. 1978)).  Plaintiffs do not respond to Federal Defendants' argument that Survival Act and Wrongful Death Act claims must be exhausted.  The Court is not aware of any basis for excepting those claims from the exhaustion requirement imposed by Section 2675(a).  *See Burton v. United States*, 668 F. Supp. 2d 86, 95-98 (D.D.C. 2009) (finding exhaustion of remedies in FTCA case consisting of Survival Act and Wrongful Death Act claims); *Eastridge*, Civil Action No. 06-448 (CKK), 2007 WL 495797, at *11-*12 (dismissing FTCA claims under Survival Act and Wrongful Death Act that had not been exhausted).  Accordingly, the following analysis of the exhaustion issue shall apply to all of Plaintiffs' remaining claims against Federal Defendants.

a.  *Pleading Compliance with Exhaustion Requirement*

The Amended Complaint alleges that "unless otherwise noted, plaintiffs have served notice of their claims for relief on defendants within two years of their accrual as required by 28 U.S.C.

---

[11] As Federal Defendants correctly observe, Plaintiffs' Amended Complaint reversed the statutory citations for the Survival Act and Wrongful Death Act.  *See* Am. Compl. (First and Second Claims); Fed. Defs.' Mem. at 9-10.  This apparent mistake does not hinder the Court's analysis.

§ 2401 and more than six months have elapsed without defendants formally responding thereto." Am. Compl. ¶ 117. The Court shall turn shortly to the parties' materials outside of the Amended Complaint that test this allegation.

Before doing so, the Court treats the exception to which the aforementioned language, "unless otherwise noted," evidently adverts. The parties' briefing does not address this issue. But Plaintiffs concede in their Amended Complaint that certain of them filed administrative claims less than six months before filing suit: Chelsea Garrett, Jerry and Michelle Sims, Carl Cooke, and the Royal family. *Id.* ¶ 169. The Amended Complaint does not say whether those claims were with the Army, FBI, or both; accordingly, in light of Plaintiffs' burden, the Court shall assume that the concession applies to claims with both agencies. *See Am. Farm Bureau*, 121 F. Supp. 2d at 90. The same concession about presenting claims less than six months before filing suit appears in both the Amended Complaint and the original Complaint. *See* Compl., ECF No. 1, ¶ 161. These Plaintiffs effectively admit, therefore, that they were not yet able to plead denial of their administrative claims before pursuing their claims in this Court. *See* 28 U.S.C. § 2675(a) (requiring the elapse of six months before deeming "final denial").

This Court is not at liberty to proceed in the absence of a denial or deemed denial by the appropriate agency. *See McNeil*, 508 U.S. at 112 (requiring adherence to "straightforward statutory command" in 28 U.S.C. §2675(a)). Accordingly, the claims of Chelsea Garrett, Jerry and Michelle Sims, Carl Cooke, and the Royal family must be dismissed without prejudice for failure to exhaust administrative remedies with the Army and FBI.

### b. *Proving Compliance with Exhaustion Requirement*

Federal Defendants challenge the claims of certain Plaintiffs who properly allege both filing *and* deemed denial of their administrative claims. On behalf of the Army, Tracy Wynn,

Acting Chief of the Operations and Records Branch for the U.S. Army Claims Service, denies receiving any claims from representatives of the following decedents: Libardo Caraveo, Justin DeCrow, Frederick Greene, Jason Hunt, Amy Krueger, Russell Seager, Francheska Velez, "Velez, Unborn Child" (hereinafter "Baby Velez"),[12] Juanita Warman, Kham Xiong, and "P.Z. Zeigler." Fed. Defs.' Mem. at 5; Fed. Defs.' Mem., Ex. A, ECF No. 77-1 (Decl. of Tracy Wynn). Plaintiffs dispute this list in several ways.

First, Plaintiffs interpret Federal Defendants' argument as stating that the military did not receive a claim from "Staff Sergeant Zeigler." Pls.' Opp'n at 8. But that misrepresents the briefing. Federal Defendants instead point out that the military did not receive a claim from "P.Z. Zeigler," whom the Court assumes is the "P.Z." identified in the Amended Complaint as Staff Sergeant Zeigler's minor son. Fed. Defs.' Mem. at 5; Fed. Defs.' Reply at 10 n.4; *see also* Fed. Defs.' Mem., Ex. A (21 of 22), ECF No. 77-1 (Decl. of Tracy Wynn) (declaring on behalf of Army the lack of administrative tort claims from P.Z. Zeigler); Am. Compl. ¶ 154 (distinguishing between Plaintiffs in Zeigler family). Plaintiffs' exhibit containing claim forms from Patrick and Jessica Zeigler does not include claims on behalf of their child, minor P.Z. Pls.' Opp'n, Ex. B, ECF No. 80-2. Plaintiffs have failed to carry their burden. In the absence of any other basis for finding that P.Z.'s claims against the military were exhausted, the Court shall rely on Ms. Wynn's declaration in finding that those claims have not been exhausted.

As for the other claims that the military allegedly did not receive, Plaintiffs rely on a letter dated November 4, 2012, from a Dr. Michael Engelberg that allegedly conveys certain "amended"

---

[12] This Plaintiff is the unborn child of decedent Francheska Velez. Am. Compl. ¶ 161. Both Ms. Velez and Baby Velez are represented by Eileen Rodriguez. *Id.* ¶¶ 133, 161. Ms. Rodriguez is referred to in the Amended Complaint varyingly as "Eileen" and "Eillen." The Court shall simply use Eileen.

claim forms to the Department of Defense, the Army, the FBI, and the Department of Justice. Pls.' Opp'n at 8-9; Pls.' Opp'n, Ex. C, ECF No. 80-3. With this argument, Plaintiffs do not refer to Baby Velez, so the Court finds that they concede any argument that claims on behalf of Baby Velez with the military have been exhausted. Plaintiffs do refer to "P.Z. Zeigler," on the other hand, but there is no reference to P.Z., or any other member of the Zeigler family, in the letter contained in Exhibit C. Accordingly, Plaintiff's filing does not change the Court's foregoing assessment that claims with the military on behalf of P.Z. have not been exhausted. *See* Fed. Defs.' Reply at 10.

Setting aside Baby Velez and P.Z., the amended forms purportedly add claims on behalf of the remaining decedents who appear in Ms. Wynn's declaration. *See* Pls.' Opp'n, Ex. C, ECF No. 80-3. Federal Defendants argue that these new claims, if in fact they were filed, were not timely. *See* Fed. Defs.' Reply at 10-11. But, under *Kwai Fun Wong*, the Court would not turn to that statute of limitations issue until after satisfying itself of jurisdiction. The Court is still left with a problem: a military declarant avers that certain claims were not received, while Plaintiffs argue that they did in fact mail the claims. *See, e.g.*, Pls.' Opp'n at 9; Pls.' Opp'n, Ex. D, ECF No. 80-4 (containing receipts purportedly from mailings of Plaintiffs' claims). However, the Court need not resolve this issue. The Court shall assume, *arguendo*, that representatives of the following deceased military servicemembers did in fact file administrative claims: Libardo Caraveo, Justin DeCrow, Frederick Greene, Jason Hunt, Amy Krueger, Russell Seager, Francheska Velez, and Juanita Warman. The Court is comfortable making this assumption because it shall find, below, that prejudice should attach anyway to the dismissal of these military servicemember Plaintiffs' claims under the *Feres* doctrine.

Federal Defendants also allege that the following Plaintiffs did not submit a claim to the FBI: Michelle Sims, Eileen Rodriguez as personal representative of Baby Velez, Eileen Rodriguez as Baby Velez's grandmother, and Juan G. Velez as Baby Velez's grandfather. Fed. Defs.' Mem. at 5-6; *see also* Fed. Defs.' Mot., Ex. B, ECF No. 77-2 (Decl. of Crystal J. Peterson, FBI, ¶ 7). Plaintiffs dispute this claim only as to Michelle Sims. They suggest that because there is proof that Ms. Sims submitted a claim to the Army, she likewise can be "presumed" to have filed with the FBI as well. Pls.' Opp'n at 9 (citing Fed. Defs.' Mot., Ex. C, ECF No. 77-3 (6 of 7) (declaring that Army received claim from Ms. Sims on June 25, 2012)). Plaintiffs rely on Dr. Engelberg's letter referenced above to show that a claim was filed with the FBI on her behalf. *Id.*; Pls.' Opp'n, Ex. C, ECF No. 80-3. But that letter does not refer to Ms. Sims. Nor does the set of mailing receipts in Plaintiffs' Exhibit D refer to a claim by Ms. Sims. Considering the relevant materials outside the Amended Complaint, the Court finds insufficient evidence to show that Ms. Sims submitted a claim to the FBI.[13] Even if Ms. Sims had so submitted, the Court observed above her concession that she did not wait six months before filing suit. Accordingly, Ms. Sims has not established that she exhausted her administrative remedy with the FBI. Moreover, Plaintiffs concede any argument that Eileen Rodriguez as personal representative of Baby Velez, Eileen Rodriguez as Baby Velez's grandmother, and Juan G. Velez as Baby Velez's grandfather exhausted their remedies with the FBI.

Of course, Plaintiffs were required not only to file claims with the Army and FBI; those claims also must have been denied or properly deemed denied before Plaintiffs could file suit. Setting aside those Plaintiffs who admit filing suit within six months of their administrative claims,

---

[13] The Court is comfortable making this finding despite the lack of certain letter-exhibits that Ms. Peterson's declaration says are attached to it but do not appear in the record. *See, e.g.*, Fed. Defs.' Mot., Ex. B, ECF No. 77-2 (Decl. of Crystal J. Peterson, FBI, ¶¶ 4, 5).

or are dismissed for failure to prove that they filed claims, the Court lacks adequate proof that the remaining Plaintiffs satisfied the denial requirement.

Because of lacunae in the parties' briefing, the Court instructed Federal Defendants to file supplemental declarations to clarify whom they admit properly exhausted remedies. *See* Min. Order of Dec. 11, 2018; Def.'s [sic] Resp. to Ct.'s Order for Suppl. Decls., ECF No. 87 ("Fed. Defs.' Suppl. Decls."). The resulting declarations improperly conflate timely filing with exhaustion, failing to account for whether denial or deemed denial also occurred. *See* Fed. Defs.' Suppl. Decls. at 1 (submitting certain declarations "that identify Plaintiffs whom the agencies admit timely filed administrative claims with the respective agencies, and thereby exhausted their administrative remedies"). Nevertheless, the Army and FBI declarations list claims that were made before November 5, 2011. *See* Suppl. Decl. of Connie M. McConahy, U.S. Army Claims Service, ECF No. 87-1, ¶ 2; Suppl. Decl. of Crystal J. Peterson, FBI, ECF No. 87-2, ¶ 4. This case was not filed until November 5, 2012. Compl., ECF No. 1. Accordingly, it is clear that more than six months elapsed between filing of those administrative claims as to which Federal Defendants concede exhaustion and the filing of this lawsuit. Although Plaintiffs have the burden to establish subject-matter jurisdiction, the Court shall again assume, *arguendo*, based on the Government's concession, that the Government either denied or did not respond to those claims within six months, and that therefore Plaintiffs' remedies were fully exhausted. The Court's below analysis of other obstacles to jurisdiction shall persuade the Court that the claims of nearly every Plaintiff against Federal Defendants should be dismissed for employment-related reasons as well.[14]

---

[14] The exception is the claims of Michelle R. Harper and her family, which are dismissed solely for failure to name the United States as a defendant.

Federal Defendants' supplemental declarations do not refer to the following further Plaintiffs, who might have exhausted remedies with one of the two agencies: Eileen Rodriguez as grandmother of Baby Velez (Army remedy only), Juan G. Velez as grandfather of Baby Velez (Army remedy only), and P.Z. (FBI remedy only). Elsewhere in this Memorandum Opinion, the Court found that these Plaintiffs failed to exhaust remedies with the other of the two agencies. Plaintiffs have the burden to establish subject-matter jurisdiction, and they failed to do anything affirmative in their Opposition to establish that these Plaintiffs exhausted remedies with these agencies either. Because Federal Defendants' supplemental declarations do not admit exhaustion as to these Plaintiffs, and Plaintiffs do nothing to prove it, the Court shall find that Eileen Rodriguez as grandmother of Baby Velez, and Juan G. Velez as grandfather of Baby Velez, did not exhaust their Army remedies, and P.Z. did not exhaust his FBI remedy.

*** 

For the avoidance of doubt, the Court shall reiterate those Plaintiffs who, the Court has found, failed to exhaust certain administrative remedies with both the Army and the FBI: Chelsea Garrett, Jerry and Michelle Sims, Carl Cooke, the Royal family,[15] Baby Velez, Eileen Rodriguez as Baby Velez's grandmother, Juan G. Velez as Baby Velez's grandfather, and P.Z. The Court finds that these Plaintiffs' claims must be dismissed without prejudice.

The Court notes that each of the Plaintiffs whose claims against Federal Defendants are dismissed without prejudice for failure to exhaust administrative remedies is a military servicemember or a family member thereof, with the exception of Baby Velez and her grandparents. Accordingly, the Court's dismissal with prejudice under the *Feres* doctrine below

---

[15] Plaintiff-members of the Royal family consist of Christopher H. Royal, Stephanie J. Royal, and minor child C.S.R., II. Am. Compl. ¶ 150.

shall apply to all of these claims except those of Baby Velez and her grandparents, to which prejudice shall not attach.

### 3. Employment-Related Bars

The Court now considers subject-matter jurisdictional bars attributable to Plaintiffs' respective employers. The liability of the United States is limited as to the military servicemembers and their families under the *Feres* doctrine. In light of *Feres*, the Court shall find that prejudice should attach to the dismissal of the tort claims against the Federal Defendants by military servicemembers and their family members.

The exclusive-remedy provision of the Federal Employees' Compensation Act limits the liability of the United States as to the federal civilian employees. Due to FECA, the Court shall find that the claims of federal civilian employees and their family members against Federal Defendants warrant dismissal *without* prejudice. They may refile their claims if they can prove that the Secretary of Labor has decided that their compensation claims are outside the scope of FECA.

The Court need not decide whether *Feres* and FECA defenses could properly be raised by Federal Defendants themselves. In order to perform this analysis, the Court assumes, *arguendo*, the substitution of the United States for the Federal Defendants. As the Court made clear earlier in this Memorandum Opinion, Plaintiffs' claims against Federal Defendants could be dismissed without prejudice simply for failure to name the United States. Even if the Court were to permit amendment to substitute the United States for the Federal Defendants, the failure to exhaust remedies, the *Feres* doctrine, and FECA together warrant dismissal with or without prejudice of all claims against the United States, with one exception: Those grounds do not preclude claims by the one non-federal civilian employee, Michelle R. Harper, and her family members.

The Court shall evaluate Federal Defendants' argument that state workers' compensation law bars Ms. Harper from recovery, on the assumption that the United States were substituted for Federal Defendants. Here, the Court is not persuaded that the United States is entitled to avail itself of the exclusive-remedy defense available under Texas state law. Accordingly, this defense shall fail. Prejudice shall not attach to the dismissal of the claims of Ms. Harper and her family, as they shall be dismissed solely for failure to sue the United States.

### a. *Military Servicemembers and Family Members*

The military servicemembers and their families must establish that jurisdiction over their tort claims against Federal Defendants is consistent with the *Feres* doctrine. In *Feres v. United States* and companion cases, an injured military servicemember and the estates of other servicemembers sued the United States for torts sustained during their service. *Feres*, 340 U.S. 135. The Supreme Court found no subject-matter jurisdiction, holding that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146; *see also Schnitzer v. Harvey*, 389 F.3d 200, 202 (D.C. Cir. 2004) (treating *Feres* as jurisdictional issue).

Plaintiffs acknowledge that *Feres* potentially bars their claims, but they urge this Court to "overturn" that doctrine. *See, e.g.*, Pls.' Opp'n at 10-14. Notwithstanding the raft of criticism of *Feres* over the decades, this Court obviously lacks the power to overrule Supreme Court precedent. *See, e.g.*, *United States v. Johnson*, 481 U.S. 681, 692 (1987) (reaffirming *Feres*); *id.* at 700 (Scalia, J., dissenting) (concluding that "*Feres* was wrongly decided"); *Connell v. Copeland*, 417 F. App'x 3, 4 (D.C. Cir. 2011) ("The validity of *Feres* is a question beyond this Court's authority to consider, and were it not, our own precedent would require this panel to reject [plaintiff's] specific arguments against it."). Nor is the Court aware of any post-*Arbaugh* or post-*Kwai Fun Wong*

authority suddenly interpreting *Feres* as a non-jurisdictional issue. *See, e.g.*, *Ortiz v. United States ex rel. Evans Army Cmty. Hosp.*, 786 F.3d 817, 818-20 (10th Cir. 2015) (affirming dismissal for lack of subject-matter jurisdiction under *Feres*). If *Feres* applies, then prejudice must attach to the dismissal of claims by military servicemembers and their families against the Federal Defendants.

Under D.C. Circuit precedent, courts applying the *Feres* doctrine assess whether an activity is "incident to service" using a "totality of the circumstances" test that weighs: (1) "the injured service member's duty status," (2) "the site of the injury," and (3) "the nature of the activity engaged in by the service member at the time of his injury." *Schnitzer*, 389 F.3d at 203. The "injuries" at issue are the harms to Plaintiffs from the attack itself, rather than the alleged torts of certain officials that led to those injuries. *See Klay v. Panetta*, 924 F. Supp. 2d 8, 13 (D.D.C. 2013), *aff'd*, 758 F.3d 369 (D.C. Cir. 2014). In performing this inquiry, the Court may again consider materials submitted with Federal Defendants' Rule 12(b)(1) motion without treating it as a Rule 56 motion.

Each of the *Schnitzer* factors supports a conclusion that the injuries in this case were incident to military service. First, "the proper inquiry regarding duty status is whether a service member is on active duty status or is discharged or furloughed." *Schnitzer*, 389 F.3d at 204. The Chief of the Army Personnel Records Division has confirmed that each of the servicemember-plaintiffs was on active duty on November 5, 2009. *See* Fed. Defs.' Mem., Ex. D, ECF No. 77-4 (Decl. of Donna Mukulic).[16] The second factor is readily satisfied where the "injury occurred within a military facility." *Schnitzer*, 389 F.3d at 203. Here, it is undisputed that the injuries

---

[16] This declaration lists, among the servicemember-plaintiffs, a Nicole Brossard who does not appear in the Amended Complaint. The Court has also observed one or two other instances in the record of references to specific servicemembers who are not Plaintiffs.

occurred at a deployment center within Fort Hood. Fed. Defs.' Mem. at 11 (citing several government reports attached to Amended Complaint); Pls.' Opp'n at 14.

As to the third factor, the Amended Complaint describes the deployment-related activities of some of the servicemember-plaintiffs at the time of the attack. *See* Am. Compl. ¶¶ 144, 154, 159 (observing, e.g., that "Specialist Clifton Mikeal Stone . . . . was awaiting an anthrax vaccination in preparation for his first deployment to Iraq"). Others were allegedly engaged in military medical activities that day, *e.g., id.* ¶¶ 155, 156, and/or allegedly tried to assist servicemembers during the shooting, *e.g.*, *id.* ¶¶ 155, 157, 158. For still others, the Amended Complaint is scant on description of their activities that day. *E.g.*, *id.* ¶¶ 152, 153. But each of the military servicemembers was doing *something* in or around a military deployment center when the shooting occurred; otherwise, the respective servicemembers would not have been hurt.

Relying on elements identified in other circuits, Plaintiffs argue that servicemembers' activities at the deployment center were essentially civilian in nature, and that litigating the case would scarcely affect military discipline. Pls.' Opp'n at 13-14 (citing *Schoenfeld v. Quamme*, 492 F.3d 1016 (9th Cir. 2007)). Moreover, servicemember-plaintiffs were injured alongside the many civilians at the scene. *Id.* at 14 (citing *Kloner v. United States*, 196 F. Supp. 3d 375 (E.D.N.Y. 2016)). Plaintiffs refer to this case law in an attempt to invoke rationales for the *Feres* doctrine. *See id.* But the D.C. Circuit has held that it is unnecessary to inquire whether liability in a given case is consistent with the military discipline or other rationales for *Feres*. *See Verma v. United States*, 19 F.3d 646, 648 (D.C. Cir. 1994) (per curiam) (rejecting "flexible approach" and applying *Feres* "whether or not the circumstances of a case implicate the rationales for the *Feres* doctrine"). Rather, the Court must stick to the factual question of whether Plaintiffs' activity is incident to

service. "A degree of malleability in that inquiry does not supply a discretionary power to take jurisdiction even if the inquiry has been resolved against the claimant." *Id.*

To recapitulate, Plaintiffs can prevail on Federal Defendants' Rule 12(b)(1) challenge only if they prove that this Court has jurisdiction over military servicemembers' claims, in spite of *Feres*. *See generally Am. Farm Bureau*, 121 F. Supp. 2d at 90 (observing that plaintiffs bear the burden). On November 5, 2009, those servicemembers were on active duty, and their activities brought them to the deployment center, where the Amended Complaint alleges that many were specifically engaged in deployment-related activities. Plaintiffs offer insufficient detail as to some of these servicemembers' activities that day to establish that the injuries were *not* incident to their military service. After all, the relationship to military service is "broadly" construed. *Schnitzer*, 389 F.3d at 202. The Court is persuaded that these active-duty servicemembers' injuries at the deployment center were incident to military service. Their claims against Federal Defendants must be dismissed with prejudice under *Feres*.

The families of servicemembers likewise have only limited rights under *Feres* progeny. Plaintiffs do not expressly address this issue in their Opposition. As Federal Defendants rightly recognize, however, D.C. Circuit precedent prohibits family members from recovering "where the cause of action is ancillary or derivative to the serviceman's action for his own injury received incident to military service." *Lombard v. United States*, 690 F. 2d 215, 223 (D.C. Cir. 1982) (deeming this principle "well established" under *Feres*); *see also* Fed. Defs.' Mem. at 12-13. The alleged harms to family members in this case are examples of emotional distress, loss of consortium, and other injuries commonly recognized as derivative of a primary tort claim. *See Harbury v. Hayden*, 444 F. Supp. 2d 19, 43-44 (D.D.C. 2006) (Kollar-Kotelly, J.) (citing cases), *aff'd*, 522 F.3d 413 (D.C. Cir. 2008). The impact of the Fort Hood attack on servicemember-

plaintiffs is the but-for cause of their family members' claims, including wrongful death and survival actions. *See Lombard*, 690 F.2d at 223, 225 (citing *Monaco v. United States*, 661 F.2d 129 (9th Cir. 1981)); *see also id.* at 223 (referring to two of three companion cases decided in *Feres* as consisting of wrongful death actions); *Van Sickel v. United States*, 285 F.2d 87 (9th Cir. 1960) (barring wrongful death action on authority of *Feres*). None of those claims may proceed under this Circuit's precedent in *Lombard*, which has recently been cited favorably elsewhere. *See Ortiz*, 786 F.3d at 825 & n.6 (citing *Lombard*, 690 F.2d at 219, 226).

Because *Feres* and its progeny apply, prejudice must attach to the Court's dismissal of the claims of military servicemembers and their families against Federal Defendants.

### b.  *Federal Civilian Employees and Family Members*

Plaintiffs who were federal civilian employees, and family members thereof, must contend with the Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq.* Those who allegedly were federal civilian employees at the time of the attack are Lovickie D. Byrd, Anna E. Ellis, Kimberly D. Munley, Linda J. Londrie, and Julia Wilson Adee. Am. Compl. ¶¶ 162, 163, 165, 166, 168. Although the Amended Complaint ambiguously suggests that Plaintiff Diana J. White was a non-federal civilian employee, Federal Defendants have asserted that she was in fact a federal civilian employee, with federal personnel records that appear to support that contention. *See id.* ¶ 167; Fed. Defs.' Mem. at 13 & Ex. E. Plaintiffs have not objected. Federal Defendants do not object to the characterizations of any of these other employees. Rather, Federal Defendants argue that FECA's exclusive-remedy provision bars claims by these Plaintiffs and their family members.

By offering fixed compensation in lieu of litigation rights, FECA "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp.*, 460 U.S. at

193-94.  Like the application of *Feres*, FECA has represented a jurisdictional issue, and continues to do so after *Arbaugh* and *Kwai Fun Wong*.  *See, e.g.*, *Barnes v. United States*, No. 18-5054, 2018 WL 5115528 (D.C. Cir. Sept. 19, 2018) (citing *Spinelli v. Goss*, 446 F.3d 159, 161 (D.C. Cir. 2006)) (affirming dismissal of FTCA claim for lack of jurisdiction due to FECA).

The FECA statutory scheme broadly defines an "employee" to include "a civil officer or employee in any branch of the Government of the United States."  5 U.S.C. § 8101(1)(A).  The United States is generally obligated by FECA to provide compensation where the "disability or death of an employee result[s] from personal injury sustained while in the performance of his duty," with certain exceptions that do not apply here.  5 U.S.C. § 8102(a).  An employee covered by FECA is also subject to its exclusive-remedy provision:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is *exclusive and instead of all other liability of the United States* or the instrumentality *to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States* or the instrumentality *because of the injury or death* in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or *under a Federal tort liability statute*. . . .

5 U.S.C. § 8116(c) (emphasis added).  It is well established that "the United States' liability for work-related injuries under FECA is exclusive."  *United States v. Lorenzetti*, 467 U.S. 167, 169 (1984) (citing 5 U.S.C. § 8116(c)).  The exclusive-remedy provision likewise precludes claims by spouses, dependents, and other relatives of employees that are attributable to the harm to the employee.  *See, e.g.*, *Saltsman v. United States*, 104 F.3d 787, 790-91 (6th Cir. 1997) (citing 5 U.S.C. § 8116(c)); *Swafford v. United States*, 998 F.2d 837, 841 (10th Cir. 1993) (citing, e.g., 5 U.S.C. § 8116(c); *Lockheed Aircraft Corp.*, 460 U.S. at 195-96).

There is no dispute that the federal civilian Plaintiffs are employees for purposes of FECA.  But, in their Amended Complaint, Plaintiffs supply varying levels of detail about what the federal

civilian Plaintiffs were doing at the time of the attack. Lovickie D. Byrd, Kimberly D. Munley, and Diana J. White each appear to have been engaged in some employment-related activity. *See* Am. Compl. ¶ 162 (alleging that Ms. Byrd was "civilian federal employee who had just finished processing" a servicemember at time of attack); *id.* ¶ 165 (indicating that Ms. Munley was civilian Department of Defense police officer who "rushed to the scene of the shooting to confront Hasan and exchanged fire with Hasan from six feet away"); *id.* ¶ 167 (identifying Ms. White as "civilian speech pathologist working with" servicemember when attack occurred). Julia Wilson Adee allegedly was a civilian employee of the Department of Defense who "had just parked near the SRP when Hasan began shooting." *Id.* ¶ 168. But the Amended Complaint neither defines "SRP" nor otherwise explains the significance of her activity. And Plaintiffs plead nothing about the activities of Anna E. Ellis or Linda J. Londrie at the time the attack occurred. Rather, Plaintiffs simply identify occupations that locate these two individuals within the category of federal civilian employees. *See id.* ¶ 163 (describing Ms. Ellis as civilian federal human relations employee); *id.* ¶ 166 (describing Ms. Londrie as civilian Department of Defense employee).[17] Perhaps at least some of the federal civilian Plaintiffs could recover compensation under FECA from the United States, on behalf of themselves and perhaps their family members, due to "personal injur[ies] sustained while in the performance of [their] dut[ies]." 5 U.S.C. § 8102(a). Those Plaintiffs would be prohibited from turning around and suing the United States under the FTCA. *Id.* § 8116(c).

Plaintiffs do not argue that FECA is inapplicable to these Plaintiffs. They instead challenge the FECA defense only by arguing that constitutional claims should be excluded from FECA's

---

[17] Plaintiffs also allege that Ms. Londrie "consoled [a servicemember] in the last minutes of her life," and acknowledge that Ms. Londrie "had no military training or experience." Am. Compl. ¶ 166. Because Plaintiffs do not allege that Ms. Londrie was a medical staff person, it remains unclear whether this is the kind of activity that might be part of her employment duties.

exclusive-remedy provision. *See* Pls.' Opp'n at 20-21. But the constitutional allegations in Plaintiffs' Sixth Claim run only against the Doe Defendants. *See* Am. Compl. ¶ 279. Because the Doe Defendants are sued only in their personal capacities, the Court shall separately address claims against them in the next Subpart.

The Court's independent review of the authorities reveals that the exclusive-remedy argument is not as straightforward as Federal Defendants suggest and Plaintiffs concede. The springboard for further inquiry is federal civilian Plaintiffs' failure to prove that they actually sought compensation. "Compensation under [FECA] may be allowed only if an individual or someone on his behalf makes claim therefor" that is "delivered to the office of the Secretary of Labor" or a designee. 5 U.S.C. § 8121. The Secretary of Labor is tasked with deciding this claim, and review of that decision is limited to administrative appeal. *See id.* §§ 8124, 8128 (prohibiting judicial review); *Spinelli*, 446 F.3d at 161 (quoting *Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90-91 (1991) ("[T]he courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies." (internal quotation marks and alteration omitted)). In their Amended Complaint, Plaintiffs demonstrate some awareness of the Secretary's role when they plead that "the Secretary of Labor has not offered or awarded FECA compensation to the plaintiffs for all (or in some cases any) of their injuries and so there is no 'substantial question of FECA coverage.'" Am. Compl. ¶ 124. But Plaintiffs have not pled, much less proven in this Rule 12(b)(1) posture, that each of the federal civilian Plaintiffs filed administrative claims with the Secretary, and if so, how each of those claims fared. Nor do Plaintiffs take up this issue again in their Opposition to the pending motion.

Without further information about federal civilian Plaintiffs' FECA claims, if any, the Court is unable to proceed. If this Court were to decide, in the first instance, whether the exclusive-

remedy provision prohibits their recovery, then the Court would need to determine whether their injuries occurred in the course of duty. *See* 5 U.S.C. § 8102(a); *Daniels-Lumley v. United States*, 306 F.2d 769, 770 (D.C. Cir. 1962). But that decision is not within this Court's purview. Because this is not a case in which federal civilian Plaintiffs' injuries "were clearly not compensable under [FECA]," long-standing D.C. Circuit precedent recognizes the statute's implication that "the Secretary of Labor must be given the primary opportunity to rule on the applicability of [FECA] to this case." *Daniels-Lumley*, 306 F.2d at 770-71 (noting approvingly that district court did not decide duty issue).[18] Accordingly, this Court need not, and should not, decide whether the federal civilian Plaintiffs are entitled to recover under FECA.

The parties' briefing also fails to observe a possible distinction in the ability to recover for physical versus nonphysical injuries. *See Saltsman*, 104 F.3d at 790 (not reaching issue of whether nonphysical injuries that do *not* flow from physical injuries are compensable). Ms. Byrd, Ms. Ellis, and Ms. Munley each allegedly suffered both physical and nonphysical injuries, while Ms. Londrie, Ms. White, and Ms. Adee each allege strictly nonphysical injuries. *See* Am. Compl. ¶¶ 162-63, 165-68. This is still further reason to leave the FECA determination to the Secretary in the first instance.

Only if the Court were assured that each of the federal civilian Plaintiffs 1) filed a FECA claim with the Secretary, and 2) the Secretary determined that their respective injuries did not occur within the performance of their duties, or were otherwise not compensable, would they

---

[18] Out-of-circuit authority has also recognized a "substantial question" standard for deferring to the Secretary, such that any substantial question of FECA applicability would preclude advance recourse to litigation. *See, e.g.*, *Wallace v. United States*, 669 F.2d 947, 951 (4th Cir. 1982) (finding "clearly not compensable" and "substantial question" standards to be alike in practice). It may be more difficult to apply that formulation of the standard in this case, however, where Plaintiffs omitted any detail about the activities of several of the Plaintiffs. The Court rests on the D.C. Circuit's articulation.

clearly survive the exclusive-remedy provision. Absent answers, the Court cannot permit federal civilian Plaintiffs to proceed here.

At least some out-of-circuit authority suggests that a stay of proceedings is appropriate to give the Secretary an opportunity to evaluate the claims. *See, e.g.*, *DiPippa v. United States*, 687 F.2d 14, 20 (3d Cir. 1982). But because federal civilian Plaintiffs failed to name the United States as a defendant, which independently warrants dismissal, and because federal civilian Plaintiffs have not requested a chance to pursue any as-yet unpursued administrative remedies, this Court shall hew to precedent in this jurisdiction that favors dismissal when FECA does, or may, apply. *See, e.g.*, *Barnes*, No. 18-5054, 2018 WL 5115528 (affirming dismissal based on Secretary's finding that FECA applied); *Daniels-Lumley*, 306 F.2d at 770-72 (affirming without-prejudice dismissal because plaintiff-appellant had not taken opportunities to pursue administrative remedy); *Davis v. United States*, 973 F. Supp. 2d 23, 28 (D.D.C. 2014) (dismissing FTCA claims pursuant to FECA, without discussing whether plaintiff sought Secretary's determination). The Court shall dismiss the claims of federal civilian Plaintiffs and their family members against Federal Defendants *without prejudice* to their refiling upon any decision by the Secretary that those claims fall outside the scope of FECA.[19] *Cf. Kalil v. Johanns*, 407 F. Supp. 2d 94, 100 (D.D.C. 2005) (citing *Daniels-Lumley*, 306 F.2d at 771; *Wallace*, 669 F.2d at 951) (taking this approach based on "'substantial question' as to whether FECA covers plaintiff's [particular type of] claim at all").

### c. *Independent Contractor and Family Members*

The Court turns now to the claims of Plaintiff Michelle R. Harper and her family. With the exception of these Plaintiffs, the Court has dismissed the claims of every other Plaintiff against

---

[19] As indicated elsewhere in this Memorandum Opinion, federal civilian Plaintiffs also would need to name the United States as a defendant to move forward under the FTCA.

Federal Defendants for some reason additional to their failure to name the United States as a defendant. Federal Defendants raise a state workers' compensation defense to Ms. Harper's claims. Fed. Defs. Mem. at 15-16. If that defense is successful, the Court shall consider whether such defense precludes her family's claims as well. Which state's workers' compensation law applies is the first order of business.

In an FTCA case, the Court applies "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also Meyer*, 510 U.S. at 477-78 (recognizing that "the 'law of the place' means law of the State—the source of substantive liability under the FTCA"); *Carlson v. Green*, 446 U.S. 14, 23 (1980) ("[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward."); 2 Jayson & Longstreth, *supra*, § 9.09[1].

While the attack on Ms. Harper indisputably occurred in Texas, it is possible that *Federal Defendants' relevant acts or omissions* occurred in the District of Columbia and/or other jurisdictions. Federal Defendants invoke only Texas law, however, on the mistaken basis that the state law applicable to the contract supplies the rule for this decision.[20] *See* Fed. Defs.' Mem. at 15. Plaintiffs say nothing about the issue of Federal Defendants' liability to an independent contractor, much less about the appropriate state's law to apply in such a scenario. In light of the Amended Complaint and other briefing, however, it is unlikely that Ms. Harper would be covered by the District of Columbia's workers' compensation regime. *See* D.C. Code § 32-1503 (establishing coverage generally for such injury or death as occur *within* the District of Columbia or outside of it *if* "the employment is localized principally" in the District, with seemingly

---

[20] The Court need not decide whether Texas law in fact governs the contract between the United States and the contractor for which Ms. Harper worked.

38

inapposite exceptions).  Accordingly, for purposes of this analysis, the Court shall assume that Texas law applies.[21]

Under Texas law, workers' compensation generally represents an injured employee's "exclusive remedy . . . against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee."  Tex. Lab. Code § 408.001(a).  Certain provisions enable an entity not otherwise the direct employer to take advantage of the exclusive-remedy provision.  "A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor," which "makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of" the Texas workers' compensation regime.  *Id.* § 406.123(a), (e).  As a premises owner construed as a "general contractor," the United States can enter into such an agreement with an independent contractor and thereby become an "employer" entitled to exclusive-remedy protections.  *See Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 481-82 (5th Cir. 2013) (per curiam).  But the United States does so only if it is constructively providing the workers' compensation insurance coverage by agreeing to reimburse the contractor for such coverage.  *See Willoughby*, 730 F.3d at 480-81 (insurance premia were "allowable cost" in contract with government); *Doss v. United States*, 793 F. Supp. 2d 859, 865-66 (E.D. Tex. 2011) (same); 1 Jayson & Longstreth, *supra*, § 5.08; *see also HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 350-52, 360 (Tex. 2009) (construing Sections 406.123(e) and 408.001(a) in case not involving United States).

---

[21] Because the caption of Plaintiffs' Amended Complaint alleges that each of the Federal Defendants is located in the District of Columbia, the Court shall not consider other potential jurisdictions where the relevant acts or omissions may have occurred.  In any event, such acts or omissions are likely more relevant to Doe Defendants, whose claims the Court treats separately below.

In this case, the United States evidently had a contract with Ms. Harper's employer, Ingenesis Arora Staffing, LLC ("Ingenesis"). *See* Fed. Defs.' Mem., Ex. F, ECF No. 77-6 (containing Decl. of Donna K. Hendrix and accompanying contract excerpt). That agreement required Ingenesis to obtain workers' compensation coverage. *Id.* at 4. Plaintiffs do not contest this, nor do they say anything about the workers' compensation issue. But the excerpt of the contract furnished by Federal Defendants does not require the United States to reimburse Ingenesis for the cost of the required coverage. For example, there is no discussion of allowable costs that could include insurance coverage. Nor do Federal Defendants argue that anywhere else in the contract ultimately shoulders the United States with the burden to provide the coverage. Their reliance on *Willoughby* overlooks this element. *See* Fed. Defs.' Mem. at 16. And the contract's express incorporation of a section of the Federal Acquisition Regulation reinforces the impression that Ingenesis was required to bear the cost of insurance on its own. *See* Fed. Defs.' Mem., Ex. F, ECF No. 77-6; 48 C.F.R. § 52.228-5 ("The Contractor shall, *at its own expense*, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the schedule or elsewhere in the contract. . . ." (emphasis added)).[22]

Federal Defendants have not shown that the United States is Ms. Harper's statutory employer under Texas workers' compensation law. Accordingly, any workers' compensation secured by Ms. Harper under Ingenesis's policy cannot act as an exclusive remedy precluding her from seeking compensation against the United States.

---

[22] The Court is unaware why the express language that the contractor furnish insurance "at its own expense" is omitted from the contract with Ingenesis, but still, there is no indication that the United States has agreed to pick up the tab.

Because Ms. Harper has not named the United States as a defendant, as discussed above, her FTCA claims, and those of her family,[23] must nevertheless be dismissed without prejudice.

*** 

Because the Court has disposed of all of the claims against Federal Defendants on the foregoing grounds, the Court need not reach other defenses relying on the discretionary function and intentional torts exceptions to the sovereign immunity waiver, the public duty doctrine under District of Columbia law, and the elements of negligence and negligent infliction of emotional distress claims under District of Columbia law.

## V.  CLAIMS AGAINST DOE DEFENDANTS

As noted above, Federal Defendants voluntarily raised certain defenses on behalf of the six Doe Defendants, who were sued in their personal capacities.  *See* Fed. Defs.' Mot. at 2 n.3.  One reason that this approach made sense is that each of Plaintiffs' pending claims against Federal Defendants also names at least one Doe Defendant.[24]  Plaintiffs also plead two claims exclusively against one or more Doe Defendants, namely claims for intentional misrepresentation and for constitutional violations.  *See* Am. Compl. ¶¶ 279, 309 (Sixth and Tenth Claims).  For the reasons that follow, however, the Court need not reach Federal Defendants' arguments for dismissal of these various claims.  Rather, the Court shall dismiss, *sua sponte* and without prejudice, all of Plaintiffs' tort and constitutional claims against the Doe Defendants because they have not been served with process.

Federal Rule of Civil Procedure 4(m) provides that

---

[23] Members of Ms. Harper's family who are Plaintiffs in this case consist of George Harper, Alyssa Magee, and minor children T.H. and A.M.  Am. Compl. ¶ 164.

[24] Only the Eleventh Claim, which is no longer pending, did not name at least one Doe Defendant.

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quoting 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083, at 334 (1969)) (internal quotation marks and alteration omitted).

The Court reminded Plaintiffs of the Rule 4(m) requirements in its February 11, 2013, order. Order, ECF No. 15. Yet, Plaintiffs have failed to submit proof of service of the Amended Complaint on the Doe Defendants in the six-plus years of this litigation. Of course, Plaintiffs have made some effort: They sought expedited discovery to uncover the identities of those Doe Defendants and thenceforth facilitate service upon them. *See* Pls.' Opp'n to Mot. to Stay and Cross-Mot. for Leave to Conduct Expedited Disc., ECF No. 30, at 17-18. But that effort has withered. Although their motion was denied without prejudice, Plaintiffs have not renewed their request since the Court's March 2017 decision to lift the stay in this matter. *See* Min. Order of Mar. 31, 2017. Nor can Plaintiffs' failure to serve the Doe Defendants be excused based on service on Federal Defendants. *See Simpkins*, 108 F.3d at 369 ("[D]efendants in *Bivens* actions must be

served as individuals, pursuant to [Federal Rule of Civil Procedure] 4(e).").[25]  Moreover, Plaintiffs do not respond to Federal Defendants' Statement of Interest, despite Federal Defendants' express reservation of arguments related to defective service on Doe Defendants.  *See* Fed. Defs.' Mot. at 2 n.3.

At this point, Plaintiffs' failure to serve Doe Defendants is sufficient grounds to dismiss *without prejudice* the claims against Doe Defendants.  Fed. R. Civ. P. 4(m); Order, ECF No. 15, at 2.  The Court does not understand why Plaintiffs have not renewed their motion for expedited discovery.  Accordingly, the Court shall not *sua sponte* provide Plaintiffs with a further opportunity to effect service.

Notwithstanding the "usual practice" of proceeding no further than this finding of insufficient service, the Court could turn to the merits of Federal Defendants' motion on behalf of Doe Defendants.  *See Simpkins*, 108 F.3d at 369-70 (condoning "proceed[ing] to the Rule 12(b)(6) determination . . . . to stop insubstantial *Bivens* actions in their tracks").  Yet, for several reasons the Court shall not do so.

First, the dismissal of all claims against Federal Defendants means that there is no one against whom to serve expedited discovery.  Plaintiffs are left with a lawsuit against unnamed people in exclusively personal capacities.  The Court sees no reason to permit Plaintiffs further time to brainstorm ways of serving them.

The Court is also loath to adjudicate defenses that may apply to defendants who have not appeared.  This Memorandum Opinion has made fine-grained determinations, often on subpar

---

[25] "A *Bivens* suit is an action against a federal officer seeking damages for violations of the plaintiff's constitutional rights."  *Simpkins*, 108 F.3d at 368 (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).  Constitutional claims are among those raised against Doe Defendants in this case.

briefing, that have resulted in dismissals with and without prejudice. Arguments specific to the Doe Defendants are likely to require further heavy lifting. Although Plaintiffs do not respond to Federal Defendants' arguments for dismissal of claims against Doe Defendants—which alone could be treated as a concession—the Court once again hesitates to grant the motion on that basis. *See Cohen*, 819 F.3d at 482-83.

If Plaintiffs were to perfect service on the Doe Defendants, then the Court may need to evaluate statute of limitations issues, defenses to FTCA claims upon any substitution of the United States, and qualified immunity defenses to constitutional claims against federal officials. *See* Fed. Defs.' Mem. at 31-45. The Court would do so before reaching the merits of Plaintiffs' tort and *Bivens* constitutional claims. The Court is unwilling to take any of these steps without briefing from Doe Defendants themselves—at least without adequate briefing by Plaintiffs either.

Accordingly, in an exercise of its discretion under Rule 4(m), the Court shall dismiss *without prejudice* all claims against Doe Defendants, sued in their personal capacities.

## VI. DELAY AND RELATED ISSUES

Plaintiffs raise other interrelated issues that do not affect the Court's disposition of this motion. Really only one warrants some attention here,[26] due to its prominence in their pleading. In the main, Plaintiffs argue that the Government now demonstrates the bad faith with which it previously sought stays of this matter. *See* Pls.' Opp'n at 5-10. The risk of unlawful command influence—if these proceedings were to continue during Major Hasan's court martial—was allegedly unfounded. *See id.* at 6. But, as Federal Defendants appear to recognize, the Court carefully evaluated the prospect of unlawful command influence based on a series of pleadings

---

[26] Plaintiffs also complain that Purple Heart awards were unjustifiably delayed. *See* Pls.' Opp'n at 4-5. But Plaintiffs have since ceased pursuing the corresponding claim in their lawsuit. *See* Min. Order of Nov. 30, 2018; Joint Notice Regarding Pls.' Eleventh Claim, ECF No. 86.

over the course of years. *See, e.g.*, Fed. Defs.' Reply at 1 n.1; Order, ECF No. 69; *Manning*, Civil Action No. 12-1802 (CKK), 2014 WL 12789614.

The Court understands that the stay of proceedings in this case further delayed closure for the Plaintiffs, prolonging their evident "anger, frustration and suspicion." Pls.' Opp'n at 5-6. But presumably Plaintiffs would prefer that Major Hasan—the ultimately convicted shooter who perpetrated this horrific attack—would have no grounds to challenge the decision of the military tribunal to convict him.

The Court shall not entertain Plaintiffs' belated efforts to reopen this issue. And because Plaintiffs' arguments are directed indiscriminately to the "government," the Court makes clear that it shall not hold anything against the Doe Defendants either, for they have not been served and therefore did not brief motions to stay this case.

More importantly, Plaintiffs' claims against Federal Defendants are being dismissed—with or without prejudice—*for jurisdictional reasons*, and not for reasons on the merits. Whether those reasons surfaced then or now, the result would be the same: The Court cannot hear Plaintiffs' claims against those defendants. Delays during the court-martial process are unfortunate, but not grounds for departing from the dictates of jurisdiction.

## VII. CONCLUSION

For all of the foregoing reasons, the Court hereby **GRANTS** Federal Defendants' [77] Motion to Dismiss.

The Court shall **DISMISS WITHOUT PREJUDICE** on certain grounds all remaining claims (Eleventh Claim no longer at issue) against Federal Defendants by the following Plaintiffs, as well as their Plaintiff-family members: Baby Velez, Lovickie D. Byrd, Anna E. Ellis, Kimberly D. Munley, Linda J. Londrie, Julia Wilson Adee, Diana J. White, and Michelle R. Harper.

The Court shall **DISMISS WITH PREJUDICE** on different grounds the same claims against Federal Defendants by all Plaintiffs other than those named above.

The Court shall **DISMISS WITHOUT PREJUDICE** all claims against Doe Defendants.

Plaintiffs shall submit a Status Report by **FEBRUARY 12, 2019**, indicating how they propose to proceed.

An appropriate Order accompanies this Memorandum Opinion.

Dated: January 22, 2019

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
